UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80131-CIV-DIMITROULEAS/SNOW

GERHARD EMIL MAALE, III,

    Plaintiff,

v.

KIM FRANCIS KIRCHGESSNER, et al.,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

THIS CAUSE is before the Court upon the Notice of Limited Appearance by Defendants, the High Point Organization Holding Company, Ltd., Caicos Beach Club Development, Ltd., Caicos Beach Club Resort and Marina 1A, Ltd., Caicos Beach Club Resort and Marina, Ltd., and Splash Holdings, Ltd., with Motion to Dismiss Third Amended Complaint and Request for Evidentiary Hearing on Issue of Personal Jurisdiction [DE-366],[1] filed herein on April 23, 2010. The Court has carefully considered the Motion, Plaintiff's Opposition [DE-402], Defendants' Reply [DE-429], and is otherwise fully advised in the premises.

**I. BACKGROUND**

Plaintiff filed this action on February 8, 2008. Plaintiff, Gerhard Emil Maale III ("Maale"), is a Texas resident. Defendant Kim Francis Kirchgessner ("Kirchgessner"), also a Texas resident, is his ex-wife. The marriage was terminated in 2007 after twenty-three years. Defendants Patricia and Brian Rahl are attorneys licensed to practice law in Florida and are both

---

[1] Defendant Caicos Beach Club, Ltd. did not join in the instant Motion. Instead, Defendant Caicos Beach Club, Ltd. filed a separate motion to dismiss on May 10, 2010 [DE-400] on largely the same grounds, however, that motion is not yet fully briefed.

Florida residents.  Defendant Rahl & Rahl, P.A. is a Florida professional association with its principle offices located in Florida.  Patricia and Brian Rahl are partners in the firm and have represented Maale and Kirchgessner in the past.  Patricia Rahl, Brian Rahl and Rahl & Rahl, P.A. are hereinafter collectively referred to as the "Rahl Defendants."

Defendants High Point Organization Holding Company, Ltd, Caicos Beach Club Development, Ltd., Caicos Beach Resort and Marina 1A, Ltd., Caicos Beach Club Resort and Marina, Ltd., Caicos Beach Club, Ltd., and Splash Holdings, Ltd. are entities organized under the laws of the Turks and Caicos.  The five entities that are the subject of the present motion to dismiss will be collectively referred to as the "Project Entities."  High Point Organization Holding Company, Ltd ("High Point") is alleged to own the 100-acre parcel where a project called the "Caicos Beach Club Resort and Marina" (the "Project") was to be developed.  In turn, Caicos Beach Club, Ltd. is alleged to own, at least in part, High Point.  In 1998, Caicos Beach Club Resort and Marina, Ltd. is alleged to have obtained a lease or sub-lease for a portion of the same 100-acre parcel of land.  Thereafter, in or about 2005, Caicos Beach Resort and Marina 1A, Ltd. is alleged to have leased and/or sub-leased the very same property from Caicos Beach Club Resort and Marina, Ltd. and to have assumed the obligations to provide the memberships rights to the purchasers.  Splash Holdings, Ltd. is alleged to own, at least in part, Caicos Beach Resort and Marina 1A, Ltd.  Further, Caicos Beach Club Development, Ltd. is alleged to be the entity used, at least in part, for the construction of the building and/or infrastructure upon the 100-acre parcel.

According to the Third Amended Complaint ("Complaint"), Defendants induced Maale to invest over $1.9 million into the Project being developed in the Turks and Caicos, British

West Indies.  Plaintiff alleges that the Project is a 100-acre parcel of land in the Turks and Caicos owed, controlled, developed, and marketed by a web of corporations.  The Project was to consist of four phases, with each phase consisting of 250 units.  Construction commenced in 1994 but as of the filing of the Complaint, no phase of the Project has been completed.  Maale alleges he was intentionally misled by Defendants as to the Project and his investment, and further that he has been provided with no documentation as to his investment in the Project and that Defendants refuse to return the monies he invested.

The Complaint states that in or around 1992, Defendants Patricia Rahl, Brian Rahl, and Paul Kirchgessner, traveled to Texas to market the Project to Maale and other professionals in the Dallas, Texas area.  Maale alleges that Patricia Rahl, Brian Rahl and Kirchgessner repeatedly represented the investment in the Project to be of a tax-free nature, have high rates of return even with low occupancy rates, and that there would be a guaranteed return of all monies invested if the Project was not timely completed, among other representations.  Also, between 1992 and 1995, Maale introduced Defendants to approximately twelve professionals in the Dallas, Texas area who then made investments in the Project.  Maale states that at the insistence of Kirchgessner he invested $1,000,000 in the Project between 1993 and 1996.

On January 11, 2001, Maale sold a home in the Bahamas owned by him and Kirchgessner and utilized a portion of the sale to build a residence at the Project based on representations made by Defendants.  Patricia Rahl and Brian Rahl handled the transaction through their firm.  They allegedly instructed the buyer to wire $900,000 from the proceeds of the sale to the Project and an additional $100,000 to the Rahls' escrow account.  Plaintiff depicts a series of meetings over the course of years between himself and the individual Defendants in which he was allegedly

induced to continue investing funds into the Project.  The Complaint alleges the use of mail, telephone, wire transfers, and the internet to perfect the scheme.

Plaintiff filed the original complaint on February 8, 2008.  The Court dismissed the complaint and Plaintiff filed an Amended Complaint on August 4, 2008. [DE-36].  Plaintiff thereafter obtained leave of the Court to file his Second Amended on February 19, 2010 [DE-259].  On April 12, 2010, this Court granted the Defendants' motion to dismiss the Second Amended Complaint [DE-339] and, as such, Plaintiff filed the instant Complaint on April 21, 2010 [DE-359].  In the latest Complaint, Plaintiff brings counts for: (I) Civil RICO predicated upon mail and wire fraud pursuant to 18 U.S.C. § 1964 against all Defendants; (II) Violation of Florida's Deceptive and Unfair Trade Practices Act pursuant to Florida Statute § 501.204 against all Defendants; (III) Unjust Enrichment against all Defendants; (IV)  Breach of Fiduciary Duty against the Rahl Defendants; (V) Fraud against all Defendants (VI) Common Law Negligence against Kirchgessner and the Rahl Defendants; and (VII) Civil Conspiracy against all Defendants.

## II. DISCUSSION

The Project Entities move to dismiss Plaintiff's Complaint arguing 1) that this Court lacks personal jurisdiction over the Project Entities which do not transact business or have sufficient contacts with the United States or the State of Florida; 2) the Complaint fails to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b); 3) Plaintiff's claims are barred by the statute of limitations; and 4) the common law claims should be dismissed.

A.     **Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)).  The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover.  See Linder v. Portocarrero, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing Robertson v. Johnston, 376 F. 2d 43 (5th Cir. 1967)).

B.     **The Project Entities' Motion to Dismiss**

1.      **Personal Jurisdiction**

According to the Project Entities, this Court does not have personal jurisdiction over them.  As a general rule, issues relating to personal jurisdiction should be addressed before considering the merits of a plaintiff's claims because a defendant is not bound by a court's ruling if he is not subject to the court's jurisdiction.  Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F. 3d 935, 940 (11th Cir. 1997) (citing Madara v. Hall, 916 F. 2d 1510, 1513-14 (11th Cir. 1990)).  In analyzing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the Court must: (1) determine whether an applicable statute potentially confers jurisdiction over the defendant, and (2) determine whether the exercise of jurisdiction comports with due process.  Id. at 942; see also Abramson v. Walt Disney Co., 132 Fed. Appx. 273, 275 (11th Cir. 2005) (the court must engage in a two-part analysis to determine whether it has jurisdiction over the nonresident defendant, and can exercise that jurisdiction only if both prongs are satisfied).

Where the court does not conduct a discretionary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the defendant by presenting "sufficient evidence to defeat a motion for directed verdict." Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F. 2d 829, 855 (11th Cir. 1990). The court must accept the facts alleged in the plaintiff's complaint as true, to the extent that they are not contradicted by the defendant's affidavits. Id. at 855. Where there is conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. Id. Once the plaintiff pleads sufficient material facts to form a basis for in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings. Prentice v. Prentice Colour, Inc., 779 F. Supp. 578, 586 (M.D. Fla. 1991). If the defendant sufficiently challenges plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint. Id.

**(a)    RICO Statute**

Plaintiff has asserted both RICO and Florida law claims against the Project Entities. Section 1965(d) of the RICO statute provides for service in any judicial district in which the defendant is found and, as such, Plaintiff argues that the first prong for personal jurisdiction – whether an applicable statute potentially confers jurisdiction over the defendant – has been satisfied. However, the Project Entities argue that because they are foreign defendants RICO's nationwide service of process provision does not apply. The Court finds that it need not reach this issue since service upon the Project Entities was not effected under RICO's nationwide service of process provision. Regardless of whether Plaintiff could have served the Project

Entities under section 1965(d) of the RICO statute, pursuant to the Court's Order Granting Plaintiff's Motion for Alternative Service of Process [DE-296], the Project Entities were served pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii) and (f)(3), not section 1965(d). As such, the Court finds that section 1965(d) of the RICO statute is not applicable to the present analysis. See Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998) ("service must be effected pursuant to RICO's service provisions before a plaintiff may rely on a defendant's national contacts to establish personal jurisdiction over the defendant . . . it would be inappropriate for a federal court to effectively extend the territorial reach of a federal statute by applying a national contacts test for personal jurisdiction where service is not effected pursuant to that federal statute.").[2]

### (b) Florida's Long-Arm Statute

Since section 1965(d) does not apply, the Court must consider whether Florida's long-arm statute, Fla. Stat. § 48.193, applies in order to meet the first prong for exercising personal jurisdiction. Plaintiff does not argue for the application of any specific provision of Florida's long-arm statute. Instead, Plaintiff merely argues for application of Florida's long-arm statute under the conspiracy-liability theory which permits a "state to assert personal jurisdiction over a non-resident defendant who has no direct contacts with that state." Hasenfus v. Secord, 797 F. Supp. 958, 961 (S.D. Fla. 1989). Plaintiff argues that personal jurisdiction over a non-resident

---

[2] The Court further notes that even assuming Plaintiff had attempted service upon the Project Entities pursuant to section 1965(d), Plaintiff has not clearly established that section 1965(d) would even apply to these foreign Project Entities. See Unocal, 27 F. Supp. at 1984 ("RICO does not apply where, as here, the defendant is served outside of the United States," instead, to establish that the court has personal jurisdiction over the foreign defendants, the plaintiff "must rely on the traditional minimum contacts analysis associated with service of process under [the state's] long-arm statute.").

co-conspirator is available where "(1) jurisdiction can, under the traditional tests . . . be asserted over a 'resident' defendant (i.e. one with sufficient ties to the state); (2) the plaintiff can demonstrate the existence of a conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act in furtherance of the conspiracy took place within the state." Id.

Plaintiff contends that three of the co-conspirators in this case are residents of Florida over whom this Court has jurisdiction, thereby meeting the first prong. Further, Plaintiff contends that the Complaint and the RICO statement describe a coordinated plan and scheme between the Rahl Defendants, the Project Entities and the Kirchgessner family to defraud investors in the U.S. by way of domestic investments in a vacation club project. Plaintiff argues that the Project Entities' declarations [DE-330] that they have no connection to one another and have no connection to the U.S. are contradicted by the chart [DE-402-1] which shows that the Project Entities have common links. In particular, Plaintiff points to the fact that Patricia Rahl has held an official position with nearly every one of the Project Entities at various times. Plaintiff contends that the chart and newspaper articles [DE-405-1] indicate that the Project Entities were under common control and coordinated all efforts during the course of the conspiracy. Finally, Plaintiff argues that there are several overt acts committed in Florida, such as mailing letters from Florida, rendering legal services from Florida on behalf of the conspiracy entities, and receipt of money by the Rahl Defendants in Florida. As such, Plaintiff argues that these facts satisfy the criteria for personal jurisdiction under Florida's long-arm statute using the conspiracy-liability theory.

The Project Entities reply that in order to impose jurisdiction over a foreign defendant under the conspiracy-liability theory, a plaintiff "must at least make out a colorable, factually supported claim of the conspiracy's existence." Hasenfus, 797 F. Supp. at 962. The Project Entities argue that Plaintiff has adduced no evidence or testimony that any of the Project Entities engaged in any unlawful acts in Florida, or that any overt acts in furtherance of a conspiracy took place, as required. The Project Entities also argue that the mere fact that the Project Entities utilized the Rahl Defendants' firm does not establish the conspiracy's existence when Plaintiff admittedly has no evidence that these entities conspired to deprive him of anything. On the contrary, the Project Entities offer the declarations of Patricia Rahl [DE-330] which provide that the Project Entities have no connection to one another or the United States.

Although the precise contours of the conspiracy-liability theory have "never been defined, the theory basically permits a state to assert jurisdiction over a non-resident defendant if: (1) jurisdiction can, under the traditional tests, be asserted over a 'resident' defendant (i.e. one with sufficient ties to the state); (2) the plaintiff can demonstrate the existence of a conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act in furtherance of the conspiracy took place within the state." Robert D. Harley Co. v. Global Force (H.K.) Ltd., Case No. 05-21177-CIV-SEITZ/MCALILEY, 2007 WL 196854, at *5 (S.D. Fla. Jan. 23, 2007) (citing Hasenfus, 797 F. Supp. at 961). "To establish the conspiracy, a plaintiff cannot, for the purposes of a motion to dismiss, simply repeat the allegations contained in the complaint . . . [r]ather, to carry his burden, a plaintiff must at least make out a colorable, factually supported claim of the conspiracy's existence." Id.

Plaintiff's specific conspiracy allegations in Count VII relate to the claim that the Defendants "conspired with each other to defraud Plaintiff of money." [DE-359, ¶ 115]. There is no dispute that this Court has jurisdiction over at least four Defendants – Kirchgessner and the Rahl Defendants – thereby meeting the first element. There also does not appear to be any dispute that the Project Entities are Turks and Caicos companies that do not conduct business in the United States, much less Florida. Rather, in support of the second and third prongs, Plaintiff attaches a chart and supporting documents showing the corporate information of the Project Entities in order to argue that the Project Entities share common ties, in particular with Defendant Patricia Rahl who is a resident of Florida. [DE-402-1]. However, the Court is not persuaded, and Plaintiff has cited to no cases holding, that the mere fact that some of Project Entities may have shared similar officers or agents at varying times over the last twenty (20) years somehow demonstrates a "colorable" claim for the existence of the conspiracy to defraud Plaintiff of money.

This is particularly true when considering the totality of the evidence offered by Plaintiff to support personal jurisdiction over the Project Entities. Plaintiff offers the Declaration of Philip Smith [DE-404-1] and attaches the following documents: a letter on Caicos Beach Club Charter, Ltd. letterhead which encloses a fully executed Forward Purchase Contract for Mr. Smith dated in 1995 and that indicates a Turks and Caicos address for the company; a 1996 letter on Caicos Beach Club Charter, Ltd. letterhead signed by Patricia Rahl as Vice-President and that indicates a Turks and Caicos address for the company; and a 1996 letter on Rahl & Rahl, P.A. letterhead signed by Patricia Rahl as President of Caicos Beach Club Resort and Marina, Ltd. Plaintiff also offers his own declaration [DE-405-1] and attaches the following documents: a

brochure concerning the Project that mentions Caicos Beach Club Charter, Ltd. and the "High Point Organization"; Turks & Caicos Free Press newspaper articles from 1993 and 1994 discussing the Project and seemingly Patricia Rahl's involvement; and a 1998 letter on Caicos Beach Club Development, Ltd. letterhead signed by Patricia Rahl as President and that indicates a Turks and Caicos address for the company.  Finally, Plaintiff offers the Declaration of Donald Schwarz [DE-406-1] and attaches the following documents: a brochure concerning the Project that mentions Caicos Beach Club Charter, Ltd. and the "High Point Organization"; two letters in 1996 on Caicos Beach Club Charter, Ltd. letterhead signed by Patricia Rahl as Vice-President and that indicates a Turks and Caicos address for the company; two 1996 Project update newsletters; a 1996 letter on Rahl & Rahl, P.A. letterhead signed by Patricia Rahl as President of Caicos Beach Club Resort and Marina, Ltd.; and a 2010 letter on Rahl & Rahl, P.A. letterhead signed by Patricia Rahl indicating that Caicos Beach Club Resort and Marina 1A, Ltd. authorized the letter.

Plaintiff argues that these documents create a strong inference that the Defendants were acting in concert with one another, yet notably, these documents appear to make no mention whatsoever of Defendants High Point Organization Holding Company, Ltd.[3] or Splash Holdings, Ltd.  Consequently, these documents do not serve to demonstrate any evidence, much less "colorable" evidence, that Defendants High Point Organization Holding Company, Ltd. or Splash

---

[3] While there is some mention of an entity referred to as the "High Point Organization" in the Project brochure, the Court cannot even determine based upon these documents whether this is the same entity as the Defendant High Point Organization Holding Company, Ltd.  This is particularly true when considering that Plaintiff alleges that public records do not reveal the identity of the "High Point Organization" and that there are several entities containing the name "High Point."  [DE-359, ¶ 26].

Holdings, Ltd. were involved in a purported conspiracy in order to satisfy the second element for application of the conspiracy-liability theory.[4]

Further, the Court notes that this is not a class action and Plaintiff's claims relate to the Defendants purported efforts to defraud him, not other purported investors.  As such, to the extent that Plaintiff attempts to offer documents, newspaper articles and correspondence issued to third parties or other investors who are not parties here – such as, Philip Smith and Donald Schwarz – the Court is not persuaded that such documents somehow evidence the existence of a conspiracy to defraud Plaintiff.  Therefore, the Court finds that the documents that were issued or directed to non-parties and that merely mention Caicos Beach Club Resort and Marina, Ltd. or Caicos Beach Resort and Marina 1A, Ltd. fail to constitute "colorable" evidence of Caicos Beach Club Resort and Marina, Ltd. or Caicos Beach Resort and Marina 1A, Ltd.'s[5] involvement in any conspiracy to defraud Plaintiff in order to meet the second element for application of the conspiracy-liability theory.[6]

---

[4] These documents also make no mention of Defendant Caicos Beach Club, Ltd., however, Caicos Beach Club, Ltd. did not join in the instant motion to dismiss.

[5] Further, even if the 2010 letter written to Donald Schwarz had instead been directed to Plaintiff, the Court is not persuaded that a letter authored by counsel for Caicos Beach Resort and Marina 1A, Ltd. in 2010, after the litigation in this action had been ongoing for two years and which identifies the ongoing litigation, somehow demonstrates the "colorable" existence of a conspiracy.

[6] Moreover, while some of the documents offered by Plaintiff may provide evidence that Patricia Rahl was involved with Caicos Beach Club Charter, Ltd. and/or that Caicos Beach Club Charter, Ltd. was involved with the Forward Purchase Contracts, importantly, Caicos Beach Club Charter, Ltd. is not a Defendant in this action.  As such, the Court is not persuaded that documents which involve a non-party, Caicos Beach Club Charter, Ltd., somehow serve to demonstrate the existence of a conspiracy between the Project Entities and the resident Defendants in order to meet the second prong under the conspiracy-liability theory.  See Hasenfus, 797 F. Supp. at 961.

Finally, in regard to Caicos Beach Club Development, Ltd., while Plaintiff has offered a 1998 update letter on Caicos Beach Club Development, Ltd. letterhead signed by Patricia Rahl as President regarding the construction of the Project as somehow evidence of the existence of the conspiracy to defraud Plaintiff or Defendant Caicos Beach Club Development, Ltd.'s involvement in the purported conspiracy, the Court finds that such evidence does not constitute "colorable" evidence of the conspiracy's existence.  In Hasenfus, the court found that application of the conspiracy-liability theory was warranted where there was testimony from the defendant before the House and Senate that "irrefutably establishe[d] the existence of a covert plan to run supplies to Nicaragua" and the defendant's prominent role in the conspiracy.  797 F. Supp. at 962.  As such, the court concluded that the plaintiff "adequately demonstrated that a conspiracy existed," in order to meet the second prong for application of the conspiracy-liability theory.  Id. On the contrary here, the Court finds that Plaintiff has offered at most vague and conclusory allegations regarding the conspiracy and the Project Entities' involvement,[7] rather than colorable evidence somehow demonstrating the existence of the conspiracy or any of the Project Entities' roles in the purported conspiracy.  See Washington v. Fla. Dept. of Children and Families, 595 F. Supp. 1291, 1295 (M.D. Fla. 2009) (because the plaintiff "provided nothing more than vague and conclusory allegations regarding a conspiracy involving the subject Defendants, the Court declines to apply the co-conspirator theory to extend jurisdiction to these nonresident Defendants.").

---

[7] Indeed, the Court notes that Plaintiff continues to improperly lump the Project Entities together in each count of the Complaint, such that it is impossible to know what conduct is alleged to have been committed by each individual entity.

As such, the Court concludes that Plaintiff has failed to satisfy the criteria for personal jurisdiction under Florida's long-arm statute using the conspiracy-liability theory.  Notably, Plaintiff cannot satisfy the second element under the conspiracy-liability theory – that is, the existence of a conspiracy in which the non-resident defendant and the resident defendant participated – when Plaintiff has offered no "colorable" evidence of the existence of the conspiracy or the Project Entities' roles in the purported conspiracy.  Robert D. Harley Co., 2007 WL 196854, at *5.[8]  Having failed to demonstrate application of the Florida's long-arm statute or any other statutory authorization for personal jurisdiction, Plaintiff has failed to meet the first prong for jurisdiction or otherwise establish a prima facie case for personal jurisdiction and, therefore, there is no basis for this Court to exercise jurisdiction over the Project Entities. Abramson, 132 Fed. Appx. at 275 ("The court must then engage in a two-part analysis to determine whether it has jurisdiction over the nonresident defendant, and can exercise that jurisdiction only if both prongs are satisfied.").[9]

---

[8] Plaintiff argues that additional discovery is needed to determine personal jurisdiction issues, however, this case has been pending and hotly litigated since February of 2008.  As such, the Court finds that Plaintiff has had sufficient time to attempt to uncover "colorable" evidence of the Project Entities' involvement in the purported conspiracy such that this argument is without merit.

[9] Having concluded that Plaintiff has failed to meet the first prong for this Court to exercise jurisdiction over the Project Entities and thus, that this Court does not have personal jurisdiction, the Court need not reach the issue of whether Plaintiff can meet the second prong – that is, whether the exercise of jurisdiction comports with due process.  Likewise, in the absence of personal jurisdiction, there is no basis for this Court to address the substantive arguments raised by the Project Entities for dismissal of the Complaint.

### III.  CONCLUSION

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Notice of Limited Appearance by Defendants, the High Point Organization Holding Company, Ltd., Caicos Beach Club Development, Ltd., Caicos Beach Club Resort and Marina 1A, Ltd., Caicos Beach Club Resort and Marina, Ltd., and Splash Holdings, Ltd., with Motion to Dismiss Third Amended Complaint and Request for Evidentiary Hearing on Issue of Personal Jurisdiction [DE-366] is hereby **GRANTED**;

2. Defendants, the High Point Organization Holding Company, Ltd., Caicos Beach Club Development, Ltd., Caicos Beach Club Resort and Marina 1A, Ltd., Caicos Beach Club Resort and Marina, Ltd., and Splash Holdings, Ltd. are hereby **DISMISSED** for lack of personal jurisdiction.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 27th day of May, 2010.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of record