UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

GERHARD EMIL MAALE, III,

        Plaintiff,

v.                                                      Case No. 08-80131-CIV-DIMITROULEAS/
                                                                              SNOW

KIM FRANCIS
KIRCHGESSNER; RAHL & RAHL,
P.A., a Florida professional association;
PATRICIA RAHL; and BRIAN RAHL, et al.

        Defendants.

_____/

## DEFENDANTS', PATRICIA RAHL, BRIAN RAHL, RAHL & RAHL, P.A., MOTION FOR SANCTIONS  PURSUANT TO RULE 11(c) FED. R. CIV.P. AND INCORPORATED MEMORANDUM OF LAW

The Defendants, Patricia Rahl, Brian Rahl, and Rahl and Rahl, P.A., (hereinafter referred to as the RAHLS or the RAHL Defendants) by and through their undersigned attorney, and pursuant to Rule 11(c) of the Federal Rules of Civil Procedure move this Honorable Court for sanctions in these proceedings against the Plaintiff, Gerhard E. Maale, and against the Plaintiff's counsel, Ryon McCabe, McCabe Rabin P.A, Gary Woodfield, Simeon Brier, Jaime Guttman, and Edward, Angell, Palmer & Dodge, LLP.

### SUMMARY OF ARGUMENT

This case is set for trial in two months.  As the court recently pointed out, "this case has been pending and hotly litigated since February of 2008.(D.E. 442).  Discovery is now complete, and as a result, it has become even more apparent that this case, pursued with such vengeance by the Plaintiff against his former wife and two of her friends[1], has no reasonable factual basis, is

---

[1] The Rahls were also attorneys for MAALE and KIRCHGESSNER for over twenty years, but did not represent them in the purchase of the club memberships. (D.E. 234 Deposition of KIRCHGESSNER).

not legally tenable, and was filed and pursued in bad faith for improper purposes. The basis for Defendants' request for the imposition of Rule 11 sanctions is twofold: 1) Plaintiff and his counsel have violated Rule 11 by filing and pursuing pleadings containing factual contentions with no evidentiary support and 2) Plaintiff and his counsel have violated Rule 11 by filing and pursuing a case that is clearly barred by the statute of limitations and the statute of repose.

## BACKGROUND

1.      Plaintiff, through counsel, has filed a Complaint, an Amended Complaint, a Second Amended Complaint, and a Third Amended Complaint, all alleging that he was induced by his ex-wife, KIRCHGESSNER, and two of their friends, Defendants PATRICIA RAHL and BRIAN RAHL, to invest $1,000,000 in club memberships in 1993 through 1996 and $900,000 in a house in 2001, both in the Turks and Caicos, known as the "Caicos Beach Club Resort and Marina" (the "Project").

2.      It is apparent that Plaintiff and Plaintiff's counsel have advanced claims or legal contentions against the RAHLS that are precluded by the statute of limitations and the statute of repose. Clearly, had Plaintiff and his counsel made a reasonable inquiry, as required by Rule 11, Fed R. Civ.P., prior to filing any of the four complaints it would have been apparent to them that all such claims are barred by the statute of limitation and the statute of repose. Obviously, no such investigation or inquiry was made.

3.      In making the allegations, representations and factual contentions in the Complaint that the RAHLS had defrauded the Plaintiff of $1,950,000.000, the Plaintiff and his attorney either knew or should have known that such allegations, representation and factual contentions were untrue.

4.      The factual allegations and contentions of the Complaint have no evidentiary support and will not have evidentiary support, as there is none. In particular, the basis for the

2

allegations of the Plaintiff's loss of $1,950,000.000 are a series of checks attached as Exhibits to each of the four iterations of the complaint.

5.     The Plaintiff's pleadings demonstrate that all the alleged investments took place between 1993 and 1996, and then in 2001.

6.     Plaintiff and his attorney have full knowledge, or in the exercise of reasonable care, should have known that there is absolutely no evidentiary foundation to support his claims, and therefore the Plaintiff's claims are baseless, unwarranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law, as "good faith" requires.

7.     On June 2, 2010, the undersigned sent correspondence to counsel for MAALE, notifying them of the intent to serve a Motion for Rule 11 Sanctions, and requesting a response no later than June 7, 2010. (Ex. A). Counsel for MAALE did not respond. On June 9, 2010, the RAHLS served, by hand delivery, a copy of this motion and memorandum of law to counsel for Plaintiff requesting that Plaintiff dismiss his claims against them.  More than 21 days have passed since then, and Plaintiff has not dismissed his claims against the RAHLS.

8.     If this Court finds that Rule 11 has been violated, the RAHLS respectfully request that this Court impose sanctions against Plaintiff and Plaintiff's counsel consisting of attorneys' fees and costs incurred by the RAHLS in defending this suit and order an evidentiary or other hearing to determine the amount of those attorneys' fees and costs.

9.     As permitted by Fed.R.Civ.P. 10(c), the RAHLS incorporate herein by reference 1) their Motion for Summary Judgment previously filed herein (D.E. 436), which sets forth in detail their arguments regarding the statute of limitations and the statute of repose; 2) the Motion for Summary Judgment previously filed herein by KIRCHGESSNER (D.E. 437) which sets forth in detail her arguments regarding collateral estoppel and res judicata; and 3) the Statement of

Undisputed Facts (D.E. 435) filed by the Defendants to support their Motions for Summary Judgment, as well as the pending Motion to Dismiss the Third Amended Complaint. (D.E. 401).

## INTRODUCTION

The instant case was filed in February of 2008. The RAHLS filed a Motion to Dismiss the original Complaint (D.E. 15) arguing that all of Plaintiff's claims against the RAHLS arose from his alleged investment during the years 1993 to 1996 and in 2001, and were therefore barred by the applicable statute of limitations. Since March 3, 2008, the date of filing that Motion to Dismiss, the Plaintiff and his counsel have been on notice of the statute of limitations. The RAHLS also raised the statute of limitations as an affirmative defense in the Answer to the Amended Complaint. (D.E. 69). The Court has noted that a claim for fraud under Florida law cannot be brought twelve years after the actions constituting the claim occurred, regardless of the date the fraud was or should have been discovered. Fla. Stat. § 95.031(2)(a) (2003). (D.E. 66). There is absolutely no question that the Plaintiff and his counsel have been on notice regarding the expiration of the statute of limitation and the statute of repose.

Knowing full well that both the statute of limitations and the statue of repose have expired, Plaintiff has nonetheless vigorously pursued this litigation against the RAHLS and has achieved his goal of creating financial hardship for the RAHLS. The RAHLS have been tangled in the procedural complexities of the Federal Court system for over two years and has been forced to expend time, effort and money to protect their interests. They have recently filed a Statement of Undisputed Facts (D.E. 435) and a Motion for Summary Judgment (D.E. 436) which demonstrate clearly that they are entitled to judgment in their favor as a matter of law. Yet, even after a review of the RAHLs' Motion for Summary Judgment, Plaintiff and his attorneys have continued to pursue these unfounded claims against them, leaving no doubt as to the real motive behind the continued and malicious prosecution of this case against the RAHLS.

4

This Court should impose the necessary sanctions against him and his attorneys pursuant to Rule 11, Fed. R. Civ.P.

## MEMORANDUM OF LAW

### A.  Applicable Standard for Imposing Rule 11 Sanctions

Fed.R.Civ.P. 11 provides:

**a) Signature.** Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

**c) Sanctions.**

**(1) _In General._** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11

"In assessing Rule 11 sanctions, it is first determined whether the party's claims are objectively frivolous in view of the facts or law and, if they are, whether the person who signed the pleadings should have been aware that they were frivolous." *McGuire Oil Co. v. Mapco, Inc.,*

958 F.2d 1552, 1563 (11th Cir.1992). "The objective standard for evaluating conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998).

The Eleventh Circuit requires a two-step inquiry: (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. *Id.* at 524. See also, *Byrne v. Nezhat,* 261 F.3d 1075, 1105 (11th Cir. 2001). A claim is frivolous when the party should have been aware that the claim had no basis in law or fact if he or she had made a reasonable inquiry[2]. *Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir. 1996); *Mroz v. Glatter,* 65 F.3d 1567, 1573 (11th Cir. 1995). The standard is an objective one – courts must determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Kaplan v. Daimler Chrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003).

"Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Baker.* at 524. Filing and maintaining this lawsuit which is barred by collateral estoppel, res judicata, the statute of limitations and the statute of repose, (1) has no reasonable factual basis; (2) has no reasonable chance of success; and (3) is filed in bad faith for an improper purpose.

When filing a pleading in federal court, an attorney certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and is not

---

[2]  It is evident that Plaintiff's counsel did not review the Texas divorce court file before filing the instant case, despite their knowledge of the proceeding, and their obligation to do so.  For example, no transcript of MAALE's trial testimony had ever been transcribed until the Rahls and their counsel traveled to Dallas on July 25, 2008 to review the file, obtain copies and meet with KIRCHGESSNER's divorce counsel.

presented for any improper purpose. *Byrne*, 261 F.3d at 1105. Rule 11 imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. *Touron v. Dade County*, 119 F.R.D. 41, 44 (S.D. Fla. 1988). See *Worldwide Primates*, 87 F.3d at 1255 ("under Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit"). As stated in *Gutierrez v. City of Hialeah*, 729 F.Supp. 1329 (S.D. Fla. 1990) (citations omitted; emphasis by court): "Rule 11 places an affirmative duty on an attorney to inquire into the factual basis of a paper before filing it with the court. A signor can no longer rely solely on his personal interpretation of the facts, conclusory allegations of fact, speculation, suspicion, rumor or surmise to sustain a reasonable belief. Rather, the facts underlying the paper must either be admissible evidence, or at a minimum, facts likely to lead to such evidence." *Id.* at 1333. Likewise, Rule 11 requires a reasonable inquiry into the law before filing a pleading. Rule 11 specifies that papers must be "warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law." *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690 (M.D. Fla. 1992). In the case of a complaint, a prefiling investigation of the law will not pass muster under Rule 11 where the complaint has absolutely no chance of success under the existing precedent, as is the situation in the case at bar. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir.1991).

The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers. *Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir. 2001). Rule 11 requires district courts to impose appropriate sanctions, after notice and a reasonable opportunity to respond where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact and therefore has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose. *Ricccard v. Prudential Insurance*

*Company,* 307 F.3d 1277, 1294 (11th Cir.2002) (citing Fed.R.Civ.P. 11(b)). See also, *Busse v.*

*Lee County, Florida,* 2007 WL 4350863 (M.D. Fla. Dec. 11, 2007)

**B.**     **Plaintiff and His Counsel Have Violated Rule 11 by Filing and Pursuing Pleadings**
          **Containing Factual Contentions With No Evidentiary Support**

        The Plaintiff's pleadings throughout this litigation have been replete with factual

contentions totally lacking in evidentiary support. For purposes of this Motion, the RAHLS will

focus on the most egregious of these contentions - contentions which are central to the

foundation of the Plaintiff's claims against them.

**1.**     **Allegation:** The Defendants fraudulently deprived the Plaintiff of $1,950,000.00.[3]

        **The truth:** The Court need look no further than Plaintiff's response to Defendant's

Request for Admissions. (Ex. B).

>   6.   Admit that you have no documents which, on their face, conclusively prove
>        your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner induced you to
>        invest over $1.8 million into a real estate Project being developed in the
>        Turks and Caicos, know as the "Caicos Beach Club Resort and Marina."
>
>        Answer: Admitted in part and denied in part. Plaintiff does not have
>        documents to conclusively prove the entire $1.8 million, due to the
>        unavailability of bank records, but Plaintiff does have documents to prove a
>        portion of the $1.8 million due.

There is no evidentiary support for the allegation regarding this sum of money, which alleged

investment is the lynchpin of all of Plaintiff's claims. Although Plaintiff claims he does not have

access to his bank records from this time period, it is important to note that he must have had

---

[3] Even with this fundamental claim, Plaintiff offers a variety of different sums that he has lost through the alleged fraud. In ¶33 of the Third Amended Complaint, he alleges an investment of $1 million for the ten units; in ¶54 he alleges an investment of $900,000.00 for the house. Assuming those numbers are correct, the total is $1,900,000 rather than the $1,950,000.00 that he alleged. Furthermore, in his deposition, Maale testified he paid $950,000 rather than $1 million for the 10 units. (Maale Deposition, page 120), which would be a total of $1,850,000. After four iterations of the complaint, and thirty months of litigation, it is difficult to conceive how the Plaintiff cannot even allege with certainty what he allegedly invested. Similarly, Plaintiff claimed in the divorce he was to receive 10 units; in the instant case his claim has changed to 13 units.

access to his bank records from 1992 to 2001 because he has attached various checks from that time period to his divorce pleadings and as exhibits in this case. In fact, Plaintiff attached checking account statements and cancelled checks dating back to 1980s in the divorce action, but somehow does not have the checks that support his claims in this case. It appears that Plaintiff did nothing more than gather any checks written to the Rahls and attach them to his complaints. The Rahls, however, had been attorneys for MAALE in many other matters, and these checks represent other transactions having no relationship to the Project, including among others, the purchase of a 46.5 foot Bertram (D.E. 435, App. A). Plaintiff alleges one wire payment and eight checks. (¶37 – 54 of Third Amended Complaint). Only two of the checks have completed Memo Lines, and both indicate items other than the Turks & Caicos Project. Five of these payments are outside the time frame for payment established in the Forward Purchase Agreement (one earlier, and four up to seven years later). Only one check is in an amount specified in the Agreement. Plaintiff has adduced no other evidence during the 30 months that this case has been pending to support his allegations of his alleged investments.

2.    **Allegation:** Plaintiff wire transferred to the Project for $250,000.00 in November 1992. (D.E. 359, Paragraph 37).

   **The truth:** There is no documentation regarding the existence of a wire transfer in that amount, despite the fact that the Plaintiff alleges that the money was transferred from his personal bank account. Now, 18 years later, he claims the RAHLS should have the documents to support this contention. Additionally, the Forward Purchase Agreement (D.E. 235-3) was not signed until January 30, 1993, and contains no reference to any payment of $250,000.00 having been made by MAALE toward the Purchase Price prior to the execution of the contract, although it does indicate that $100,000 of the $1 million purchase price shown on the face of the contract was due upon the signing. Furthermore, the Forward Purchase Agreement specifically requires

payments in installments of $100,000.00, the first due on signing by Maale, the second due on signing by Caicos Beach Club Charter, Ltd., and the balance to be paid in quarterly installments of $100,000.00. The entire $1,000,000.00 was due no later than December 31, 1994 and the multitude of documents produced by Plaintiff do not contain any other evidence of payment for these memberships as required in the Forward Purchase Agreement, as no such documentation exists now or has ever existed.

3. **Allegation:** Plaintiff tendered a check on February 26, 1993, in the amount of $49,121.31 as an investment in the Project. (Paragraph 38; Composite Exhibit A to Third Amended Complaint).

**The truth:** This allegation is a blatant and intentional attempt by Plaintiff and his counsel to mislead the Court. This check is totally unrelated to the Turks & Caicos Project. The memo line on the check reads: "Loan to Maale Group for Vineyard Property". Maale has admitted under oath in the trial in the divorce case[4] on February 23, 2007 that this check has nothing to do with the instant lawsuit or the Turks & Cacios Project. (D.E. 435-5 and 435-6). Maale has admitted under oath in his deposition on November 24, 2009, that this check has nothing to do with the instant lawsuit or the Turks & Cacios Project and "should not be in there". (D.E. 435, App. A, p. 154) Despite the sworn testimony of the Plaintiff in two separate legal proceeding, Plaintiff and his attorneys continue to include this irrelevant improper document as supporting "evidence" of the claim. This check is listed in each of the four separate iterations of the complaint in this case. Interestingly enough, in Plaintiff's Response to Motion to Dismiss Third Amended Complaint (D.E. 444), this check is no longer listed as supporting Plaintiff's claims; however, the amount of the claim has not been reduced by that amount.

---

[4] Had MAALE's attorneys reviewed the Texas divorce file, they would have known this.

4.     **Allegation:** Plaintiff tendered a check on August 13, 1995 in the amount of $75,700.00 payable to the Rahls as an investment in the Project. (Paragraph 44 copy attached as Composite Exhibit A to Third Amended Complaint).

**The truth**:     There is no notation on the memo lines that indicates the purpose of this payment. Payments pursuant to the Agreement were to be made in $100,000.00 installments, and that the final payment was required to made no later than December 31, 1994.

5.     **Allegation:** Plaintiff tendered a check on April 1, 1996, in the amount of $70,000.00 payable to the Rahls as an investment in the Project. (Paragraph 45 copy attached as Composite Exhibit A to Third Amended Complaint).

**The truth:**     There is no notation on the memo lines that indicates the purpose of this payment.  Payments pursuant to the Agreement were to be made in $100,000.00 installments, and that the final payment was required to be made no later than December 31, 1994.

6.     **Allegation:** Plaintiff tendered a check October 21, 2001, in the amount of $8,923.80 payable to the Rahls as an investment in the Project. (Paragraph 54; copy attached as Composite Exhibit A to Third Amended Complaint).

**The truth:** This allegation is a blatant and intentional attempt by Plaintiff and his counsel to mislead the Court. The memo line on the check reads: "Hobiecat", not the Turks & Caicos Project. Had Plaintiff's counsel reviewed the Texas divorce file, they would have known that MAALE was awarded this boat in the divorce.  This check is listed in each of the four separate iterations of the complaint in this case.  Interestingly enough, in Plaintiff's Response to Motion to Dismiss Third Amended Complaint (D.E. 444) filed on May 27, 2010, this check is no longer listed as supporting Plaintiff's claims; however, once again, the amount of the claim has not been reduced by that amount.

7.   **Allegation:**   The actual sales price of the house in the Bahamas was $2.2 million, and of that amount $900,000.00 from the sale of a house in the Bahamas was paid into the Project, as the Project was allegedly in financial difficulties and Kim's father, who was the alleged developer, was going to provide Plaintiff with a house located at the Project.

   **The truth:**   There is absolutely nothing that supports this allegation – it is made from whole cloth.   Plaintiff admits he has no written evidence of this investment (D.E 435,App. A p.136, 139); the Sales Contract indicates the purchase price of $1.3 million (D.E. 435); Plaintiff admits that the written contract for the sale of the house was for the amount of $1.3 million (D.E 435, App. A p.135); he admits that $1.3 million was disbursed by the Rahls on his behalf to pay off mortgages and other debts (D.E. 435, App. A p.141).  Most importantly, the purchaser of the property, Richard Lazzara has submitted an Unsworn Declaration Under Penalty of Perjury (D.E. 435, Appendix E), verifying that he paid $1.3 million for the Maale house in the Bahamas.   Had Plaintiff's counsel checked with the Bahamian attorney who handled the real estate transaction, or consulted the public records, they would have known the actual purchase price.  If they had reviewed the Texas divorce file, they would have discovered that his claim for the $900,000 was already determined.  Had Plaintiff's counsel done any due diligence regarding Mr. Lazzara's purchase of the Bahamas property, they would have known there was no evidentiary support for Plaintiff's allegations, yet once again in total disregard for the truth and each of their responsibilities, Plaintiff and his counsel have continued to present this fiction to the Court.

8.   **Allegation:**   Defendants misrepresented the progress and the status of the Project to the Plaintiff to conceal the fraud and prevent him from discovering the fraud.

   **The truth:**   There is no evidence that Plaintiff has or can produce that could overcome the fact that he had personal, first-hand knowledge of the Project, and that nothing was concealed from him. Plaintiff has not produced all of the flight records for the late 1990s, but based upon

the documents he did produce, both in this case and in his divorce case, it is clear that the Plaintiff admittedly visited the Project site over twenty times (which number does not include commercial flights) and personally observed the progress of the construction and the status of the Project. (D.E. 435, App. B).   Plaintiff has even affirmatively pled in all four iterations of his Complaint, including the Third Amended Complaint, that he visited the Project on numerous occasions. "On August 9, 2000, Maale traveled to the Turks and Caicos with Kim Francis and their children to visit the Project." ¶49.  See also, paragraphs ¶53 (visit to Project in February 2002); ¶54 (visit to Project in November 2003); ¶55, (visit to Project in February 2003); ¶56 (visit to Project in June 2003); ¶57 (visit to Project on July 28, 2003 to August 2, 2003); ¶58 (visit to Project on August 23, 2003); ¶60 (visit to Project on December 24, 2004); and ¶6O (visit to Project on March 24, 2005).   Additionally, the Plaintiff has even produced photographs in response to Requests for Production which photographs illustrate the actual status of the construction of the Project in 2003.  (D.E. 236-1).

"[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." *Advisory Committee Notes re 1993 Amendment*, Fed. R. Civ. P. 11 "It [Rule 11] also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable.... [A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit. *Id.*   It is important to note that despite this Court's order dismissing five of the six corporate defendants, Plaintiff has not voluntarily dismissed the last of the corporate defendants in this action even though all corporate defendants' arguments are the same.

Rule 11(b)(3) permits the imposition of sanctions if factual contentions lack evidentiary support. Fed.R.Civ.P. 11(b)(3). *Perez v. Pavex Corp.*, 2008 WL 906457 (M.D. Fla. Apr. 3, 2008)

> The 1993 amendment made substantial changes in the wording of the certification requirement and clarified its elements by separating them into four numbered subparagraphs. These changes made it clear that the certification applies to both legal and factual contentions by both plaintiffs and defendants and attests that they are either currently supportable, or are likely to have evidentiary support following "investigations or discovery," or, if so identified, "are reasonably based on a lack of information or belief." The Advisory Committee Note accompanying the amendment makes it clear that no change in the attorney's obligation to "stop and think" before signing and submitting a paper was intended and that is captured in the words "formed after an inquiry reasonable under the circumstances" in Rule 11(b).

FPP § 1334, 5A Fed. Prac. & Proc. Civ. § 1334 (3d ed.) "[A]ll factual contentions in a pleading must either be supported by evidence or qualified by a statement that such factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. *Jozwiak v. Stryker Corp.*, 2010 WL 147143 (M.D. Fla. Jan. 11, 2010). Discovery is now ended and no support for these factual contentions has been discovered. A complaint is factually groundless and merits sanctions where the plaintiff has absolutely no evidence to support its allegations. *In re Gen. Plastics Corp.*, 170 B.R. 725 (Bankr. S.D. Fla. 1994).

Rule 11, Federal Rules of Civil Procedure, was adopted to "require litigants to 'stop-and-think' before initially making legal or factual contentions." *Neighborhood Research Institute v. Campus Partners for Community Urban Development*, 212 F.RD. 374, 378 (S.D. Ohio 2002) (citing Fed.R.Civ.P. 11 advisory committee notes (1993 Amendments)). The rule requires district courts to impose "appropriate sanctions," after notice and a reasonable opportunity to respond, where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose. *Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *Riccard v. Prudential Insurance Company*, 307 F.3d 1277, 1294 (11th Cir. 2002).

14

In *Golemi v. Creative Food* Design, Ltd., 116 F.R.D. 73, 77 (D.D.C. 1987), the Court stated that counsel has a duty "to continually re-evaluate his litigation position" as the facts of the case come to light. Wasting judicial resources is further grounds for Rule 11 sanctions. *Cannon v. Loyola University of Chicago,* 116 F.R.D. 244, 245-246 (N.D. Ill. 1987). ). Nothing could be a greater waste of this Court's time than re-litigating matters already decided by another court, submitting this court to a totally unnecessary avalanche of pleadings. Adding, after two years of litigation, an additional eight defendants, only to dismiss two immediately, and only to have five of the other six dismissed for lack of jurisdiction, is also a complete waste of this Court's time[5]. Plaintiff and his attorneys had "every reason to know that they intended to rely upon proof incapable of sustaining their factually groundless claim." *Collins v. Walden,* 834 F.2d 961, 966 (11th Cir. 1987). After performing the reasonable inquiry that Rule 11 requires, the attorneys should not have signed any of the four complaints in this action. Their signature constitutes a violation of Rule 11 and sanctions are mandated. *See Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987) (in banc); *Florida Monument Builders v. All Faiths Memorial Gardens,* 605 F.Supp. 1324 (S.D.Fla.1984).

The instant RICO and related fraud claims arise as a result of a prolonged and bitter divorce proceeding between MAALE and KIRCHGESSNER, the results of which divorce did not meet MAALE's expectations, and his subsequent efforts to inflict damage upon those he viewed as supporting his wife in the divorce. "If there are any cases where conclusory allegations of conspiracy and wrongdoing are likely to be made against a judge and other persons involved in the dispute, they are cases such as this, where the strongest emotions of both parties are unleashed. A court must strictly scrutinize conclusory allegations in a case like this, given the ease with which they can be made by a disappointed party." *Dykes v. Hosemann,* 743 F.2d 1488,

---

[5] The Motion to Dismiss the last remaining corporate Defendant is fully briefed and pending.

1500-01 (11th Cir.1984) "The ethical duty to zealously defend one's client does not preclude an attorney from encouraging a client to "cool off" or from dissuading the client from filing a complaint based purely on passion rather than on fact." *Collins* at 966 (11th Cir. 1987)

Any reasonable analysis of the facts and the law should have convinced Plaintiff's attorneys that these matters are barred by the statute of limitations and the statute of repose.

**C.**    **<u>Filing and Maintaining a Case that is Barred by the Statute of Limitations and the Statute of Repose Violates Rule 11</u>**

It is apparent that Plaintiff's counsel failed to conduct a reasonable inquiry of the existing law regarding the applicable statute of limitations before filing the Complaint, the Amended Complaint, the Second Amended Complaint or the Third Amended Complaint.   It is also apparent that Plaintiff's counsel failed to conduct a reasonable inquiry of the existing law regarding the applicable statute of repose before filing the Complaint, the Amended Complaint, the Second Amended Complaint or the Third Amended Complaint.   It is also apparent that the Plaintiff's counsel disregarded the Court's position regarding the statute of repose. (As this Court observed in its Order of December 31, 2008 MAALE's ". . . state law claim for fraud (Count VI), Fla. Stat. § 95.11(3), cannot be brought twelve years after the actions constituting the claim occurred, regardless of the date the fraud was or should have been discovered. Fla. Stat. § 95.031(2)(a) (2003). Thus, any allegations as to a state law claim of fraud that occurred twelve years before February 8, 2008 would be barred." (D.E. 66, p. 10).   Despite this, the Plaintiff and his counsel have filed two additional iterations of the complaint ignoring the limitations of the Florida statute of repose.

> Courts have not hesitated to find sanctionable conduct under Rule 11 for bringing claims clearly time-barred under the respective statutes of limitations. *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1091 (3rd Cir.1988) (applied two-year statute of limitations for claims under 42 U.S.C. §§ 1981 and 1983); *United States v. Gavilan Joint Community College Dist.*, 849 F.2d 1246, 1247, 1250-51 (9th Cir.1988) [applied six-year statute of limitations for contract

actions under 28 U.S.C. § 2415(a) brought by the United States]; *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 751-54 (7th Cir.1988), [quoting *Dreis & Krump Mfg. v. Intern. Ass'n of Machinists*, 802 F.2d 247, 255 (7th Cir.1986) ], (" 'No competent attorney who made a reasonable inquiry into the state of the law ... could have thought the [pleading] had any possible merit. He should have known it was time-barred.' "); *Baker v. Citizens State Bank of St. Louis Park*, 661 F.Supp. 1196, 1197 (D.Minn.1987) (two-year statute of limitations applied as to claims of misrepresentation, conversion, intentional infliction of emotional distress and breach of fiduciary duty and six-year statute of limitations as to fraud claim); *Van Berkel v. Fox Farm and Road Machinery*, 581 F.Supp. 1248, 1249-51 (D.Minn.1984) (violated Rule 11 in not making a reasonable inquiry of fact regarding the date of the accident in a product liability action and violated 28 U.S.C. § 1927 in not dismissing the lawsuit after learning it was barred by the statute of limitations).

*Murphy v. Klein Tools, Inc.*, 123 F.R.D. 643, 646-647 (D. Kan. 1988)

[M]ore appropriate concern for the requirements of Rule 11 would have counseled caution in the filing of a complaint that was so clearly time-barred as the one here. *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1385 (4th Cir.1991) ("Where an attorney knows that a claim is time-barred and has no intention of seeking reversal of existing precedent ... he makes a claim groundless in law and is subject to Rule 11 sanctions."); *McHenry v. Utah Valley Hosp.*, 724 F.Supp. 835, 838 (D.Utah 1989) (concluding that "a reasonable inquiry into the law would have shown that [the plaintiff]'s claim was time-barred and the statute of limitations is constitutionally sound," and awarding Rule 11 sanctions

*Estate of Barrett ex rel. Barrett v. United States*, 337 F. Supp. 2d 370, 377 (D. Mass. 2004) aff'd sub nom. *Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d 28 (1st Cir. 2006)

The case law is replete with examples of a court's imposition of Rule 11 sanctions when the statute of limitations clearly had barred the filed claim. In the instant case it is apparent, and any reasonable inquiry by Plaintiff's counsel would have shown, that all of Plaintiff's claims are time-barred. Plaintiff's state law supplemental claim of fraud is also clearly barred by the Florida Statute of Repose, as pointed out to the Plaintiff in December of 2008 by this Court.

## CONCLUSION

Rule 11 sanctions against Plaintiff and Plaintiff's counsel are appropriate in this case. The RAHLS respectfully request that the Court impose such sanctions as the Court deems just and proper including but not limited to directing payment to the RAHLS of all of the reasonable

attorney's fees and courts costs and other expenses incurred by them as a direct result of the violation of Rule 11(b), Fed.R.Civ.P., by the Plaintiff and Plaintiff's attorneys, and that the Court order an evidentiary or other hearing to determine the amount of those attorney's fees and costs.

### CERTIFICATE OF COUNSEL

As required by Rule 11(c) of the Federal Rules of Civil Procedure, the RAHLS served this motion on Plaintiff's counsel by hand delivery on June 9, 2010, at least 21 days prior to filing same with the Court.

### CERTIFICATE OF SERVICE

I hereby certify that on _July 6_ 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated: _July 6_ 2010
Boca Raton, Florida

Respectfully Submitted,

/s/ Harriet R. Lewis
HARRIET R. LEWIS
Florida Bar No.: 331015
HLewis@lsdlaw.net
LEWIS STROUD & DEUTSCH, P.L.
1900 Glades Road, Suite 251
Boca Raton, FL 33431
Tel: (561) 826-2800
Fax: (561) 826-2828

18

## SERVICE LIST

Ryon Michael McCabe, Esquire
Adam Todd Rabin, Esquire
McCabe Rabin, P.A.
1601 Forum Pl, Ste. 301
West Palm Beach, FL 33401-8102
Telephone:     561.659.7878
Facsimile:     561.242.4848
e-mail: rmccabe@mccaberabin.com
e-mail:arabin@mccaberabin.com
**COUNSEL FOR PLAINTIFF**

Gary Woodfield, Esquire
Haile Shaw & Pfaffenberger, PA
660 US Highway One, 3rd Floor
North Palm Beach, Florida 33408
Telephone:     (561) 627-8100
Facsimile:     (561) 622-7603
Email: Gwoodfield@haileshaw.com
**FORMER COUNSEL FOR PLAINTIFF**

Jaime Guttman, Esquire
Simeon Brier, Esquire
Edwards Angell Palmer & Dodge, LLP
525 Okeechobee Blvd., Suite 1600
West Palm Beach, Florida 33401
Telephone:     (561) 833-7700
Facsimile:     (561) 655-8719
Email: Jguttman@eapdlaw.com
Email: Sbrier@eapdlaw.com
**FORMER COUNSEL FOR PLAINTIFF**

Harriet R. Lewis
Gary K. Oldehoff, Esquire
Lewis, Stroud & Deutsch, P.L.
1900 Glades Road-Suite 251
Boca Raton, FL 33431
Telephone: 561.826.2800
Facsimile: 561.826.2828
e-mail: hlewis@lsdlaw.net
e-mail: goldehoff@lsdlaw.net
**COUNSEL FOR DEFENDANTS
KIM KIRCHGESSNER, RAHL &
RAHL, P.A., PATRICIA RAHL
AND BRIAN RAHL**

Bruce S. Rogow, Esquire
Broward Financial Centre
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, Fl. 33394
Telephone:     954.767-8909
Facsimile:     954.764-1530
Email: brogow@rogowlaw.com
**COUNSEL FOR DEFENDANTS
KIM KIRCHGESSNER, RAHL &
RAHL, P.A., PATRICIA RAHL
AND BRIAN RAHL**

E. Bruce Johnson, Esquire
Johnson, Anselmo, Murdoch,
Burke, Piper & Hochman, P.A.
2455 E. Sunrise Blvd., Ste. 1000
Fort Lauderdale, FL 33304
Telephone:     954.463.0100
Facsimile:     953.463.2444
e-mail: johnson@jambg.com
**COUNSEL FOR DEFENDANTS CAICOS
BEACH RESORT AND MARINA 1A,
LTD., CAICOS BEACH CLUB RESORT
& MARINA, LTD., SPLASH HOLDINGS,
LTD., HIGH POINT ORGANIZATION
HOLDING COMPANY, LTD., AND
CAICOS BEACH CLUB DEVELOPMENT,
LTD.**

*Lewis Stroud & Deutsch, P.L.*

*Harriet R. Lewis, Esq.*                                        *Direct Dial: 561 826 2801*

June 2, 2010

**VIA HAND DELIVERY**
Ryon Michael McCabe, Esquire
McCabe Rabin, P.A.
1601 Forum Pl, Ste. 301
West Palm Beach, FL  33401-8102

Re:     *Maale v. Kirchgessner*: Notice of Intent to Serve Rule 11 Motion
        on behalf of the Rahl Defendants

Dear Mr. McCabe:

Since the inception of the above styled case, we have repeatedly asserted that the claims against our clients, Patricia Rahl, Brian Rahl, and Rahl & Rahl, P.A., are barred by the statute of limitations and the statute of repose.  Had Plaintiff and counsel made a reasonable inquiry prior to filing this action, which inquiry would have included a review of the entire Maale v. Maale divorce case, it would have been apparent to them that all such claims are barred.

Furthermore, as you surely are aware, Rule 11 imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.  A review of the divorce case would have revealed, among other facts, that the issue of the sale of the Bahamas House and the purchase of an alleged house in The Turks and Caicos Islands had been fully determined in the divorce case.  The law also imposes an affirmative duty on Plaintiff and Plaintiff's attorney to conduct a reasonable inquiry in order to ensure that it remains well grounded in fact before continuing to make the factual assertions contained in the Complaint.  A party who discovers facts that defeat his case has a duty to dismiss the case as soon as the facts become known, and counsel has a duty to continually re-evaluate his litigation position as the facts of the case come to light. The obligation to make reasonable inquiry is now your obligation, especially in light of all the evidence that has been adduced during the discovery phase of this litigation, regardless of whether or not you were counsel of record for Plaintiff at the time these facts were established.

At various stages of this case, your client has claimed that he was defrauded of $1,850.000, or $1,900.000 or $1,950.000. Based upon the evidence that has come to light, it is clear that there is no evidence to support such claims. A review of the only evidence your client has produced to support these claims demonstrates the lack of evidentiary basis. Two of the checks attached to the Third Amended Complaint have completed Memo Lines indicating items other than the Turks & Caicos Project. Five of these checks are from dates outside the time frame for payment

*One Lincoln Place, 1900 Glades Road, Suite 251, Boca Raton, Florida 33431*
*Telephone — 561 826 2800   Facsimile — 561 826 2828*


EXHIBIT
A

established in the Forward Purchase Agreement (one earlier, and four up to seven years later). Only one check is in an amount specified in the Agreement. Plaintiff has adduced <u>no other evidence</u> during the twenty-eight months that this case has been pending to support his allegations of his alleged investments. Additionally, your client has produced no documentation to support the allegations of a $900,000.00 investment into the Project from the proceeds of the Maales' house in the Bahamas in 2001. The evidence revealed to date in this case makes it clear that the purchase price for this house was $1.3 million as specified in the Purchase and Sale Contract, and as independently verified by the Purchaser, Dr. Richard Lazzara, and that all of the proceeds were used to eliminate Dr. Maale's debts, as the Rahls were so directed.

Furthermore, the deposition testimony of your own client clearly indicates that he was completely aware of the status of the Project and his alleged investment in the Project at all times from 1993 to date, based upon his personal visits to the site. The record is clear that any claims Dr. Maale may have had are barred by the statute of limitations and the statute of repose. The court identified the relevant Florida statute of repose in its order (D.E. 66), yet despite this judicial comment, the Plaintiff has filed two additional iterations of the complaint including a claim for fraud that is clearly barred by the statute of repose.

It is our intention to serve a Motion for Rule 11 Sanctions upon you and client, as well as the former attorneys for your client. As a courtesy we are presenting you with this informal notice before we serve the Motion for Rule 11 Sanctions. If you do not voluntarily dismiss all claims against the Rahls by 5:00 p.m. Monday, June 7, 2010, we will have no choice but to serve such a Motion to initiate Rule 11 proceedings against you, your firm, Gary Woodfield, Simeon Brier, Jamie Guttman, Edwards & Angell and Gerhard Maale.

Sincerely,

Harriet Lewis

Harriet Lewis


Cc:   Gary Woodfield
      Simeon Brier
      Jamie Guttman


*Lewis Stroud & Deutsch, P.L.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80131-CIV-DIMITROULEAS/Snow

GERHARD EMIL MAALE, III,

     Plaintiff,

v.

KIM FRANCIS KIRCHGESSNER,
RAHL & RAHL, P.A., a Florida professional
association, PATRICIA RAHL, BRIAN RAHL,
HIGH POINT ORGANIZATION HOLDING
COMPANY, LTD., a foreign company, CAICOS BEACH CLUB
DEVELOPMENT, LTD., a foreign company, CAICOS
BEACH CLUB RESORT AND MARINA 1A, LTD.,
a foreign company, CAICOS BEACH CLUB RESORT AND
MARINA, LTD., a foreign company, CAICOS BEACH CLUB
LTD., a foreign company, and SPLASH HOLDINGS, LTD.,
a foreign company,

     Defendants.

_____

## PLAINTIFF'S ANSWERS TO DEFENDANT, PATRICIA RAHL'S, SECOND REQUEST FOR ADMISSIONS

### GENERAL OBJECTIONS

Plaintiff objects to use of the phrase "conclusively prove" as the term is vague, ambiguous and has not been defined by Defendant.

### ANSWERS

1.    Admit that you have no documents which, on their face, conclusively prove your claim that Caicos Beach Club is a corporation organized under the laws of the Turks and Caicos, British West Indies with its principal place of business located in the Turks and Caicos, British West Indies ("Turks and Caicos").

**ANSWER:**    Admitted as discovery has revealed no corporation known as "Caicos Beach Club."

2.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner committed a tort, in whole or in part, in the



EXHIBIT

B

State of Florida.

**ANSWER:   Denied.**

3.   Admit that you have no documents which, on their face, conclusively prove your claim that Kim Kirchgessner transacts business in the state of Florida.

**ANSWER:   Denied.**

4.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner employed the means and instruments of interstate commerce, including the United States mails and wires.

**ANSWER: Denied.**

5.   Admit that you have no documents which, on their face, conclusively prove your claim that you are a victim of an orchestrated scam exercised upon you by Patricia Rahl, Brian Rahl or Kim Kirchgessner..

**ANSWER: Denied.**

6.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner induced you to invest over $1.8 million into a real estate Project being developed in the Turk and Caicos, known as the "Caicos Beach Club Resort and Marina."

**ANSWER:   Admitted in part and denied in part.   Plaintiff does not have documents to conclusively prove the entire $1.8 million, due to the unavailability of bank records, but Plaintiff does have documents to prove a portion of the $1.8 million due.**

7.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner were developing a real estate Project in Turks and Caicos, known as the "Caicos Beach Club Resort and Marina."

**ANSWER:   Denied.**

8.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner intentionally misled you regarding the "Caicos Beach Club Resort and Marina" and your investment.

**ANSWER:   Denied.**

2

9.     Admit that you have no documents which, on their face, conclusively prove your claim that "Caicos Beach Club Resort and Marina" is yet to be completed.

**ANSWER:   Denied.**

10.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl, or Kim Kirchgessner refuse to provide you with the return of monies you claim to have invested in the "Caicos Beach Club Resort and Marina."

**ANSWER:   Denied.**

11.    Admit that you have no documents which, on their face, conclusively prove your claim that construction of the "Caicos Beach Club Resort and Marina" Project commenced in 1994, but as the date of filing the complaint in this case no phase of the Project has been completed.

**ANSWER:   Admitted as to the commencement date of the project.   Denied as to non-completion.**

12.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl and Brian Rahl traveled to Texas to market the Project to you, and other professionals in the Dallas area.

**ANSWER:   Denied.**

13.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner made statement to you, other investors and potential investors that the Project was being developed by a trustworthy and reputable company, which had other successful and highly profitable developments, including the High Point Resort in Orlando, Florida, and that this Project would be at least successful, if not more.

**ANSWER:   Denied.**

14.    Admit that you have no documents which, on their face, conclusively prove your claim that the statements attributed to Patricia Rahl, Brian Rahl or Kim Kirchgessner in the preceding paragraph were false and that Patricia Rahl, Brian Rahl, or Kim Kirchgessner knew the project was not going to be built as promised or in the time frame offered.

**ANSWER:   Admitted in part and denied in part.   Plaintiff does not have documents which conclusively prove Defendants' knowledge, but Plaintiff does have documents that evidence proof of such knowledge.**

15.    Admit that you have no documents which, on their face, conclusively prove your claim that

3

Patricia Rahl, Brian Rahl or Kim Kirchgessner made statements to you, other investors and potential investors that the Project would be completed in a timely fashion and would be ready for use and enjoyment by the dates promised.

**ANSWER:**   **Denied.**

16.   Admit that you have no documents which, on their face, conclusively prove your claim that the statements attributed to Patricia Rahl, Brian Rahl, or Kim Kirchgessner in the preceding paragraph were false and that Patricia Rahl, Brian Rahl or Kim Kirchgessner knew the Project was not going to be built as promised or in the time frame offered.

**ANSWER:**   **Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' knowledge, but Plaintiff does have documents that evidence proof of such knowledge.**

17.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner made statement to you, other investors and potential investors that the investment and returns would be tax-free.

**ANSWER:**   **Denied.**

18.   Admit that you have no documents which, on their face, conclusively prove your claim that the statements attributed to Patricia Rahl, Brian Rahl or Kim Kirchgessner in the preceding paragraph were false because Patricia Rahl, Brian Rahl or Kim Kirchgessner never intended to complete the Project as promised, or in the time frames represented to you.

**ANSWER:**   **Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' intent, but Plaintiff does have documents that evidence proof of such intent.**

19.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner made statements to you, other investors and potential investors that return on investment would be high, even with partial-occupancy rates.

**ANSWER:**   **Denied.**

20.   Admit that you have no documents which, on their face, conclusively prove your claim that the statements attributed to Patricia Rahl, Brian Rahl or Kim Kirchgessner in the preceding paragraph were false because Patricia Rahl, Brian Rahl or Kim Kirchgessner never intended to complete the project as promised, or in the time frames represented to you.

**ANSWER:**   **Admitted in part and denied in part.  Plaintiff does not have documents which**

4

conclusively prove Defendants' intent, but Plaintiff does have documents that evidence proof of such intent.

21.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner made statement to you, other investors and potential investors that guaranteed a return of all monies invested with interest.

**ANSWER:    Denied.**

22.    Admit that you have no documents which, on their face, conclusively prove your claim that the statements attributed to Patricia Rahl, Brian Rahl or Kim Kirchgessner in the preceding paragraph were false because Patricia Rahl, Brian Rahl or Kim Kirchgessner never intended to refund the deposit if the Project was not completed in a timely fashion as permitted.

**ANSWER:    Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' intent, but Plaintiff does have documents that evidence proof of such intent.**

23.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner have refused to return your deposit despite your demands.

**ANSWER:    Denied.**

24.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl or Brian Rahl provided you, other investors and potential investors with documents and materials consisting of the Caicos Beach Club Resort and Marina Brochure, a Forward-Purchase contract, a Long-Term Charter, and Rules and Regulations.

**ANSWER:    Denied.**

25.    Admit that you have no documents which, on their face, conclusively prove your claim that the documents described in the preceding paragraph contained several misrepresentations.

**ANSWER:    Denied.**

26.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl or Kim Kirchgessner made misrepresentations to you with the intention of inducing you into investing the Project.

**ANSWER:    Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' intent, but Plaintiff does have documents that evidence proof of such intent.**

5

27.    Admit that you have no documents which, on their face, conclusively prove your claim that between 1992 and 1995, approximately twelve professionals in the Dallas, Texas area were introduced to Patricia Rahl, Brian Rahl or Kim Kirchgessner by you.

ANSWER:    Denied.

28.    Admit that you have no documents which, on their face, conclusively prove your claim that between 1992 and 1995 these approximately twelve professionals (referred to in paragraph 27 above) in the Dallas, Texas area, made investments in the Project.

ANSWER:    Denied.

29.    Admit that you have no documents which, on their face, conclusively prove your claim that, at the insistence of Kim Kirchgessner, you invested $950,000.00 in the Project between 1993 and 1996.

ANSWER:    **Admitted as Plaintiff has not been able to obtain bank records regarding this portion of the investment.**

30.    Admit that you have no documents which, on their face, conclusively prove your claim that in November 1992, you traveled to the Turks and Caicos with Kim Kirchgessner and that during that trip she misrepresented to you the reality of the project, the high rate of return and tax-free nature of the investment, and the security of the investment.

ANSWER:    **Admitted as these were oral misrepresentations.**

31.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl and Brian Rahl orchestrated the transaction described in the preceding paragraph.

ANSWER:    Denied.

32.    Admit that you have no documents which, on their face, conclusively prove your claim that on February 26, 1993, Patricia Rahl, Brian Rahl and Kim Kirchgessner met with you at the house located at 9441 Strait Lane, Dallas, Texas for the purpose of inducing you to commit to additional investments in the Project and to execute a contract.

ANSWER:    Denied.

33.    Admit that you have no documents which, on their face, conclusively prove your claim that at that meeting, Patricia Rahl and Brian Rahl made several misrepresentations concerning the tax-free nature of the investment, its returns, a high rate of return, even with low-occupancy rates and the guaranteed return of all monies invested if the Project was not timely

completed.

**ANSWER:   Denied.**

34.   Admit that you have no documents which, on their face, conclusively prove your claim that at that meeting, Kim Kirchgessner reaffirmed the statements attributed to the Rahls in the preceding paragraph, and that she also misrepresented the security of the investment.

**ANSWER:   Admitted as the representations were oral.**

35.   Admit that you have no documents which, on their face, conclusively prove your claim that the cheque you tendered to Patricia Rahl in the amount of $49,121.31 was tendered in reliance on the statements made by Kim Kirchgessner, Patricia Rahl and Brian Rahl at the February 26, 1993 meeting.

**ANSWER:   Denied.**

36.   Admit that you have no documents which, on their face, conclusively prove your claim that on January 17, 1994, Patricia Rahl, Brian Rahl and Kim Kirchgessner met with you at the house located at 9441 Strait Lane, Dallas, Texas, and made several misrepresentations concerning the tax-free nature of the investment, its returns, a high rate of return, even with loc-occupancy rates and the guaranteed return of all monies invested if the Project was not timely completed.

**ANSWER:   Denied.**

37.   Admit that you have no documents which, on their face, conclusively prove your claim that at that meeting, Kim Kirchgessner reaffirmed the statement attributed to the Rahls in the preceding paragraph, and that she also misrepresented the security of the investment.

**ANSWER:   Admitted as the representations were oral.**

38.   Admit that you have no documents which, on their face, conclusively prove your claim that the cheque you tendered to Rahl & Rahl, P.A. ("Rahl & Rahl"), in the amount of $70,000.00 was tendered in reliance on the statements made by Kim Kirchgessner, Patricia Rahl and Brian Rahl at the January 17, 1994 meeting.

**ANSWER:   Denied.**

39.   Admit that you have no documents which, on their face, conclusively prove your claim that on February 8, 1994, Patricia Rahl, Brian Rahl and Kim Kirchgessner met with you at the house located at 9441 Strait Lane, Dallas, Texas and Patricia Rahl and Brian Rahl made several misrepresentations concerning the tax-free nature of the investment, its returns, a

high rate of return, even with low-occupancy rates and the guaranteed return of all monies invested if the Project was not timely completed.

**ANSWER:   Denied.**

40.   Admit that you have no documents which, on their face, conclusively prove your claim that at that meeting, Kim Kirchgessner reaffirmed the statements attributed to the Rahls in the preceding paragraph, and that she also misrepresented the security of the investment.

**ANSWER:   Admitted as the representations were oral.**

41.   Admit that you have no documents which, on their face, conclusively prove your claim that the cheque you tendered to Rahl & Rahl in the amount of $50,000.00 was tendered in reliance on the statements made by Kim Kirchgessner, Patricia Rahl and Brian Rahl at the February 8, 1994 meeting.

**ANSWER:   Denied.**

42.   Admit that you have no documents which, on their face, conclusively prove your claim that on May 31, 1994, Patricia Rahl, Brian Rahl, and Kim Kirchgessner met with you at the house located at 9441 Strait Lane, Dallas, Texas and Patricia Rahl and Brian Rahl made several misrepresentations concerning the tax-free nature of the investment, its returns, a high rate of return, even with low-occupancy rates and the guaranteed return of all monies invested if the Project was not timely completed.

**ANSWER:   Denied.**                                                                 3-/

43.   Admit that you have no documents which, on their face, conclusively prove your claim that at that meeting, Kim Kirchgessner reaffirmed the statement attributed to the Rahls in the preceding paragraph, and that she also misrepresented the security of the investment.

**ANSWER:   Admitted as the representations were oral.**

44.   Admit that you have no documents which, on their face, conclusively prove your claim that the cheque that your tendered to Rahl & Rahl in the amount of $100,000.00 was tendered in reliance on the statements made by Kim Kirchgessner, Patricia Rahl and Brian Rahl at the May 31, 1994 meeting.

**ANSWER:   Denied.**

45.   Admit that you have no documents which, on their face, conclusively prove your claim that you were present throughout the duration of the meeting and you were also a target for all the misrepresentations made to Dr. Schwartz by Patricia Rahl, Brian Rahl and Kim Francis.

**ANSWER:**   Admitted as to presence at the meeting.  Denied as to the remainder.

46.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl and Brian Rahl made the misrepresentations to Dr. Schwartz and provided him with documents.

**ANSWER:**   Denied.

47.   Admit that you have no documents which, on their face, conclusively prove your claim that Kim Kirchgessner reaffirmed the representations made by Patricia Rahl and Brian Rahl and also misrepresented to Dr. Schwartz the security of the investment as the Project was being developed by her family.

**ANSWER:**   Admitted as the representations were oral.

48.   Admit that you have no documents which, on their face, conclusively prove your claim that on November 24, 1994, Brian Rahl and Patricia Rahl again visited MAALE and Kim Francis at their Dallas residence and again made several of the same misrepresentations made in February of the prior year, including but not limited to: (a) the tax-free nature of the investment and its returns; (b) a high rate of return on investment, even with low-occupancy rates; and (c) the guaranteed return of all monies invested if the Project was not timely completed.

**ANSWER:**   Denied.

49.   Admit that you have no documents which, on their face, conclusively prove your claim that Kim Francis reaffirmed the representations made by Patricia Rahl and Brian Rahl at that meeting and also misrepresented the security of the investment in the Project.

**ANSWER:**   Admitted as the representations were oral.

50.   Admit that you have no documents which, on their face, conclusively prove your claim that the cheque that you tendered to Rahl & Rahl in the amount of $35,000.00 was tendered in reliance on the statement made by Kim Kirchgessner, Patricia Rahl and Brian Rahl at the November 24, 1994 meeting.

**ANSWER:**   Denied.

51.   Admit that you have no documents which, on their face, conclusively prove your claim that on August 13, 1995, Patricia Rahl and Brian Rahl traveled, again, to your residence in Dallas to meet with you and Kim Kirchgessner and at that meeting they made misrepresentations regarding: (a) the tax-free nature of the investment and its returns; (b) a high rate of return on investment, even with low-occupancy rates; and (c) the guaranteed return of all monies

39

invested if the Project was not timely completed.

**ANSWER:   Denied.**

52.   Admit that you have no documents which, on their face, conclusively prove your claim that Kim Kirchgessner reaffirmed the representations made by Patricia Rahl and Brian Rahl at that meeting and also misrepresented the security of the investment in the Project.

**ANSWER:   Admitted as the representations were oral.**

53.   Admit that you have no documents which, on their face, conclusively prove your claim that the cheque that you tendered to Rahl & Rahl in the amount of $75,770.00 was tendered in reliance on the statement made by Kim Kirchgessner, Patricia Rahl and Brian Rahl at the August 13, 1995 meeting.

**ANSWER:   Denied.**

54.   Admit that you have no documents which, on their face, conclusively prove your claim that on or about April 1, 1996, you received a letter directed to the Project's investors dated April 1, 1996, signed by Patricia Rahl on behalf of the Project.

**ANSWER:   Denied.**

55.   Admit that you have no documents which, on their face, conclusively prove your claim that in the letter your received on or about April 1, 1996, Patricia Rahl and Brian Rahl claimed "despite the flurry of on-site construction activity, factors beyond our control have delayed [the Project's] opening beyond the projected [date]..." and that they would award investors a "one time delayed opening factor increase" as compensation for the delay.

**ANSWER:   Denied.**

56.   Admit that you have no documents which, on their face, demonstrate that in the correspondence package sent on or about April 26, 1996, Patricia Rahl, on behalf of the Project, included a letter and a newsletter, which state "[they] had been busy with construction," and extended investors an invitation to stay at the High Point Resort in Orlando, Florida, and contained a lengthy description of alleged ongoing construction efforts and achievements, and displayed various photographs allegedly depicting the site and its progress, was inaccurate.

**ANSWER:   Denied.**

57.   Admit that you have no documents which, on their face, conclusively prove your claim that in the fall of 1996, defendants sent another newsletter with extensive misrepresentations

44

regarding construction.

**ANSWER:** Denied.

58.    Admit that you have no documents which, on their face, conclusively prove your claim that the photographs depicting construction progress in the Fall 1996 Newsletter were not accurate.

**ANSWER:** Denied.

59.    Admit that you have no documents which, on their face, conclusively prove that the photographs depicting construction progress included in the June 15, 1998 Patricia Rahl letter were not accurate.

**ANSWER:** Denied.

60.    Admit that you have no documents which, on their face, conclusively prove your claim that you traveled to the Turks and Caicos with Kim Kirchgessner and your children to visit the Project on August 9, 2000.

**ANSWER:** Denied.

61.    Admit that you have no documents which, on their face, conclusively prove your claim that on August 12, 2000, while still on the island, you were told, in the presence of Kim Kirchgessner, the Project was suffering from some financial difficulties and it needed financial assistance in the form of $900,000.00.

**ANSWER:** Admitted as the representations were oral.

62.    Admit that you have no documents which, on their face, conclusively prove your claim that on January 7, 2001, you attended a meeting with Dr. Leonardo Whiteside organized by Patricia Rahl and Brian Rahl at a restaurant on the mountain slope of Beaver Creek, Colorado.

**ANSWER:** Admitted.

63.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl and Brian Rahl reassured both MAALE and Dr. Whiteside of the security of the investment and the money-back guarantee.

**ANSWER:** Admitted as the representations were oral.

64.    Admit that you have no documents which, on their face, conclusively prove your claim that

11

4e

on January 11, 2001, at the further urging of Kim Kirchgessner, you agreed to sell a residence you and Kim Kirchgessner owned in the Bahamas and utilize a portion of the sale proceeds to build a residence at the Project.

**ANSWER:**   **Admitted as to the use of proceeds. Denied as to the remainder.**

65.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl and Brian Rahl handled the transaction, through their firm, Rahl and Rahl.

**ANSWER:**   **Denied.**

66.   Admit that you have no documents which, on their face, conclusively prove your claim that the sale proceeds of the Bahamas residence in the sum of $900,000.00 was wire transferred to the Project and an additional $100,000.00 remained in the escrow account of Rahl & Rahl.

**ANSWER:**   **Admitted as Plaintiff, to date, has been unable to obtain bank records.**

67.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl instructed the buyer of the Bahamas residence, Dr. Richard Lazzara, to wire transfer the amount directly into the Rahl & Rahl account, thus bypassing your account.

**ANSWER:**   **Admitted as Plaintiff, to date, has been unable to obtain bank records.**

68.   Admit that you have no documents which, on their face, conclusively prove your claim that the Rahls have refused to provide MAALE with copies of said documents relating to the transaction.

**ANSWER:**   **Denied.**

69.   Admit that you have no documents which, on their face, conclusively prove your claim that on October 21, 2001, Patricia Rahl and Brian Rahl traveled, again, to your residence in Dallas, Texas to meet with you and Kim Kirchgessner and they made misrepresentations regarding: (a) the tax-free nature of the investments and its returns; (b) a high rate of return on the investment, even with low-occupancy rates; and (c) the guaranteed return of all monies invested if the Project was not timely completed.

**ANSWER:**   **Denied.**

70.   Admit that you have no documents which, on their face, conclusively prove your claim that Kim Kirchgessner reaffirmed the representation made by Patricia Rahl and Brian Rahl at that meeting and also misrepresented the security of the investment in the Project.

**ANSWER:**   **Admitted as these representations were oral.**

52

71. Admit that you have no documents which, on their face, conclusively prove your claim that the cheque you tendered to Rahl & Rahl in the amount of $8,923.80 was tendered in reliance on the statements made by Kim Kirchgessner, Patricia Rahl and Brian Rahl at the October 21, 2001 meeting.

**ANSWER: Denied.**

72. Admit that you have no documents which, on their face, conclusively prove your claim that between November 23 and November 30, 2002, you traveled to the Turks and Caicos with Kim Kirchgessner.

**ANSWER: Denied.**

73. Admit that you have no documents which, on their face, conclusively prove your claim that Kim Kirchgessner gave you a tour of the Project and showed you the site of the house you had allegedly purchased with the proceeds of the sale of the Bahamas residence.

**ANSWER: Admitted as these representations were oral.**

74. Admit that you have no documents which, on their face, conclusively prove your claim that in February 2003, you traveled to the Turks and Caicos and met with Ernie Smith.

**ANSWER: Admitted as to the meeting with Ernie Smith. Denied as to the remainder.**

75. Admit that you have no documents which, on their face, conclusively prove your claim that Ernie Smith is an employee of the Project and an agent of Defendants, Patricia Rahl, Brian Rahl, Rahl & Rahl, and Kim Francis Kirchgessner.

**ANSWER: Admitted as Ernie Smith's agency will be proven by testimony and not documents.**

76. Admit that you have no documents which, on their face, conclusively prove your claim that on June 27, 2003, you traveled to the Turks and Caicos.

**ANSWER: Denied.**

77. Admit that you have no documents which, on their face, conclusively prove your claim that from July 28, 2003 to August 2, 2003, you traveled to the Turks & Caicos where you met with Kim Kirchgessner.

**ANSWER: Admitted as to the meeting with Kim Kirchgessner. Denied as to the remainder.**

78. Admit that you have no documents which, on their face, conclusively prove your claim that

*57*

13

on August 23, 2003, you traveled to the Turks and Caicos with Dr. M. Nichols for a meeting with Ernie Smith and Ernie Smith told Dr. Nichols, in your presence, the Project was a tax-free investment which would generate a tax-free high rate of return; the Project would be completed shortly; and, it had a money-back guarantee.

**ANSWER:**   Admitted as these representations were oral.

79.   Admit that you have no documents which, on their face, conclusively prove your claim that on July 14, 2004, Patricia Rahl, Brian Rahl and Ron Kirchgerssner met you and Dr. Andrew Hodge at a restaurant in West Palm Beach, FL.

**ANSWER:**   Admitted.

80.   Admit that you have no documents which, on their face, conclusively prove your claim that at the meeting, Patricia Rahl described the Project as a tax-free investment which would generate a tax-free high rate of return and Patricia Rahl and Brian Rahl represented the investment was secure and there was a money-back guarantee.

**ANSWER:**   Admitted as these representations were oral.

81.   Admit that you have no documents which, on their face, conclusively prove your claim that on December 24, 2004, you traveled to the Turks and Caicos and met with Kim Kirchgessner and she claimed the Project was progressing very quickly and you stood to make a large amount of money on both the Project and the residence.

**ANSWER:**   Admitted as the representations were oral.

82.   Admit that you have no documents which, on their face, conclusively prove your claim that on March 24, 2005, you traveled to the Turks and Caicos with Kim Kirchgessner , who claimed the Project was progressing fast and was close to completion.

**ANSWER:**   Admitted as the representations were oral.

83.   Admit that you have no documents which, on their face, conclusively prove your claim that between the acquisition of the thirteen units and the building of the residence, a total of $1,850,000.00 was invested in the Project, and an additional $100,000 remains in escrow with the Rahls.

**ANSWER:**   Admitted in part and denied in part. Plaintiff does not have documents to conclusively prove the entire $1.85 million, due to the unavailability of bank records, but Plaintiff does have documents to prove a portion of the $1.85 million due.

50

14

84.   Admit that you have no documents which, on their face, conclusively prove your claim that you have made repeated demands to Patricia Rahl and Brian Rahl for documentation on these transactions.

**ANSWER:   Denied.**

85.   Admit that you have no documents which, on their face, conclusively prove your claim that shortly after the filing of the divorce proceeding by Kim Kirchgessner, Patricia Rahl met with you at your home Dallas, Texas, and stated that the Project was marching forward despite some minor delays and advised you to visit the Project's website for updated information.

**ANSWER:   Admitted as these representations were oral.**

86.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl cooperated with Kim Kirchgessner in the divorce proceeding by, *inter alia*, selectively producing documentation favorable to Kim Kirchgessner, while refusing to provide documents requested by you, despite a subpoena for their production, which concerned the investments in the Project's Defendants.

**ANSWER:   Denied.**

87.   Admit that you have no documents which, on their face, conclusively prove your claim that the bill showing an outstanding balance of $23,000.00, which you owed Rahl & Rahl for legal services, was not substantiated by any records, nor the product of actual services rendered to you.

**ANSWER:   Objection. This request asks Plaintiff to admit there are no records to prove that a certain allegation was "not substantiated by any records." It is nonsensical. Denied as to the remainder.**

88.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl collaborated exclusively with Kim Kirchgessner's divorce attorneys and continued to selectively provide her with documents, while withholding those documents requested and needed by you.

**ANSWER:   Denied.**

89.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Rahl & Rahl, P.A. acted unethically in refusing to provide you with documentation concerning your investments in the Project.

**ANSWER:   Denied.**

63

15

90.   Admit that you have no documents which, on their face, conclusively prove your claim that shortly after meetings described in the preceding paragraph, several of the Texas investors informed you of their conversations with the Rahls, the representations made, and that the website was the primary took now being used to convey information regarding the Project.

ANSWER:   Admitted as the representations were oral.

91.   Admit that you have no documents which, on their face, conclusively prove your claim that you visited the Project's website on a periodic basis to obtain information regarding your investment.

ANSWER:   Denied.

92.   Admit that you have no documents which, on their face, conclusively prove your claim that the Defendants have continuously used the Project's website to convey information and representation regarding the Project, including, among others: financial and *pro forma* returns; unit rental plans; pricing; updates on the progress of the construction, including recent photographs of the structures and machinery being used in its development, etc.

ANSWER:   Denied.

93.   Admit that you have no documents which, on their face, conclusively prove your claim that the letter dated June 28, 2007, to Caicos Beach Club and to Patricia Rahl in an attempt to exercise the money-back guarantee was received by them.

ANSWER:   Denied.

94.   Admit that you have no documents which, on their face, conclusively prove your claim that as a result of Caicos Beach Club's and Patricia Rahl's failure to respond to your written request, you discovered a fraud had been perpetrated upon you.

ANSWER:   Denied.

95.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl, and Kim Kirchgessner intentionally participated in this scheme to defraud you of both money and property.

ANSWER:   Denied.

96.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner carried out the scheme by means of materials misrepresentations regarding the Project, its development, and the aforementioned deposit-return guarantees.

**ANSWER:**     Admitted as to representations made by Kim Kirchgessner, which were oral. Denied as to the remainder.

97.     Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl's, Brian Rahl's, and Kim Kirchgerssner's scheme and misrepresentations were conducted on an ongoing basis with you from approximately 1992 and continuing through the present time.

**ANSWER:**     Admitted as to representations made by Kim Kirchgessner, which were oral. Denied as to the remainder.

98.     Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner used the United States mail to send Project-related information, received monies from you and to aid in the inducement of the sale of the Bahamas' property with the purpose of extracting the proceeds and converting them through the Project.

**ANSWER:**     Denied.

99.     Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner made extensive use of the United State wires in connection with the scheme in several ways including, but not limited to: telephonic conversations with you in which misrepresentations were made; travel arrangements; the use of wires for the transfer and receipt of the monies paid by you; and, the representations made through the Project's internet website.

**ANSWER:**     Admitted as to the telephone calls. Denied as to the remainder.

100.     Admit that you have no documents which, on their face, conclusively prove your claim that you relied on the misrepresentations of Patricia Rahl, Brian Rahl and Kim Kirchgessner.'

**ANSWER:**     Denied.

101.     Admit that you have no documents which, on their face, conclusively prove your claim that any reasonable person would have relied on the misrepresentations of Patricia Rahl, Brian Rahl and Kim Kirchgessner.

**ANSWER:**     Denied.

102.     Admit that you have no documents which, on their face, conclusively prove your claim that, as a consequence of your reliance, you have suffered injury and damages in the amount of $1,950,000.00 (U.S.), exclusive of interest, attorney's fees and costs.

75

17

**ANSWER:**  Admitted in part and denied in part.  Plaintiff does not have documents to conclusively prove the entire $1.95 million, due to the unavailability of bank records, but Plaintiff does have documents to prove a portion of the $1.95 million due.

103.  Admit that you have no documents which, on their face, conclusively prove your claim that you are entitled to recover attorney's fees from Defendants in this action.

**ANSWER:**  Denied.

104.  Admit that you have no documents which, on their face, conclusively prove your claim that you are a consumer under the definition of the statute and the sale of real estate is within the purview of *Florida Deceptive and Unfair Trade Practices Ace* ("FDUTPA").

**ANSWER:**  Denied.

105.  Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner engaged in a series of deceptive acts and unfair trade practices by deceiving you into investing in the Project under the pretext of several misrepresentations, such a return on investment; the time for the completion of the Project; and, the timing surrounding the realization of the financial (and other) benefits.

**ANSWER:**  Admitted as to representations made by Kim Kirchgessner, which were oral.  Denied as to the remainder.

106.  Admit that you have no documents which, on their face, conclusively prove your claim that by publishing the marketing materials and other papers, referring you and the Texas investors to the Project's website, and making verbal misrepresentations, Patricia Rahl, Brian Rahl and Kim Kirchgessner engaged in deceptive and/or unfair trade practices.

**ANSWER:**  Admitted as to verbal misrepresentations.  Denied as to the remainder.

107.  Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl's, Brian Rahl's and Kim Kirchgessner's acts caused you to invest in the Project.

**ANSWER:**  Denied.

108.  Admit that you have no documents which, on their face, conclusively prove your claim that as a result of the acts of Patricia Rahl, Brian Rahl and Kim Kirchgessner, you suffered damages in the form of monies invested in the Project, together with loss of profits and interest.

**ANSWER:**  Denied.

18

109.   Admit that you have no documents which, on their face, conclusively prove your claim that pursuant to FDUTPA, you are entitled to receiver attorneys' fees in this action.

**ANSWER:    Denied.**

110.   Admit that you have no documents which, on their face, conclusively prove your claim that you have conferred upon Patricia Rahl, Brian Rahl and Kim Kirchgessner a substantial benefit in the form of monies intended to be a deposit for the purchase of unit in the Project, totaling $1,950,000.00.

**ANSWER:    Admitted in part and denied in part.  Plaintiff does not have documents to conclusively prove the entire $1.95 million, due to the unavailability of bank records, but Plaintiff does have documents to prove a portion of the $1.95 million due.**

111.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner have failed to return the monies to you, despite the fact that the Project was never completed.

**ANSWER:    Denied.**

112.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner failed to perform their obligations as promised to you.

**ANSWER:    Denied.**

113.   Admit that you have no documents which, on their face, conclusively prove your claim that it is inequitable for Patricia Rahl, Brian Rahl and Kim Kirchgessner to retain the monies in question.

**ANSWER:    Denied.**

114.   Admit that you have no documents which, on their face, conclusively prove your claim that Rahl & Rahl, Patricia Rahl and Brian Rahl had a fiduciary duty owed to you.

**ANSWER:    Denied.**

115.   Admit that you have no documents which, on their face, conclusively prove your claim that the Rahls handled all of your legal affairs.

**ANSWER:    Denied.**

116.   Admit that you have no documents which, on their face, conclusively prove your claim that Rahl & Rahl, Patricia Rahl and Brian Rahl breached that duty by utilizing their position with you to counsel you into investing large sums of money into the Project based upon misrepresentations and/or material omissions.

ANSWER:   Denied.

117.   Admit that you have no documents which, on their face, conclusively prove your claim that you suffered extensive damages in the form of the monies invested as well as lost profits and interest.

ANSWER:   Admitted in part and denied in part.  Plaintiff does not have documents to conclusively prove the entire $1.8 million, due to the unavailability of bank records, but Plaintiff does have documents to prove a portion of the $1.8 million due.

118.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner inducing you to invest in the Project, made several misstatements and omissions regarding the reality of the Project they were building.

ANSWER:   Denied.

119.   Admit that you have no documents which, on their face, conclusively prove your claim that the statements referenced in the preceding paragraph were false because Patricia Rahl, Brian Rahl and Kim Kirchgessner knew the Project was not going to be built as promised or in the time frame offered.

ANSWER:   Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' knowledge, but Plaintiff does have documents that evidence proof of such knowledge.

120.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner knowing of the falsity of the statements, made them to you with the intention of inducing you to invest in the Project.

ANSWER:   Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' intent, but Plaintiff does have documents that evidence proof of such intent.

121.   Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner inducing you to invest in the Project, made several misstatements and omissions regarding money-back guarantees.

20

**ANSWER:**    Admitted as to representations made by Kim Kirchgessner, as those were oral. Denied as to the remainder.

122.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner knew these statements were false.

**ANSWER:**    Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' knowledge, but Plaintiff does have documents that evidence proof of such knowledge.

123.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner never intended to refund the deposits if the Project was not timely completed.

**ANSWER:**    Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' intent, but Plaintiff does have documents that evidence proof of such intent.

124.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner inducing you to invest in the Project, made several misstatement and omissions as to the return of the investment.

**ANSWER:**    Admitted as to representations made by Kim Kirchgessner, as those were oral. Denied as to the remainder.

125.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner knew these statements were false and that Patricia Rahl, Brian Rahl and Kim Kirchgerssner never intended to complete the Project as promised, or in the time frames represented to you.

**ANSWER:**    Admitted in part and denied in part.  Plaintiff does not have documents which conclusively prove Defendants' intent, but Plaintiff does have documents that evidence proof of such intent.

126.    Admit that you have no documents which, on their face, conclusively prove your claim that Patricia Rahl, Brian Rahl and Kim Kirchgessner made the statements described above, on an ongoing basis, with scienter as they knew of their falsity and nonetheless made the representations to you with the intent to induce you to invest in the Project.

**ANSWER:**    Admitted as to representations made by Kim Kirchgessner, which were oral. Denied as to remainder.

127.    Admit that you have no documents which, on their face, conclusively prove your claim that

you justifiably relied on the statements of Patricia Rahl, Brian Rahl and Kim Kirchgessner.

**ANSWER:   Denied.**

128.   Admit that you have no documents which, on their face, conclusively prove your claim that
your justifiable reliance on the statements of Patricia Rahl, Brian Rahl and Kim Kirchgessner
directly resulted in damages in the form of the monies invested in the Project.

**ANSWER:     Admitted in part and denied in part.   Plaintiff does not have documents to
conclusively prove the entire $1.8 million, due to the unavailability of bank
records, but Plaintiff does have documents to prove a portion of the $1.8 million
due.**

129.   Admit that you have no documents which, on their face, conclusively prove your claim that
Patricia Rahl, Brian Rahl and Kim Kirchgessner misappropriated your money.

**ANSWER:     Admitted in part and denied in part.   Plaintiff does not have documents which
conclusively prove Defendants' knowledge, but Plaintiff does have documents
that evidence proof of such knowledge.**

130.   Admit that you have no documents which, on their face, conclusively prove your claim that
Kim Francis Kirchgessner, Rahl & Rahl, Patricia Rahl and Brian Rahl owed you a duty of
care and breached that duty by causing you to invest in the Project, which they knew was
only a device to fraud you.

**ANSWER:   Denied.**

131.   Admit that you have no documents which, on their face, conclusively prove your claim that
Kim Kirchgessner, Patricia Rahl, Brian Rahl, both individually and through their law firm
Rahl & Rahl, conspired with each other to defraud you of money.

**ANSWER:   Denied.**

132.   Admit that you have no documents which, on their face, conclusively prove your claim that
Kim Kirchgessner, Patricia Rahl, Brian and Rahl committed a number of overt acts in
furtherance of the conspiracy including, but not limited to, making misrepresentation cause
you to enter into agreement and to provide them with large sums of money; denying you
access to documents and records reflecting your investment and rights; misrepresenting to
you the status of the Project to prevent you from discovery of the fraud; and, acting in concert
with one another to continue to concealment of their fraudulent conduct.

**ANSWER:     Admitted as to representations made by Kim Kirchgessner as those were oral.
Denied as to the remainder.**

106

22

133.  Admit that you have no documents which, on their face, conclusively prove your claim that as a direct and proximate result of Defendants' actions, you suffered injuries in the form of damages totaling $1,950,000.00 (U.S.), which represents the monies you invested in the Project together with loss of profits and interest.

ANSWER:   Admitted in part and denied in part. Plaintiff does not have documents to conclusively prove the entire $1.8 million, due to the unavailability of bank records, but Plaintiff does have documents to prove a portion of the $1.8 million due.

107

Respectfully submitted,

McCABE RABIN, P.A.

Ryon M. McCabe (009075)
Mark D. Nichols (056580)

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2010, a true and correct copy of the foregoing has been furnished to the persons on the following service list via U.S. Mail.

Ryon M. McCabe (009075)
rmccabe@mccaberabin.com
Mark D. Nichols
mnichols@mccaberabin.com
Centurion Tower
1601 Forum Place, Ste. 301
West Palm Beach, Florida 33401
Telephone: (561) 659-7878
Facsimile: (561) 242-4848

24

SERVICE LIST

Gerhard Emil Maale, III,
v.
Kim Francis Kirchgessner, et al.

CASE NO.: 08-80131-CIV
United States District Court, Southern District of Florida

Ryon M. McCabe, Esquire
rmccabe@mccaberabin.com
Adam T. Rabin, Esquire
arabin@mccaberabin.com
McCabe Rabin, P.A.
1601 Forum Place, Ste. 301
West Palm Beach, Florida 33401
Telephone: (561) 659-7878
Facsimile: (561) 242-4848

Harriet R. Lewis
hlewis@lsdlaw.net
Lewis Stroud & Deutsch, PL
1900 Glades Road, Suite 251
Boca Raton, Florida 33431
Telephone: (561) 826-2800
Facsimile: (561) 826-2828

Bruce S. Rogow
guntherc@rogowlaw.com
Bruce S. Rogow P.A.
500 East Broward Boulevard
Suite 1930
Ft. Lauderdale, Florida 33394
Telephone: (954) 767-8909
Facsimile: (954) 467-2210
*Attorneys for Defendants, Caicos Beach Club Charter, LTD, Ronald Kirchgessner, Paul Kirchgessner, Kim Francis Kirchgessner, Rahl & Rahl, P.A, Patricia Rahl and Brian Rahl*

Scott David Alexander, Esquire
alexander@jambg.com
Johnson Anselmo Murdoch Burke Piper & McDuff
International Building, Suite 1000
2455 East Sunrise Boulevard
Post Office Box 030220
Ft. Lauderdale, Florida 33304
Telephone: (954) 463-0100
Facsimile: (954) 463-2444
*Attorneys for Caicos Beach Resort and Marina IA, Ltd., Caicos Beach Club Resort & Marina, Ltd., Caicos Beach Club, Ltd., Splash Holdings, Ltd., High Point Resorts Management, Inc., High Point Organization Holding Company, Ltd., and Caicos Beach Club Development, Ltd.*

25