UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80131-CIV-DIMITROULEAS/SNOW

GERHARD EMIL MAALE, III,

        Plaintiff,

v.

KIM FRANCIS KIRCHGESSNER,
et al.,

        Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' VERIFIED MOTION FOR
ATTORNEYS' FEES AND COSTS [D.E. 571]**

        Plaintiff, Gerhard Emil Maale, III ("Maale") and his counsel, McCabe Rabin, P.A., hereby

file this response to Defendants' Verified Motion for Attorneys' Fees and Costs [D.E. 571].  As set

forth below, the motion should be denied in its entirety.

**I.      OVERVIEW**

        The Defendants have no valid statutory or contractual basis for recovery of attorneys' fees

in this case.  The Court should reject Defendants' efforts to manufacture a fee claim for four reasons:

- •      Defendants cannot claim attorneys' fees under the Florida Deceptive and Unfair
  Trade Practices Act ("FDUTPA") because the Court dismissed that claim on
  jurisdictional grounds.  As such, Defendants do not qualify as "prevailing parties"
  under the statute;

- •      Defendants cannot use the choice-of-law provision in the Forward Purchase Contract
  to invoke English law (and its "loser pays" rule of attorneys' fees) because
  Defendants have never before asserted that English law applies, and because

Defendants are not even parties to the Forward Purchase Contract;

• Defendants cannot show that Plaintiff's counsel engaged in "unreasonable or vexatious" conduct, as required to impose fees under 28 U.S.C. § 1927; and

• Defendant cannot show that Plaintiff or his counsel acted in bad faith, as required to impose fees under the Court's inherent power.

Moreover, as to amount, the Defendants seek a grossly unreasonable amount of fees, in excess of $1.3 million. Defendants also seek a number of egregious expenses, most notably, the cost to fly (and then wash and wax) a private jet for multiple trips. All fees and costs should be denied.

## II. DEFENDANTS CANNOT SHOW ENTITLEMENT TO ATTORNEYS' FEES

As a general rule, prevailing litigants are not entitled to recover attorneys' fees from non-prevailing parties. *See Alyeska Pipeline Service Co., v. Wilderness Society*, 421 U.S. 240, 257 (1975)(explaining the history of the "American Rule" governing attorneys' fees). A prevailing party may recover fees only when expressly authorized to do so by a statute or a contractual provision that allows for recovery of fees. *Id.*. In this case, Defendants have no basis to depart from the general rule.

### A. FDUTPA DOES NOT AUTHORIZE ATTORNEYS' FEES HERE

Defendants first seek fees under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which provides as follows:

> In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

2

*See* § 501.2105, Fla. Stat. (2010).  The Court's authority to award attorneys' fees under this statute

is discretionary, as the statute uses the word "may."  *See Humane Society of Broward County, Inc.*

*v. Fla. Humane Society*, 951 So.2d 966, 968 (Fla. 4th DCA 2007).  Defendants cannot obtain fees

under this statute for three reasons.

### 1.    Defendants Did Not Prevail on the FDUTPA Claim

First, FDUTPA authorizes fees only against a "nonprevailing" party.  *See* § 501.2105, Fla.

Stat. (2010).  In this case, Defendants did not prevail on the FDUTPA claim.  Instead, Judge

Dimitrouleas declined to exercise supplemental jurisdiction over the claim and dismissed it without

prejudice for Plaintiff to re-file the claim in state court.  [D.E. 528, Section B.2.]

The Eleventh Circuit has recognized that a jurisdictional dismissal without prejudice does

not make the movant a "prevailing party" for purposes of statutory fee-shifting provisions.  In

*Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454,

1458 (11th Cir. 1987), for example, a plaintiff brought state and federal claims in a single complaint.

After the district court dismissed the state claims for lack of jurisdiction, the defendant sought to

recover fees under two fee-shifting Florida statutes:  § 713.29, Fla. Stat. (applying to mechanics

liens) and § 57.105, Fla. Stat. (applying to non-meritorious claims).  *Id.*  The Court rejected both fee

claims, reasoning:

> Given that the federal court dismissed the case for lack of subject
> matter jurisdiction and the merits of the state claims have yet to be
> tried, it would be inappropriate to award fees under either of these
> Florida provisions at this time.

*Id.* at 1548.;  *see also Miami Herald Publishing Co., v. City of Hallandale*, 742 F.2d 590, 591 (11th

Cir. 1984)(finding that defendant did not "prevail" for purposes of fee-shifting statute "given that

district court lacked jurisdiction to hear the merits" of most of the claims at issue).

Numerous other courts have followed suit, recognizing that a jurisdictional dismissal without prejudice does not give rise to "prevailing party" status. *See Sanchez v. Swire Pacific Holdings, Inc.*, 2009 WL 2005272, *4 (S.D. Fla. 2009)("when there is a dismissal of a case without prejudice, Florida law does not confer prevailing party status on the successful movant"); *Design Pallets, Inc. v. Gray Robinson, P.A.*, 583 F.Supp.2d 1282, 1287 (M.D. Fla. 2008)("should the court dispose of all federal claims, not address the Florida claims by declining to exercise its supplemental jurisdiction, and then dismiss the Florida claims without prejudice . . . defendant [would not be] a prevailing party with respect to any of the State claims"); *DeShiro v. Branch*, 183 F.R.D. 281, 285 (M.D. Fla. 1998)("a defendant cannot be a prevailing party when the complaint is dismissed or disposed of for lack of jurisdiction, subject matter or otherwise"); *Mitchell v. The Beach Club of Hallendale Condo. Ass'n, Inc.*, 17 So.3d 1265, 1267 (Fla. 4th DCA 2009)(reversing attorneys' fee award because the defendant "did not 'prevail' where the complaint was dismissed on jurisdictional grounds without prejudice to refile").

These cases rest on the premise that jurisdictional dismissals do not operate as adjudications on the merits. Instead, the dismissing court has merely instructed the litigant to file his or her claim elsewhere. Likewise, Fed.R.Civ.P. 41(b) also recognizes that jurisdictional dismissals do not operate as decisions on the merits:

> Unless the dismissal orders otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – *except one for lack of jurisdiction, improper venue, or failure to join an indispensable party*–operates as an adjudication on the merits.

(Emphasis added); *cf. HME Providers, Inc. v. Heinrich*, 2010 WL 1708453 (M.D. Fla.

4

2010)(applying Rule 41(b) and denying attorneys' fee claim).  In short, Defendants cannot claim attorneys' fees under FDUTPA because they did not prevail on that cause of action.

### 2.    The *Victory* Case Supports Plaintiff's Position

Secondly, the Court should reject this claim because the main case relied upon by Defendants – *Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*, 2009 WL 1956236 (S.D.Fla. 2009) – actually supports Plaintiff's position.  In *Victory*, Judge Huck awarded FDUTPA attorneys' fees to a defendant after (1) the Court had dismissed a FDUTPA claim early in the case for failure to state a claim upon which relief could be granted; (2) the plaintiff chose not to re-plead the FDUTPA claim and, instead, filed an amended complaint deleting that claim; and (3) the Court later entered a judgment for the defendant on the remaining claims.  Citing to the language of Fed.R.Civ.P. 41(b), Judge Huck reasoned that the early FDUTPA dismissal, coupled with the plaintiff's decision not to re-plead the claim, operated as an "adjudication on the merits" sufficient to invoke FDUTPA's attorneys' fee provision.  *Id.* at * 5.

The *Victory* case did not involve a dismissal on *jurisdictional grounds*.  Indeed, the opinion quoted the very same language of Fed.R.Civ.P. 41(b) cited above, namely that "any dismissal not under this rule – *except one for lack of jurisdiction, improper venue, or failure to join an indispensable party* – operates as an adjudication on the merits." *Id.* at *5 (emphasis added).  This language dictates an opposite result in this case.   That is to say, had Judge Huck ordered dismissal on jurisdictional grounds, he would not have found an "adjudication on the merits" under Fed.R.Civ.P. 41(b), and he would not have awarded attorneys' fees under FDUTPA.  In short, FDUTPA fees cannot be awarded.

### 3.     FDUTPA Requires that Appeals be Fully Exhausted

Third and finally, even if FDUTPA authorized fees based on jurisdictional dismissals (which it does not), this Court could still not award fees because FDUTPA also requires that such awards be entered only after "judgment in the trial court and exhaustion of all appeals." *See* § 501.2105, Fla. Stat. (2010).  In this case, Plaintiff filed his Notice of Appeal on August 11, 2010. [D.E. 553].  As the appellate process has yet to run its course, FDUTPA does not yet authorize fees.

### B.     THE "ENGLISH RULE" DOES NOT APPLY HERE

Defendants next seek attorneys fees by arguing – for the first time in the case – that English law governs these proceedings.  In support, Defendants point to a clause from an unsigned Forward Purchase Contract in the record, which provides:

> That this FORWARD PURCHASE CONTRACT shall be interpreted under The Laws of the Turks & Caicos Islands.  That in the event of Litigation under this FORWARD PURCHASE CONTRACT, jurisdiction shall lie solely within the Turks & Caicos Islands.

[D.E. 489-1, Ex. E].  Defendants claim this clause requires the parties and the Court to follow the law of the Turks & Caicos Islands, which incorporates English common law and its "loser pays" rule of attorneys' fees.  During discovery, neither side ever produced a signed version of the Forward Purchase Contract. [D.E. 489-1, ¶ 13]  Setting this obvious problem aside, the Court should reject the "English Rule" argument for four reasons.

### 1.     Defendants Waived Their Right to Argue English Law

First, Defendants long ago waived any right they may have had to argue that English law governs this case.  Choice-of-law provisions, like other contractual provisions, can be freely waived by the parties.  *See AXA Equitable Life Insurance, Co. v. Infinity Financial Group, LLC*, 608 F.Supp.2d 1330, 1335 (S.D. Fla. 2009)(collecting cases for the proposition that choice-of-law

provisions can be waived by failing to cite to the law provided for in the choice-of-law clause); *Mayakan v. Carnival Corporation*, 2010 WL 2367228, *1 (M.D. Fla. 2010)(recognizing parties' waiver of Panamanian law provision in contract).

In this case, more than two years of litigation have passed, and Defendants have *never* argued that the parities substantive legal rights should be controlled by English law.  To the contrary, Defendants have relied on American law in all substantive motion practice, including their dispositive motions for summary judgment.  *See* D.E. 436 & 437.  Having cited American law throughout this case, Defendants cannot suddenly argue that the Court has been applying the wrong law all along.  This argument has been waived.  *See American Home Assurance Co. v. Glenn Estess & Assoc., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985)(trial court properly rejected choice-of-law argument raised for the first time after summary judgment had already been entered).

## 2.      Defendants Are Not Parties to the Forward Purchase Contract

Second, Defendants cannot invoke English law because they *are not even parties* to the contractual provision they seek to enforce. The only counter-party to the Forward Purchase Contract is "Caicos Beach Club Charter, Limited," a now defunct entity. *See* [D.E. 548-1, ¶ 15]  Defendants cannot enforce a contract to which they are not parties, unless they show third-party beneficiary status.  *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005)("As a non-party, to sue to enforce the contract, [plaintiff] can only establish standing if he was an intended third-party beneficiary..."); *Intercoastal Realty, Inc. v. Tracy*, 2010 WL 1510848, * 2 (S.D. Fla. 2010); *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Inc.*, 647 So.2d 1028, 1031 (Fla. 4th DCA 1994)("A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which the

party claims it belongs.").

Defendants cannot come close to showing third-party beneficiary status.  The contract mentions nothing about Kim Kirchgessner.  As to Patricia Rahl, Brian Rahl, and Rahl & Rahl, P.A., mere status as attorneys for a corporate entity does not equate to status as third-party beneficiaries. *See Continental Casualty Co. v. Marx*, 480 So.2d 177, 178 (Fla. 3d DCA 1985)(finding that attorney was not third-party beneficiary to contract; "[i]t is far from being 'manifest from the nature or terms' of the insurance contract, as is required to confer the status of third-party beneficiary upon him, that the formal parties intended to benefit the insured's attorney as the 'direct and primary object of the contract' or amongst such objects.'").  In short, as non-parties to the Forward Purchase Contract, Defendants have no standing to enforce the choice-of-law provision.

**3.     The Choice-of-Law Provision Applies Only to Interpretation of the Contract**

Third, even if Defendants could enforce the Forward Purchase Contract, the choice-of-law provision applies, on its face, only to interpretation of the contract.  As a general rule, courts interpret contractual choice-of-law provisions just as they would any other contract, by first looking to the scope of the language agreed to by the parties.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009)(court must first look to the scope of the choice-of-law provision).  Where the parties agree to a narrow choice-of-law provision, the courts will not extend the clause beyond the words used by the parties.

Thus, in *Green Leaf Nursery v. E.I. Dupont de Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003), the Court was called upon to interpret the following choice-of-law provision:

> "this release shall be governed and construed in accordance with the laws of the State of Delaware."

*Id.*   The Court characterized this as a "narrow" provision because it applied only to interpretation of the contract itself.  *Id.*   It did not "refer or relate to tort claims or to any and all claims or disputes arising out of the . . . relationship between the parties."  *Id.*; *see also De Leon v. Bank of America*, 2009 WL 3822392, *5 (M.D. Fla. Nov. 16, 2009)(recognizing a similar choice-of-law provision to be narrow and extending no further than interpretation of the contract itself).

In contrast, where the parties agree to broader language, the court can apply the provision to non-contractual claims.  In *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009), for example, the parties agreed that Dutch law would cover "all disputes arising out of or in connection with" the agreement.  *Id.*  This broader language, chosen by the parties, extended Dutch law beyond the mere contract to cover non-contractual claims.  *Id.*

Here, the choice-of-law provision is almost identical to the provisions in the *Green Leaf* and *De Leon* cases discussed above.  It provides:

> "This FORWARD PURCHASE CONTRACT shall be interpreted
> under The Laws of the Turks & Caicos Islands."

[D.E. 489, Ex. E].  Like the provisions in *Green Leaf*  and *De Leon*, this provision says nothing about "disputes arising under or out of" the contract.  Accordingly, the Court cannot expand the clause beyond the language chosen by the parties.

The Court should reject Defendants' attempt to bootstrap the slightly broader language of the venue selection sentence that appears in the same paragraph of the Forward Purchase Contract.  That sentence provides:

> "That in the event of *Litigation under* this FORWARD PURCHASE
> CONTRACT, jurisdiction shall lie solely within the Turks & Caicos
> Islands."

[D.E. 489-1, Ex. E] (Emphasis added).  Defendants' motion repeatedly mischaracterizes the phrase

"Litigation under" from the above sentence as if it also applies to the choice-of-law section.  *See* Motion at 9-10.  A plain reading of the clause shows this is not the case.  The first sentence governs choice-of-law and applies only to "interpretation of the contract."  The second sentence governs venue and applies to "Litigation under" the contract.  The Court should reject Defendants' efforts to blur the two sentences together.  There is no basis to apply English law in this case.

### C.     PLAINTIFF'S COUNSEL DID NOT VIOLATE 28 U.S.C. §1927

Defendants next seek attorneys' fees under 28 U.S.C. §1927, which authorizes fees against attorneys, but not against individual parties.  The statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

*See* 28 U.S.C. § 1927.  To support a violation of §1927, the Court must make three findings: (1) counsel engaged in "unreasonable and vexatious" conduct; (2) counsel's conduct multiplied the proceedings; and (3) the amount of the sanction equals the amount of excess fees and costs caused by the objectionable conduct.  *See Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).  An attorney multiplies proceedings unreasonably and vexatiously "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'"  *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007); *Rovi v. Citibank (South Dakota) N.A.*, 2007 WL 3023579 (S.D. Fla. 2007)(bad faith is the "touchstone" under § 1927).  Defendants cannot meet their burden of proof under § 1927 for three reasons.

### 1.   Defendants Have Merely Re-pled Their Rule 11 Arguments

First, the majority of Defendants' arguments simply re-hash the arguments made in their pending Motions for Sanctions under Rule 11. [D.E.514 & 515]. Section 1927 is designed to cover a different range of conduct than Rule 11. While Rule 11 pertains to pleadings, § 1927 applies to post-pleading conduct that "multiplies the proceedings." *See Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001)(distinguishing Rule 11 from §1927); *Doria v. Class Action Services, LLC*, 261 F.R.D. 678, 683 (S.D. Fla. 2009)(same). Parties cannot invoke § 1927 merely because they have been forced to defend a frivolous complaint. *See Ellis v. All My Sons Moving & Storage of Orlando, Inc.*, 2009 WL 2496626, *3 (M.D. Fla. 2009)("a § 1927 fee award cannot be based solely on a frivolous complaint").

In this case, the vast majority of Defendants' claims stem directly from allegations made in various versions of the complaint.[1] Defendants essentially argue that they have had to defend a frivolous claim. Given that §1927 is not the proper vehicle for these arguments, the Court should deny the motion. To the extent necessary, Plaintiff hereby incorporates his response to the Rule 11 motion [D.E. 549] and his counsels' responses to that motion [D.E. 546 & 551].

---

[1] Defendants' motion makes a number of direct attacks on factual allegations made in pleadings, including: Plaintiff's allegation that he sold a home for $2.2 million and that $900,000 was diverted to the Turks & Caicos, *see* Motion at 12, 14; Plaintiff's claim that he invested $1 million in the project, *id.* at 12, 14; Plaintiff's Third Amended Complaint naming eight additional defendants, *id.* at 13; filing amended complaints after the assertion of a statute of limitations defense, *id.* at 13; filing amended complaints after the assertion of a res judicata defense, *id.* at 13-15; and Plaintiff's damage claim of $1.9 million against the Rahl Defendants *id.* at 16. These are all re-packaged Rule 11 arguments, not appropriate under § 1927.

## 2.        Defendants Cannot Demonstrate Bad Faith

Secondly, even if §1927 did apply, Defendants cannot satisfy their burden of showing any bad faith on the part of Plaintiff's counsel.  Defendants devote four pages of their motion (pp. 13-16) to a recitation of factual and legal arguments concerning the case.  Defendants would have the Court believe that they prevailed on all of these arguments.   That is far from the case, as Judge Dimitreouleas resolved only a single issue at summary judgment, namely, the RICO statute of limitations.  [D.E. 528].  The Court left open the remaining issues, and the parties continue to have vastly different views of those issues.  Plaintiff will address each claim in turn.

The $1 Million Investment:  Defendants first claim that Plaintiff's counsel engaged in "vexatious" conduct by making allegations that Plaintiff invested approximately $1 million into the project between 1993 and 1995.  *See* Motion at 14.  They argue that counsel "ignored" the fact that Plaintiff breached the Forward Purchase Contract by failing to pay the full $1 million.  *Id.* at 14.

The Court should reject this argument outright, as Plaintiff submitted sworn proof, on multiple occasions, that he made the full $1 million investment and that he did not breach the contract.  *See* D.E. 546, p. 10 .  Despite their repeated arguments that Plaintiff breached the contract, Defendants never produced a single default notice or even a past-due-payment notice during discovery.  *See* D.E. 212 at 294:2-5, 19-22.  Instead, the evidence showed that Defendants continued to give Plaintiff updates and tours of the project when he traveled to the Turks & Caicos Islands [D.E. 405-1] –  an odd thing to do for an investor who supposedly breached his contract.  No trier of fact has ever resolved this dispute between the parties.

An attorney does not act in bad faith by advocating positions based on the sworn testimony of his or her client.  *Cf. Andre v. CCB Credit Services, Inc.*, 2010 WL 3222500 (S.D. Fla.

2010)(declining to award Rule 11 sanctions where attorney relied on verified allegations of client). This is particularly true here, where Plaintiff's sworn testimony is corroborated by Defendants' own failure to produce a default notice.

Bank Records. In a related vein, Defendants claim that counsel acted in bad faith because Plaintiff did not produce his older bank records to prove the entire $1 million investment. *See* Motion at 11. The fact that Plaintiff did not produce bank records does not mean the investment was never made. Indeed, Patricia Rahl failed to produce numerous bank records from her own IOTA trust account because her own bank likewise failed to maintain records older than seven years. *See* D.E. 212 at 320:2-7. Plaintiff submitted sworn testimony numerous times that he, in fact, made the investment. *See* D.E. 546, p. 10. Counsel did not act in bad faith by advocating that position.

Defendants' arguments regarding the Quicken Report do not alter this conclusion. As Plaintiff explained, the Quicken Report did not cover all of his bank accounts, and he made numerous payments from other accounts. *See* D.E. 546, p.11-12. Counsel's decision to advocate in support of his client's testimony did not constitute bad faith, any more than the decision of defense counsel to advocate their "breach" theory despite the lack of any notice of breach.

The $900,000 Investment. Defendants next attack counsels' allegations that Plaintiff sold a home in the Bahamas for $2.2 million and that Defendants diverted $900,000 of this purchase price to the Turks & Caicos Islands. *See* Motion at 14. Once again, the parties offered vastly different versions of the events surrounding this transaction in discovery, and no trier of fact has resolved this conflict.

Plaintiff affirmed his version under oath numerous times. *See* D.E. 548-1, ¶ 28. According to Plaintiff, the true sales price of the Bahamas house was $2.2 million, and Patricia Rahl inserted

13

a fictitious $1.3 million sales price to help assist the buyer, Dr. Richard Lazarra, evade Bahamian taxes. *See* D.E. 548-1, ¶ 29. When Plaintiff sent a third-party subpoena to Dr. Lazarra to obtain his records of the transaction, Defendants' lawyers appeared on his behalf, actively resisted the subpoena, and produced no documents whatsoever. *Id.* Plaintiff's counsel acted well within the bounds of good faith by advocating that Defendants' version of these events was the correct one.

Project Entities. Defendants next complain that Plaintiff's counsel filed a Third Amended Complaint adding eight additional defendants (referred to as the "Project Entities" throughout this case). *See* Motion at 13. Counsel added the Project Entities in good faith, as all were central to the dispute. *See* D.E. 402, Section I.C.. Indeed, Patricia Rahl held official positions with virtually all of the various entities. *Id.* While the Court ultimately dismissed these entities for lack of personal jurisdiction, the assertion of personal jurisdiction was not made in bad faith, given the central role of Patricia Rahl – a Florida attorney – in virtually all of the entities. *Id.*

Statute of Limitations: Defendants next attack counsels' decision to continue prosecution of the case after Defendants raised statutes of limitation and repose as defenses in their first motion to dismiss. *See* Motion at 13. As pointed out in the Rule 11 papers, counsel had numerous good faith and reasonable arguments for overcoming these defenses. Plaintiff incorporates those arguments here.

The Res Judicata Defense: Defendants likewise attack counsels' decision to continue prosecution of the case after Defendants raised *res judicata* and collateral estoppel as defenses. *See* Motion at 13. As an initial matter, no court has ever ruled on these defenses. As illustrated in the Rule 11 papers, moreover, Plaintiff's counsel had, and continue to have, numerous good faith and reasonable arguments for overcoming these defenses.

14

Defendants place particular emphasis on Plaintiff's testimony regarding his lay understanding of the claims he brought in his Texas divorce and in this case. *See* Motion at 14-16. As pointed out in the Rule 11 responses, Plaintiff's lay description of his claims does not control the *res judicata* analysis. Instead, the analysis focuses on an examination of the claims actually brought and filed in the Texas case. At all times, counsel had good faith and reasonable arguments for prevailing on these issues.

The Damage Claim: Finally, Defendants find "the essence of continued bad faith" in counsels' supposed decision to seek $1.9 million in damages against the Rahls in the Fourth Amended Complaint. *See* Motion at 16. The Fourth Amended Complaint does not seek to recover $1.9 million in damage against the Rahls, however. Instead, each "wherefore" clause expressly provides for an offset equal to "a partial recovery obtained by Maale in his Texas divorce case." [D.E. 501]. This is not bad faith. Defendants have simply misread the damage clause.

### 3.   Defendants Failed to Demonstrate Any Financial Nexus

Third and finally, the Court should reject the §1927 argument because Defendants have not even attempted to show any nexus between the above conduct and any particular time expended in the case. *See Peer*, 606 F.3d at 1314 (requiring movant to prove nexus). As moving parties, the Defendants bear the burden on this issue. *See Gray*, 2010 WL 2593608 at *13 (denying attorneys' fees under §1927 where defendant "completely failed to show some, much less all, of its attorneys fees are related to sanctionable conduct by plaintiff's counsel"). Defendants cannot simply complain about a laundry list of conduct and then leave it to the Court to hunt through their time sheets to "connect the dots."

15

Moreover, Plaintiff retained two law firms represent him in the course of the case.  He started with Edwards, Angell Palmer & Dodge, which first appeared in February 2008.  [D.E. 1].  On April 28, 2010, McCabe Rabin, P.A. appeared as substitute counsel. [D.E. 372].  Defendants make no effort to distinguish the conduct that should be attributed to each law firm, the exact time entries that resulted from the allegedly objectionable conduct of each firm, and the amount for which either firm should be held accountable.  For this reason alone, the motion should be denied.

### D.        DEFENDANTS CANNOT INVOKE THE COURT'S INHERENT POWER

Defendants also seek sanctions under the Court's inherent authority.  To award these sanctions, the Court must make an affirmative finding of bad faith.  *See Peer*, 606 F.3d at 1316; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)("The key to unlocking a court's inherent authority is a finding of bad faith.").  Mere contentious litigation will not suffice to evidence bad faith.  *See Sure Fill & Seal, Inc. V. GFF, Inc.*, 2010 WL 3063287, *11 (M.D. Fla. 2010).  Also, the Court's inherent power "must be exercised with restraint and discretion."  *Id.*

Defendants proffer no additional grounds for sanctions under this doctrine that have not already been advanced as a basis for Rule 11 or §1927 sanctions.   For the reasons set forth in response to those arguments, this claim should be rejected as well.

### E.        DEFENDANTS FAILED TO COMPLY WITH LOCAL RULE 7.3

As an additional basis to deny this motion, Defendants violated Local Rule 7.3(b), which requires parties moving for attorneys fees to serve a draft motion on the opposing party within thirty days of the entry of the Final Judgment.  The draft motion must include Defendants' fee agreement with counsel; the identity, experience and qualifications for each timekeeper for whom fees are sought; a  description of the tasks done during any hours expended in the case; and a description and

documentation with invoices all incurred and claimed fees and nontaxable expenses.  *See* S.D. Fla. L.R. 7.3(a).

In this case, Defendants served a draft motion within the allotted time frame, but did not attach the crucial exhibits, most notably their billing records.  This made the pre-filing conference envisioned by the local rule meaningless, as counsel did not have access to the actual invoices. Defendants eventually produced their invoices on a rolling basis, with the last batch  being served on September 13, 2010, the same day this motion was filed.  *See* Exhibit A (composite of invoice transmittal cover sheets).

Failure to adhere to local rules constitutes independent grounds to deny an attorneys' fee motion.  *See Norych v. Admiral Insurance Co.,* 2010 WL 2557052, *2 (S.D. Fla. 2010)(denying motion for attorneys' fees for failure to follow Local Rules 7.3(a)(1) and 7.3(b)); *Provide Commerce, Inc. v. Preferred Commerce Inc.*, 2008 WL 360591, *2 (S.D. Fla. 2008)(same).   Given that Defendants circumvented Local Rule 7.3 here, their motion should be denied.

**III.**     **DEFENDANTS HAVE REQUESTED EXCESSIVE FEES**

For all of the reasons set forth above, the Court should deny entitlement to fees, and the Court need not reach the issue of amount.  To the extent the Court does reach this inquiry, the Court should follow a two- step analysis: (1) determine the reasonable hourly rates for prevailing counsel, and (2) determine the reasonable number of hours expended in the litigation.  *See e.g., Old Nat'l Bank v. Goldberg & Associates, LLC*, 2009 WL 1097249 (S.D. Fla. 2009).

**A.**     **DEFENSE COUNSEL CHARGED REASONABLE HOURLY RATES**

Plaintiff does not contest the hourly rates that Defendants actually charged during the course of this case, *i.e.*, the so-called "discounted" rates set forth at page 5 of the Motion.  Plaintiff does

object, however, to the artificially inflated rates that Defendants seek to pass on to the Plaintiff. Numerous courts have recognized that attorneys' fees should not be awarded in an amount that exceeds the actual fees billed to the prevailing party.  *See Lane v. Head*, 566 So.2d 508, 512 (Fla. 1990); *Florida Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1151 (Fla. 1985).

Attorneys' fees are designed to make the prevailing party whole, not to award a windfall. In *Old Nat'l Bank*, 2009 WL 1097249 at * 6, for example, a law firm applied a 10% discount on certain billings to the client.  In awarding attorneys' fees, the district court factored the 10% discount into the award, so that the fee award did not exceed the amount actually paid by the prevailing party. *Id.*   The same logic applies here.  The Court should not allow artificial rates that Defendants did not actually pay.

### B.    DEFENDANTS EXPENDED AN EXCESSIVE NUMBER OF HOURS

Plaintiff objects to the total number of hours expended by defense counsel, which resulted in a legal bill of $1,011,034.00 for a case that did not even go to trial.  Plaintiff's objections to individual time entries are too numerous to re-state within the page limit allowed by local rules. Accordingly, Plaintiff has attached as Exhibits B and C, respectively, copies of the Rahl invoices and the Kirchgessner invoices.  These invoices include notations to individual time entries to which Plaintiff objects, using abbreviated codes.  The objections fall into eight categories, with relevant examples below.  (Plaintiff has not repeated every objection here).

V = Vague: The time entry does not supply information sufficient to enable Plaintiff to lodge a meaningful objection. Examples include the following:

| Kirchgessner | 3/19/08 | Analyze and research issues | 2.5 hours |
|---|---|---|---|

| Kirchgessner | 3/20/08 | Research | 4.5 hours |

E = Excessive:  The amount of hours expended exceeds the time reasonably required to perform that task.  Examples include:

| Rahls | 4/08 | Drafting a 10 page reply memorandum to a motion to dismiss | 26.7 hours |
| Kirchgessner | 4/08 | Drafting a 8 page reply memorandum to a motion to dismiss | 30.5 hours |
| Kirchgessner | 8/08 | Drafting a motion to dismiss Amended Complaint, which repeated arguments from earlier motion | 26.8 hours |
| Rahls | 9/08 | Drafting a 10 page reply memorandum to a motion to dismiss | 28.1 hours |
| Kirchgessner & Rahl | 11/08 | Drafting a 8 page motion to stay discovery | 45.6 hours |
| Rahls | 1/10 - 6/10 | Drafting Summary Judgment motion | 80.6 hours |
| Kirchgessner | 1/10 - 6/10 | Drafting Summary Judgment motion | 67.2 hours |

T = Travel.  Defense counsel billed for travel time.  As examples, defense counsel billed travel time to Kirchgessner and the Rahls on 7/24/08 and 7/25/08.

C = Clerical.  The work performed was purely clerical.  Examples include:

| Kirchgessner | 12/09 | Paralegal bill for indexing documents | $14,340 |
| Kirchgessner | 11/09 | Advance for typist | $1,000 |

O = Other.  The work related to parties or clients *other* than the Rahls or Kim Kirchgessner.  Examples include:

| Rahls | 8/09 | Research when "dismissal will be forthcoming from the court with respect to Paul Kirchgessner and Ron Kirchgessner and Caicos Beach Club Charter, LLC" | 4.6 hours |
|-------|------|---|---|
| Rahls | 4/10 | Work related to motion to dismiss, motion to quash service  for Caicos Beach Club Charter, Ltd | 8.6 hours |
| Rahls | 5/10 | Work related to motion to dismiss for Caicos Beach Club | 2.7 hours |

U = Unrelated.  The work related to disputes other than this case.  Most notably, Defendants

billed for work in March 2010 related to the Rahls' claim of a retaining lien against Plaintiff in a

state court case pending in Palm Beach County.  That case has not yet been resolved.

D = Double.  The invoices appear to double-bill the same event.   A number of Rahl and

Kirchgessner invoices contain identical entries for the same date.  Examples include March 6, 2008,

April 14 and 16, 2008.  It is unclear whether Defendants double-billed the clients of split time

between clients.  At times, the billing notations include a "split time" reference, and at times they

do not.   To the extent any time appears double billed without a "split time" reference, that entry

should be deleted.

### C.     COSTS

Finally, Defendants request recovery of costs far in excess of those allowed by Fed.R.Civ.P.

54.  Plaintiff objects to all costs other than those agreed to in Plaintiff's Objections to Bill of Costs.

[D.E. 564].  Plaintiff has marked all objectionable costs on the attached invoices with an "X."  As

the most egregious example, Defendants have requested $7,050 dollars in reimbursement for the cost

of flying (and then washing an waxing) defense counsels' Merlin III private jet for trips in July and

September 2008.  All costs should be denied, other than costs previously agreed to in D.E. 564.

## IV.     <u>CONCLUSION</u>

For al of the reasons set forth above, Plaintiff respectfully requests this Honorable Court to Deny Defendant's motion in its entirety.

Respectfully submitted,

McCABE RABIN, P.A.

_____/s/_____

Ryon M. McCabe (009075)
rmccabe@mccaberabin.com
Mark D. Nichols (056580)
mnichols@mccaberabin.com
1601 Forum Place, Ste. 301
West Palm Beach, Florida 33401
Telephone: (561) 659-7878
Facsimile: (561) 242-4848

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 30, 2010,  I electronically filed the foregoing document with the Clerk of the court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____/s/_____
          Ryon M. McCabe (009075)
          Mark D. Nichols (056580)

21

SERVICE LIST


Gerhard Emil Maale, III,
v.
Kim Francis Kirchgessner, et al.


CASE NO.: 08-80131-CIV
United States District Court, Southern District of Florida


Ryon M. McCabe, Esquire
rmccabe@mccaberabin.com
Adam T. Rabin, Esquire
arabin@mccaberabin.com
McCabe Rabin, P.A.
1601 Forum Place, Ste. 301
West Palm Beach, Florida 33401
Telephone:  (561) 659-7878
Facsimile:  (561) 242-4848

Harriet R. Lewis
hlewis@lsdlaw.net
Lewis Stroud & Deutsch, PL
1900 Glades Road, Suite 251
Boca Raton, Florida 33431
Telephone: (561) 826-2800
Facsimile: (561) 826-2828