UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80131-Civ-DIMITROULEAS/Snow

GERHARD EMIL MAALE, III,

   Plaintiff,

  vs.


KIM FRANCIS KIRCHGESSNER, et al.,

   Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

   THIS CAUSE is before the Court on Defendant Kim Kirchgessner's Motion for Sanctions Pursuant to Rule 11(c) Fed.R.Civ.P. (Docket Entry 514) and Defendants', Patricia Rahl, Brian Rahl, Rahl & Rahl, P.A. Motion for Sanctions Pursuant to Rule 11(c) Fed.R.Civ.P. (Docket Entry 515), which were referred to United States Magistrate Judge Lurana S. Snow for report and recommendation. The defendants seek sanctions in the form of attorneys' fees and costs for the entire litigation and ask for a hearing to determine the amount of attorneys' fees and costs. This report and recommendation is limited to the issue of whether Rule 11 sanctions should be awarded. If the Court grants the motions for sanctions, then the undersigned will consider the issue of the amounts to be awarded.

   Each motion seeks Rule 11 sanctions against the plaintiff, Gerhard Emil Maale, III; his current counsel, Ryon McCabe and the firm McCabe Rabin P.A. [hereinafter "McCabe"], and

his prior counsel, Simeon Brier and Jaime Guttman of the firm Edward, Angell Palmer & Dodge, LLP, and its former partner Gary A. Woodfield [hereinafter "EAPD"].

The plaintiff filed a consolidated response to both motions (DE 549), to which the defendants filed a consolidated reply (DE 558).  Current counsel McCabe filed a consolidated response to both motions (DE 546) to which Kim Francis Kirchgessner ("Kirchgessner") filed a reply (DE 560) and to which the Rahl defendants filed a reply (DE 559).  Former counsel EAPD filed a consolidated response to both motions (DE 551) to which the defendants filed a consolidated reply (DE 561).  Accordingly the motions are fully briefed and are ripe for consideration.

## I. PROCEDURAL HISTORY

The Complaint was filed on February 8, 2008, alleging civil RICO based on wire fraud and mail fraud; federal securities fraud; state securities fraud; violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) and various state law claims, arising out of the plaintiff's investment in a real estate project (Project) being developed by the defendants in Turks and Caicos, British West Indies.[1]  (DE 1)  The Rahl defendants and Kirchgessner

---

[1] The plaintiff alleged that he was defrauded of $1 million invested in ten Forward Purchase Agreements which were executed prior to the construction of the Project, which guaranteed return of the investment if the units did not have a Certificate of Occupancy prior to December, 1995.  (¶¶ 23 and 60) The complaint also alleged that he sold his house in the Bahamas in 2001, and wired $900,000 to the Rahls' escrow account to purchase a house

filed motions to dismiss the complaint, asserting that the statute of limitations barred the claims, that the state law claims were not pled with particularity, Count I failed to state a claim for civil RICO, and that the claims against Kirchgessner were barred by a lack of personal jurisdiction and by res judicata. (DE 15 and 16)   The Court granted the motions in part, but noted that the complaint did not contain sufficient information to determine the issues of the statute of limitations and res judicata. (DE 35)

The plaintiff filed an Amended Complaint. (DE 36)   The Rahl defendants and Kirchgessner filed motions to dismiss the Amended Complaint. (DE 37 and 38) These motions to dismiss asserted that the claims were barred by the statute of limitations, Count I failed to state a claim for civil RICO, and Counts I, II, IV and VI were not pled with sufficient particularity.   Kirchgessner also asserted lack of personal jurisdiction and the bar of res judicata. The Court found that the RICO claim and the other counts were pled with sufficient particularity, but that the complaint did not contain sufficient information to determine the issues of the statute of limitations or res judicata. (DE 66) The defendants filed answers to the complaint and asserted counterclaims. (DE 68 and 69) Discovery ensued.

---

to be built in the Project. (¶ 24) The plaintiff alleged that during his 2007 divorce from defendant Kirchgessner, the Rahl defendants withheld documents which were unfavorable to Kirchgessner. (¶ 26)

On February 9, 2010, the plaintiff filed a motion for
leave to filed a Second Amended Complaint to add defendants and
claims based on facts learned during discovery. (DE 246) The motion
was granted. (DE 259) Immediately thereafter the plaintiff
voluntarily dismissed two of the new defendants. (DE 261) The Rahl
defendants and Kirchgessner filed a motion to dismiss the Second
Amended Complaint, asserting that the allegations of fraud and civil
RICO were not pled with sufficient particularity because they did
not make specific allegations regarding the acts of the new
defendants and how they related to the acts of the original
defendants. (DE 281) The Court granted the motion to dismiss Counts
I, II, V and VII without prejudice and gave leave to file a Third
Amended Complaint. (DE 339)

The plaintiff filed a Third Amended Complaint. (DE 359)
On the same day, the plaintiff sought leave for substitution of
counsel. (DE 358)[2] Ryon M. McCabe of McCabe Rabin entered an
appearance on behalf of the plaintiff. (DE 376) Thereafter the Rahl
defendants and Kirchgessner filed a motion to dismiss the Third
Amended Complaint. (DE 401) The defendants then filed motions for
summary judgment. (DE 436 and 437) The Court dismissed the claim for
unjust enrichment and gave leave to file an amended complaint, but
found that, taking the allegations of the complaint as true, there

---

[2] Plaintiff's lead counsel was leaving EAPD, and the firm
could not continue the representation without him.

4

were issues or material fact regarding whether the other claims were barred by the statute of limitations. (DE 497)

Plaintiff's new counsel filed the Fourth Amended Complaint. (DE 501) Shortly thereafter the defendants filed the instant motions for Rule 11 sanctions. The next day the Court heard oral argument on the motions for summary judgment. (DE 519)  The defendants filed answers to the Fourth Amended Complaint and counterclaims. (DE 522 and 523)

The Court granted summary judgment to the defendants on the civil RICO claim, finding that it was barred by the four-year statute of limitations. (DE 528) The Court considered the plaintiff's alleged investments in the Project between 1993 and 1996, based on a Forward Purchase Contract which included a clause that his money would be returned with interest if the Project did not obtain a Certificate of Occupancy for the unit on or before December 31, 1995. The Court found that the plaintiff should have realized when the Project did not receive a Certificate of Occupancy by December 31, 1995, that he should be curious about his investment. As time passed without the issuance of the Certificate of Occupancy, the plaintiff had actual notice that he had been injured and should have moved to protect his interests.  He made many visits to the Project which confirmed the status of the construction.  In 2000 he knew that the Project was in serious financial trouble, but he did not investigate his investment even

then.  The Court found that the plaintiff should have known by 1996, and no later than 2000, that the Project was not proceeding as allegedly promised, and should have filed his suit no later than 2004.

The Court also considered the allegation that in 2001 the plaintiff sold his house in the Bahamas with the proceeds allocated as follows: $900,000 for a home to be built at the Turks & Caicos and the balance deposited in the Rahl firm's escrow account. But the Rahls refused to give him an accounting for the use of the money. The Court found that there was no issue of material fact that the plaintiff knew by 2001, at the latest, that he was out of his money for the house. Accordingly, this claim should have been filed no later than December 2005.

The Court held that, in light of the plaintiff's actual knowledge, in 2000 and 2001, that both investments had failed, "there was no issue of material fact and no reasonable jury could differ that plaintiff was on sufficient notice to trigger the statute of limitations for his RICO claim by 2001 . . .." (DE 528, p. 15)

Next the court considered whether there were grounds for an extension of the limitations period owing to the fiduciary relationship between the plaintiff and the defendants; the defendants' alleged concealment of the true status of the Project; and doctrines such as equitable tolling and delayed discovery. (DE

528, pp. 8-18) The Court found that even when dealing with fiduciaries, a plaintiff who by 2001 knew something was wrong with his investments was required to exercise "reasonable care and diligence in seeking to learn the facts that would disclose the fraud." Hupp v. Gray, 500 F.3d 993, 997 (7th Cir. 1974).

The Court found that in spite of the plaintiff's knowledge that neither the Project nor the house were proceeding as promised, he made no effort to inquire about his investments until long after the statute of limitations period had expired. Thus, the doctrine of equitable tolling was inapplicable.

The Court granted summary judgment to the defendants on the RICO claim. The Court declined to exercise supplemental jurisdiction over the state law claims and entered final judgment for the defendants. (DE 529)

## II.  THE MOTIONS FOR SANCTIONS

### A. Kirchgessner

The motion asserts that Rule 11 sanctions are proper because the plaintiff and his counsel filed and pursued pleadings which were barred by the statute of limitations, the statute of repose, and the doctrines of collateral estoppel and res judicata. Moreover, the pleadings are replete with allegations which have no evidentiary support.  The defendant lists eight such allegations pleaded in the Third  Amended Complaint:

1.       The plaintiff alleged that the defendants fraudulently deprived the plaintiff of $1,950,000.00, (¶¶ 33 and 54) However in response to a request for admissions the plaintiff admitted that he had no documents "to conclusively prove the entire $1.8 million due to the unavailability of bank records, but Plaintiff does have documents to prove a portion of the $1.8 million due." (DE 514, Exh. B., No. 6)

        The defendant notes that the plaintiff had some access to the bank records since he attached various checks from the relevant time periods to the Third Amended Complaint, which alleged that the payments comprised eight checks and one wire payment.  Only two of the checks have completed Memos, and both indicate items other than the Turks & Caicos Project.  Five of the checks were outside the relevant time period.  Only one check is an amount specified in the Forward Purchase Agreement. (DE 360-1)

2.       The plaintiff alleged that he wire transferred to the Project $250,000 in November 1992. (¶ 37) However, there is no documentation of a wire transfer in that amount.  Moreover, the Forward Purchase Agreement was signed on January 30, 1993, and contains no reference to a prior payment having been made. The plaintiff has no documents showing that he ever  made any of the payments alleged in the Third Amended Complaint.

3.       The plaintiff alleged that he tendered a check on February 26, 1993, for $49,121.31 as an investment in the Project. (¶ 38)

8

However, the check says the amount was "Loan to Maale Group for Vineyard property." When deposed in November 2009, the plaintiff testified that the check had nothing to do with this lawsuit.

4.      The plaintiff alleged that he tendered a check on August 13, 1995, in the amount of $75,700.00 as an investment in the Project. (¶ 44) However the check has no notation of its purpose, does not coincide with the amount of the $100,000 installments and was issued after the December 31, 1994, deadline for installment payments.

5.      The plaintiff alleged that he tendered a check on April 1, 1996, in the amount of $70,000 as an investment in the Project. (¶ 45) However, this check also has no notation of its purpose, is not in the amount for a $100,000.00 installment payment and was tendered after the deadline for installment payments.

6.      The plaintiff alleged that he tendered a check on October 21, 2001, in the amount of $8,923.80 as an investment in the Project. (¶ 54)  However, the memo on the check reads "Hobiecat." While this check was omitted from the Fourth Amended Complaint, the amount was not subtracted from the damages sought.

7.      The plaintiff alleged that the house in the Bahamas sold for $2.2 million, of which $900,000 was paid into the Project which allegedly was in financial trouble, and in return Kirchgessner's father promised to build a house for the plaintiff near the Project. However, the sales contract for the Bahamas house shows that the sale price was $1.3 million, which is confirmed by the unsworn

9

declaration of the purchaser, Richard Lazarra.   Moreover, the plaintiff's claim for the $900,000 had already been litigated and decided in the Texas divorce proceedings.

8.      The plaintiff alleged that Kirchgessner misrepresented the progress and status of the Project to conceal the fraud and prevent him from discovering the fraud.  However, the plaintiff was never able to overcome the evidence that he had personal, first-hand knowledge of the progress of the construction on the Project because he had visited the site more than 20 times between the mid-1990s through 2001.

        The defendant also contends that the plaintiff filed a complaint which was based on the same allegations and facts which had been adjudicated in the Texas divorce case, which dismissed the fraud claims with prejudice.  The plaintiff was fully aware of this and his attorneys were obligated to make a good faith inquiry into those proceedings.  Indeed, plaintiff's EAPD counsel in the Florida proceedings associated with the divorce case filed the instant complaint eight months after the divorce case was closed.  Many of the documents produced in this case were copies of documents submitted to the court in the divorce case.  The claims in the instant case are barred by the doctrines of res judicata and collateral estoppel.  Indeed, the only reason the instant case was filed was to seek vengeance against his former wife and two of her friends, the Rahls.

Finally, the defendant asserts that plaintiff's counsel failed to make a reasonable inquiry of the existing law regarding the statute of limitations and the statute of repose.

B. The Rahl Defendants

The Rahl defendants' motion for Rule 11 sanctions repeats the majority of the arguments presented in Kirchgessner's motion. However, the Rahl defendants do not argue that the claims against them are barred by collateral estoppel and res judicata arising from the Texas divorce case. Additionally, they assert that the plaintiff improperly alleged that the Rahl defendants misrepresented the progress and status of the Project to conceal the fraud and prevent the plaintiff from discovering the fraud. They also argue that the plaintiff could not overcome the evidence that he had personal, first-hand knowledge of the Project and nothing was concealed from him.

C. The Plaintiff's Consolidated Response and the Defendants' Consolidated Reply to the Plaintiff's Response

1.   The Plaintiff's Response

The plaintiff asserts the motions to have the complaint declared frivolous are merely a ploy to have the plaintiff pay the defendants' attorney's fees.   All of the issues raised by the defendants are addressed to the Third Amended Complaint.  However, plaintiff's new counsel carefully investigated the challenged allegations in the Third Amended Complaint and drafted the Fourth

Amended Complaint to remove allegations with no evidentiary support. All of the Fourth Amended Complaint is buttressed by evidentiary support.

The plaintiff provides his declaration (DE 549-1) in which he states that it was not until June 2007, when Patricia Rahl did not respond to his request for a refund of his investment, that he began to suspect that he had been defrauded. He had trusted her because, as his counsel, she had a fiduciary duty to protect his interests.  When he visited the site of the Project he had no way to know that a different entity was behind the Project, and he did not infer from the slow construction that fraud was being perpetrated.  He avers that until Patricia Rahl testified in January 2010, he did not know that the Caicos Beach Club Charter, Ltd., in which he had invested his money, had become defunct years earlier. He states that he participated in the examination of the allegations of the Third  Amended Complaint and he agreed to delete from the Fourth Amended Complaint certain of the allegations concerning the progress of the construction and two of the checks that had been written for other purposes.

The plaintiff also agreed that he had received partial credit from the Texas divorce court for the house on South Caicos Island, and the Fourth Amended Complaint made it clear that no damages were sought for the house.  He avers that his only reason for filing the instant complaint was to recover the substantial

investment he lost because of what he truly believes was fraud committed by the defendants. He cannot believe that Patricia Rahl never informed the investors, including the plaintiff, that the Caicos Beach Club Charter, Ltd., went out of business and defaulted on its lease.

The plaintiff argues that as a physician he has no personal knowledge of the effect of collateral estoppel and res judicata, and that non-lawyers cannot be fined based on a claim that is legally frivolous.  Moreover the court never ruled on the issues of res judicata and collateral estoppel.  He asserts that he could not have raised the fraud claim in the divorce case since he did not learn of it until after the divorce case was closed.

The plaintiff's response to the motion for sanctions also adopts and discusses the response filed by his current counsel, McCabe, asserting that there was reasonable evidence supporting the complaint, and reasonable evidence with which to challenge the affirmative defenses raised by the defendants, which were also asserted in their motions to dismiss thee various complaints.  He contends that he prevailed on all of the motions which asserted that the claims were barred by the statute of limitations.  Even the grant of summary judgment for the defendants is not sufficient to show that the complaint was frivolous.

2.  The Defendants' Reply

The defendants note that the plaintiff contends that he relies on his counsel's memorandum of law to show that Rule 11

13

sanctions are not warranted.  But his attorney's memorandum is based on the assertion that he had the right to rely on the plaintiff's representations of the facts and his sworn testimony.  Moreover, pursuant to Fed.R.Civ.P. 11(b)(3) a client can be sanctioned for factual misrepresentations in the pleadings.

The reply focuses on the factual misrepresentations in the plaintiff's declaration, which states that he was not aware of the fraud until June 2007.  But on February 13, 2007, the plaintiff submitted an exhibit list to the divorce court which included a March 10, 2006, "Letter from Kevin Coupland re Mr. and Mrs. Maale and Caicos Beach Club Resort." (DE 435-4, p.5, line 14) This letter was produced by Kirchgessner to plaintiff's counsel during the divorce proceedings. The defendants contend that the letter shows that the plaintiff was aware in March 2007 that the Caicos Beach Club Charter, Ltd., was a struck corporation, that its initial business plan had failed and that he had no interest in the Caicos Beach Club Resort & Marina.[3]

The plaintiff's declaration also states that he was not aware, until Patricia Rahl's deposition in January 2010, that the Caicos Beach Club Charter, Ltd., was defunct.  However, the defendants point out that Patricia Rahl filed a declaration in the

_____

[3] Neither party filed the March 10, 2006, letter in the instant case.  The Rahl's reply to EAPD describes the letter as "explaining that the company was no longer in existence and that MAALE had no interest in the membership units in the Turks & Caicos." (DE 561, p. 5)

instant case on March 11, 2009, stating that the entity was no longer in existence as it had been stricken from the corporate records of the Turks and Caicos islands.

The plaintiff's declaration states that he agreed to not seek damages for the house in the Turks and Caicos. However, this restriction applies only to Kirchgessner. The plaintiff continues to seek damages of $900,000 from the Rahl defendants, minus the partial recovery the plaintiff received in the divorce case.

The declaration states that Patricia Rahl deliberately never told him, as an investor in the entity, that the Caicos Beach Club Charter, Ltd., had failed and defaulted on its lease on the property. However, the defendants argue that the plaintiff had failed to pay the installments required by the Forward Purchase Contracts, thus he was no longer an investor and was not entitled to any notice in 1998.

The defendants challenge the plaintiff's argument that he could not have brought the fraud charges alleged in this complaint before the divorce court since the divorce case was closed before he discovered the fraud which had been perpetrated. The defendants point out that earlier dates at which he became aware of his loss have been demonstrated above, showing this to be a misrepresentation. They also note that the plaintiff did not "prevail" on the issue of the statute of limitations during the motions to dismiss since the Court merely found that the allegations

of the complaint were insufficient to allow the Court to consider the issue.

D. The Response of Current Counsel and the Individual Replies of the Defendants

1. McCabe's Omnibus Response

McCabe's response includes his 25-page declaration, a number of documents from the Texas divorce case and three declarations from attorneys offering their opinions regarding McCabe's representation of the plaintiff. McCabe argues that the Rule 11 motions, while based on facts available to the defendants long before McCabe entered the case, were used improperly to gain a tactical advantage in the midst of the mediation, the briefing of the defendants' motions to dismiss and the briefing of the defendant's motions for summary judgment. The Rule 11 motions contain legal arguments such as statute of imitations, res judicata and collateral estoppel, which had been presented to the Court in each of the motions to dismiss, and which survived each ruling on those motions.

During the safe harbor period before the Rule 11 motions were filed, McCabe, who at the time was drafting the Fourth Amended Complaint, sought counsel from a former chairman of The Florida Bar's Professional Ethics Committee, and together they reviewed the allegations of the Third Amended Complaint and the evidence supporting each allegation. Allegations which were not supported

by evidence were removed from the Fourth Amended Complaint. However, the defendants subsequently filed the Rule 11 motions, which address only the Third Amended Complaint and do not discuss the corrections in the Fourth Amended Complaint.

The Rule 11 motions list eight examples of allegations in the Third Amended Complaint which are not supported by the evidence. However, the Fourth Amended Complaint did not contain allegations related to (1) the February 26, 1993, check for $49,121.31, (2) the October 21, 2001, check for $8,923.80 and (3) the defendants' misrepresentations about the progress of the <u>construction</u> of the Project. Upon learning that the Texas court had given the plaintiff the benefit of the value of the South Caicos Island home, McCabe amended the ad damnum clauses to show the plaintiff's partial recovery of the money spent on the house. The other five examples in the motion are all supported by the plaintiff's testimony under oath prior to McCabe's entry into the case. McCabe asserts that he has a right to rely on the sworn testimony of his client. In this case, the defendants have no documentary evidence that the testimony was wrong. They merely say that since the plaintiff has no supporting documents, there is no evidentiary basis for the facts presented in the testimony.[4]

---

[4]   McCabe asserts that even the Quick Report records of the plaintiff's bank account (produced as a supplemental production of documents after the defendants served the pre-filing copy of the Rule 11 motions) are not dispositive of the amounts invested, since they represent only one bank account. The plaintiff told

Even though the Court granted summary judgment based on the issue of the statutes of limitations and repose for the RICO claim, McCabe asserts that reasonable facts existed supporting a good faith argument that these defenses did not bar the plaintiff's claims.  McCabe discusses the issues of delayed discovery, equitable tolling and the continuing tort doctrine, each discussion buttressed by declarations of attorneys offering opinions on the issue.

The delayed discovery rule provides that the statute of limitations does not begin to run until the plaintiff knew or should have known that the cause of action accrued.  The plaintiff testified that he first suspected the fraud in June 2007.  Counsel contends that other facts support this testimony: the defendants were fiduciaries on whom the plaintiff could be expected to rely, making him less diligent in investigating the situation; the defendants actively concealed facts related to the status of the investments in the Caicos Beach Club Charter, Ltd., by publishing Project updates, web site updates, continued to sell memberships (although in a successor entity with a markedly similar name), and deliberately failed to notify the plaintiff of the demise of the Caicos Beach Club Charter, Ltd.  The plaintiff testified that it was not until the 2007 divorce proceedings that Kirchgessner told him that he did not own any memberships in the Project and did not own

---

McCabe that the remaining payments were made from other accounts for which he no longer has records.

the house.   Thereafter he requested the return of his investment, and when it was not forthcoming, discovered the fraud involved.

McCabe asserts that the facts support the argument that the statute of limitations was equitably tolled because the defendants concealed their fraudulent conduct; thus, the plaintiff was prevented from gathering evidence to support his claim.

Under Florida's continuing tort doctrine, the cause of action does not accrue until the conduct stops.  When the plaintiff visited the Project in 2000, 2002 and 2005, he was given tours of the Project but was never told that the project was not the one he had invested in.

The statute of repose, which applies only to the common law fraud claim and which provides a twelve-year window for the alleged fraudulent conduct, would apply to the plaintiff's fraud claim, since most of the conduct occurred within the twelve year period prior to the filing of the complaint: the news updates, the web site, the continued sales of the Project, and the continuing failure to disclose the status of the defunct entity.

McCabe also presents several arguments against the res judicata and collateral estoppel defenses to the fraud claim, raised in Kirchgessner's Rule 11 motion.  The Texas court was only presented with the claim of fraud related to the house, and did not consider the issue of vacation memberships.  The Fourth Amended Complaint does not sue Kirchgessner for fraud in connection with the

house.   The parties are not the same, since the Rahls were not
parties to the Texas divorce litigation.   The vacation membership
claims could not have been litigated as part of the divorce case
since that case was closed before the plaintiff discovered the loss,
through fraud, of his membership investments.

Finally, McCabe asserts that the defendants have offered
no evidence that the case was filed for an improper purpose,
vengeance.   On the other hand, the defendants improperly attempted
to use the Rule 11 motions late in the case for a litigation
advantage, to intimidate plaintiff's  new counsel.   Rule 11 is
intended to reduce frivolous claims, thus avoiding unnecessary
litigation.   The 1993 Advisory Committee Notes stated that if the
Rule 11 motion is delayed too long, it "may be viewed as untimely."

2. The Rahl Defendants' Reply

The reply addresses four issues: whether the motion was
filed for an improper purpose; whether McCabe made an adequate
investigation of the facts supporting the allegation that the
plaintiff invested $1.9 million in the Project; whether the Fourth
Amended Complaint corrected the incorrect allegations in the Third
Amended Complaint, and whether the Rahls' defenses of the statute
of limitations and statute of repose were avoidable.

When McCabe entered the case, the Second Amended Complaint
had been dismissed and the Third  Amended Complaint drafted by EAPD
had not yet been filed.   The fact that the defendants filed motions

to dismiss the complaints, rather than file a Rule 11 motion was not evidence, as McCabe claims, that the defendants did not view the claims as frivolous.  Indeed, the defendants' repeated assertions of the defenses of the statute of limitations and the statute of repose should have alerted McCabe to review the law in this area. Thus it was not improper for the Rule 11 motion to be filed when McCabe adopted the arguments previously offered by EAPD.

McCabe did not make a thorough investigation of the evidence supporting the claim of $1.9 million in investments in the Project.  The plaintiff did not produce the Quick Reports of his banking transactions until after the defendants had made the pre-filing service of the Rule 11 sanctions. Then he told McCabe that the investments were made from other bank accounts.  However, the plaintiff had already testified that all of the checks and wire transfers were from Compass Bank and Bank of America.  The Quick Reports demonstrated that the check for $75,770 was listed as for "attorney," not investment.  And there was no wire transfer for November 1992, the month in which the plaintiff represented that he made a $250,000 wire transfer to invest in the Project.  McCabe should have made a reasonable inquiry under the circumstances.

McCabe did not correct all the misrepresentations when he drafted the Fourth Amended Complaint.  He states that he deleted all references to misrepresentations about the status of the underline construction.  But paragraph 45 of the Fourth Amended Complaint

contains that language.  While McCabe states that he deleted the claim for the house in the claims against Kirchgessner to prevent double recovery, he continued to assert the claim against the Rahl defendants.  In contrast, the plaintiff's declaration in response to the motion for sanctions states that in light of the partial credit for the house he received in the divorce case, "the complaint should make it clear that no damages were sought for the house, and this was done." (DE 549-1, ¶ 5)

Finally, the Rahl defendants make legal arguments against McCabe's discussion of overcoming the various defenses raised by the defendants.

3. Kirchgessner's Reply

The reply discusses four issues: (1) whether the Rule 11 motion was untimely; (2) whether McCabe made an adequate investigation of the case; (3) whether the Fourth Amended Complaint corrected the incorrect allegations in the Third Amended Complaint, and (4) whether Kirchgessner's defenses of collateral estoppel and res judicata were avoidable.

Kirchgessner asserts that the argument about timeliness is frivolous in itself.  If the defendants had filed the Rule 11 motion before the end of discovery, the plaintiff would have argued that support for the allegations would be revealed through discovery.  The discovery evolved as the complaint was amended. While McCabe cites a portion of the 1993 Advisory Committee Notes

on timeliness in serving a Rule 11 motion, the following sentence provides, "In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery."

The reply also asserts that McCabe failed to make a thorough investigation of the litigation in the divorce case. He did not discuss the case with the plaintiff's divorce attorney, Mr. Mark Nacol, and apparently did not read any portions of the proceedings other than those filed with the defendants' motions for summary judgment. He did attend the deposition of Teresa Clark, one of the attorneys who represented Kirchgessner in the divorce. She testified repeatedly that the plaintiff's claims of fraud included the house and ten condominium units or memberships. The plaintiff filed the transcript of this deposition in response to the motion for summary judgment. (DE 474-1, pp. 20, 26, 28, 29, 47, 51 and 69, referring to ten memberships or condominium units raised in the divorce case). The plaintiff also filed his affidavit in the Texas case, dated November 10, 2006, to substantiate the ownership of his properties in the Turks and Caicos: one house and ten condominium units. (DE 433-1, pp. 1-4)  In the final divorce decree, the judge dismissed with prejudice Maale's claims of fraud as pled. (DE 432-9, p. 51)

In order to avoid the res judicata and collateral estoppel effects of the divorce proceedings, McCabe now characterizes the plaintiff's investments in the Project as "memberships," instead of

as condominium units or real estate.  McCabe's declaration states that, based on his interpretation of the language of the prospectus for the Caicos Beach Club Resort & Marina, the prior filings with the Court which identified the ten investments as real estate or condominium units were mistaken. (DE 546-1, ¶ 43) The reply notes that the plaintiff testified both in the divorce proceedings and in the instant case that his claim of fraud in the Texas case involved the units as well as the house. McCabe now says that the "fraud, as pleaded," was dismissed with prejudice, and his review of that pleading (DE 546-1, pp. 41-44) demonstrates there was a reasonable, good faith argument that the Texas decree did not include the ten memberships. (Id. ¶¶ 45, 46)  But Kirchgessner's reply points out that the Texas court's Memorandum Opinion summarizing the award of properties and liabilities refers to the attached exhibit, which lists the real property and Maale's valuation, lists "South Caicos House . . . valued at $1,500,000.00" followed by "Caicos Beach Club Resort & Marina . . . valued at $250,000.00." (DE 432-10, p. 4)[5] The

_____

[5]  The Court notes that on February 14, 2006, the Texas court entered an agreed order which required that "a.  The house and lot located in the Turks & Caicos. b. The ten units located in the Turks & Caicos" be placed on the market immediately.  (DE 435-4, p. 14) An undated inventory Summary Sheet shows the status of both properties as "Assigned."  (DE 435-4 p. 21) Kirchgessner's Texas attorney testified that the plaintiff's list of real property to be divided included his description of units or memberships.  However, the item was identified as solely Gerhard Maale's assertion of ownership, since it was Kirchgessner's position that they did not own any memberships in the Turks and Caicos. (DE 474-1, deposition pp. 69-70)

reply concludes that even if the fraud allegations in the Texas case did not include the vacation club memberships, the court considered the claims of ownership of the memberships in the division of the community property.

McCabe also repeatedly asserted that the plaintiff discovered the fraud in June 2007. However, the file in the divorce case shows that the Plaintiff filed an exhibit list which included the March 10, 2006, "[l]etter from Kevin Coupland re Mr. and Mrs. Maale and Caicos Beach Club Resort," which explained that the Caicos beacg Club Charter was defunct and that the plaintiff had no interest in the project. The Court found that as early as 2000 the plaintiff had actual knowledge that the project was not proceeding. The reply states that the March 10, 2006, letter was "written confirmation of these facts."

E. The Omnibus Response of Prior Counsel (EAPD) and the Defendants' Omnibus Reply

1. EAPD's Omnibus Response

EAPD asserts that the purpose of the safe harbor provision of Rule 11, which requires a 21-day notice to opposing counsel of the proposed motion before filing it with the court, is to allow counsel an opportunity to respond to the challenges by revising or withdrawing certain material from the pleadings. Because EAPD withdrew from the representation prior to service of the Rule 11 motion, it had no opportunity to revise or withdraw the challenged material.

Additionally, the declaration of Ryon McCabe states that substantial investigation of the Texas proceedings took place after the withdrawal of EAPD, since McCabe had to respond to the motion to dismiss and the motions for summary judgment. McCabe also served the plaintiff's responses to Patricia Rahl's second request for admissions, which is an exhibit to the Rule 11 motion. Also during the time frame of the safe harbor period, the court granted in part and denied in part the motion to dismiss the Third Amended Complaint drafted by EAPD and granted leave for filing a new amended complaint. The Fourth Amended Complaint corrected the misstatements and presented new evidence revealed during later discovery. None of this was reflected in the Rule 11 motion filed with the Court.

EAPD adopts the arguments presented by McCabe's response. It points out that the Court declined to rule on the issue of the statute of limitations because factual issues still remained at issue. The ruling on the motion for summary judgment demonstrates that there was a reasonable basis for believing that the plaintiff's claims were not time-barred. The defendants had not presented any undisputed facts showing that the claims were time-barred. However, the Court, sua sponte, relied on other facts, which the defendants had not presented as undisputed, to find that the RICO claims were time barred. EAPD also contends that had it still represented the plaintiff during the briefing of the motion for summary judgment, it could have presented other facts which would have demonstrated

that material facts remained at issue regarding the statute of limitations, such as equitable tolling.

EAPD also contends that an attorney is entitled to rely on the statements of the client, even if those statements are disputed or ambiguous.  The Court, in considering sanctions, must consider whether a factual basis was demonstrated in pretrial proceedings or at trial.  Finally, EAPD adopts Mccabe's memorandum regarding res judicata.

2. The Defendant's Omnibus Reply

While EAPD relies on the corrections in the Fourth Amended Complaint, McCabe did not fully remove the unsupported allegations. Moreover, EAPD did not have a reasonable basis to rely on the plaintiff's representations that the claims were not time-barred. Even after documents refuting these representations were produced during discovery, or filed with the Court, EAPD continued to use the plaintiff's representations in drafting the successive complaints and in response to the motions to dismiss.  Indeed, EAPD correctly argued that the Court could not consider anything but the allegations of the complaint on the issue of the statute of limitations.  But now counsel characterizes the orders on the motions to dismiss as a "finding" that material facts remained at issue.  When the Court addressed the issue of limitations in the order of summary judgment, it did not sua sponte inject facts which the defendants had not offered as undisputed.  One of the facts was

27

in the statement of undisputed facts, and the others were direct quotes from the plaintiff's testimony.

EAPD knew, from discovery taken while it represented the plaintiff, that the complaint relied on references to incorrect bank checks, but EAPD never changed the references to them during the drafting of the subsequent complaints and attached checks clearly marked for other purposes to the Third Amended Complaint.  Only in the Fourth Amended Complaint were the plaintiff's misrepresentations, perpetuated by EAPD, corrected.  None of the corrections were based on investigations of the Texas proceedings.

Moreover, while EAPD relied on the plaintiff's assertions that the bank records were lost, after pre-filing service of the Rule 11 motion, the plaintiff produced to the defendants, then filed with his response to the motion for summary judgment, the Quick Report records of his checking account showing the banking transactions for the relevant period.  The court's order on summary judgment noted that while the plaintiff said the bank records were lost, the plaintiff had had the Quick Report records in his possession.  There was no explanation for producing these records weeks after the end of discovery, after the motion for summary judgment was filed.

### III. RECOMMENDATIONS OF LAW

Fed.R.Civ.P. 11 provides

**(a)    Signature**. Every pleading, written motion, and other paper must be signed by at least one attorney of

record in the attorney's name - or by a party
personally if the party is unrepresented. The paper
must state the signer's address, e0mail address, and
telephone number. Unless a rule or statute
specifically states otherwise, a pleading need not
be verified or accompanied by an affidavit. The
Court must strike an unsigned paper unless the
omission is promptly corrected after being called to
the attorney's or party's attention.

(b)   **Representations to the Court.** By presenting to the
court a pleading - whether by signing, filing,
submitting, or later advocating it - an attorney or
unrepresented party certifies that to the best of
the person's knowledge, information and belief,
formed after an inquiry reasonable under the
circumstances:
(1)  it is not being presented for any improper
purpose such as to harass, cause unnecessary
delay, or needlessly increase the cost of
litigation;
(2)  the claims, defenses, and other legal
contentions are warranted by existing law or by
a nonfrivolous argument for extending,
modifying or reversing existing law or for
establishing new law;
(3)  the factual contentions have evidentiary
support, or if specifically so identified, will
likely have evidentiary support after
reasonable opportunity for investigation; and
(4)  the denials of factual contentions are
warranted on the evidence or, if specifically
so identified, are reasonably based on belief
or a lack of information.

(c)   **Sanctions.**
(1)  **In general.** If after notice and a reasonable
opportunity to respond, the court determines
that Rule 11(b) has been violated, the court
may impose an appropriate sanction on any
attorney, law firm, or party that violated the
rule or is responsible for the violation.
Absent exceptional circumstances, a law firm
must be held jointly responsible for a
violation committed by a partner, associate or
employee.

A court assessing a motion for Rule 11 sanctions must

29

perform a two-part test.  First it must determine whether the claims raised are objectively frivolous.  If it finds that they are, it then must determine whether the pleading's signer should have been aware of that fact.  <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1105 (11th Cir. 2001); <u>McGuire Oil Co. v. Mapco, Inc.</u>, 958 F.2d 1552, 1563 (11th Cir. 1992).  A claim is frivolous when the party should have been aware that the claim had no basis in law or fact if he or she had made a reasonable inquiry. <u>Worldwide Primates, Inc. v. McGreal</u>, 87 F.3d 1252, 1254 (11th Cir. 1996).  The standard is an objective one - whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. <u>Kaplan v. Daimler Chrysler, A.G.</u>, 331 F.3d 1251, 1255 (11th Cir. 2003).

> Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith or for an improper purpose.

<u>Baker v. Alderman</u>, 158 F.3d 516, 524 (11th Cir. 1998).  "[S]anctions are not warranted when the claimant's evidence is merely weak but appears sufficient afer a reasonable inquiry, to support a claim under existing law." <u>Id.</u>  "The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." <u>Id,</u>, (internal citations omitted).  "The grant of summary judgment, in and of itself, does not mean that the action was frivolous or warrant the imposition of sanctions." <u>Id.</u>

In light of the number of persons and entities upon which the defendants seek to impose sanctions, and the number of bases on which the sanctions are sought, the Court will consider separately the three responses to the motions for sanctions. Because the case began with the plaintiff's allegations, the Court will consider these first. The Court will then consider the response of the plaintiff's original attorneys from EAPD, who drafted the original complaint, the Amended Complaint, the Second Amended Complaint and the Third Amended Complaint. Finally, the Court will consider McCabe's response.

## A.   Gerhard Maale, III

The plaintiffs seek sanctions against the plaintiff pursuant to Rule 11(b)(3). "Typically sanctions are levied against a client when he misrepresents facts in the pleadings." Byrne, 261 F.3d at 1118. Sanctions against the client also are warranted when the client is the mastermind behind the frivolous case. Id., citing, Pelletier v. Zweifel, 921 F.2d 1465, 1521-22 (11th Cir. 1991); See also, 1993 Advisory Committee Notes for Rule 11 "The sanction should be imposed on the persons - whether attorneys, law firms or parties - who have violated the rule or who may be determined to be responsible for the violations."

The plaintiff's response to the motions for sanctions asserts that sanctions cannot be levied against the client, and that the client cannot be held responsible for legally frivolous

arguments.   The plaintiff does not discuss the Third Amended Complaint or the factual errors in the first four complaints, other than to assert that they were corrected in the Fourth Amended Complaint.  He adopts the arguments of his current counsel regarding the legal sufficiency of the Fourth Amended Complaint.

He provides his declaration which states, again, that he did not know until June 2007, when Patricia Rahl did not respond to his request for a refund, that he had been defrauded in his investment in the Project.  He also avers that it was not until Patricia Rahl's deposition in January 2010, that he discovered that Caicos Beach Club Charter, Ltd., had become defunct years earlier. He concedes that he received partial credit in the divorce judgment for the house in the Turks and Caicos, and does not seek damages for the house in the Fourth Amended Complaint.

The Second, Third and Fourth Amended Complaints allege that in 2000 the plaintiff knew the Project was in financial trouble. (DE 246 ¶ 51; DE 359 ¶ 49; DE 501 ¶ 42) The defendants point out that the plaintiff testified that Kirchgessner's father told him in 2001 "that they were going belly up on the project." (DE 432, App. A., p. 139) Moreover, in the divorce case, the plaintiff listed as an exhibit a March 10, 2006, letter from Kevin Coupland to the Maales regarding the Caicos Beach Club Charter, Ltd., which informed them that the business had failed and that the plaintiff had no interest in the Caicos Beach Club Resort & Marina.

Contrary to the plaintiff's declaration that he did not know until January 2010 that the Caicos Beach Club Charter, Ltd., had been stricken from the corporate records of the Turks and Caicos and was a defunct entity, the defendants point out that this information was filed with the Court on March 11, 2009, in Patricia Rahl's declaration in support of the motion to quash service of process.

The Court must determine whether the plaintiff made factual misrepresentations which resulted in the claims filed with the Court. <u>Byrne</u>.  The Court finds that the plaintiff's repeated declarations and testimony stating that he did not know until June 2007 that he had lost his investment in the Project, and that he did not know until January 2010, that the Caicos Beach Club Charter, Ltd., had been stricken, demonstrate that the plaintiff intentionally and repeatedly tried to mislead his attorneys and the Court regarding the facts of the case.  When the Project unit did not receive a Certificate of Occupancy in the years after December 31, 1995, he made no effort to inquire into his investment. In the Order granting partial summary judgment the Court found that the defendant "made no efforts, not even efforts that would meet a lower duty of inquiry, in regard to his investments in the Project and the Turks and Caicos house until long after the statute of limitations had passed." (DE 528 p. 17)  Moreover, the defendant was aware, prior to January 2010, of concrete evidence of the defunct status

33

of the Caicos Beach Club Charter, Ltd., such as the March 10, 2006, letter he listed as an exhibit in his Texas divorce case, and Patricia Rahl's March 11, 2009, declaration filed with the Court.

By December 2001, he was aware that he received no money from the proceeds of the sale of the house in the Bahamas. (Id., p. 161) The plaintiff sought $900,000 for the house from Kirchgessner in the first four complaints.  Only in the Fourth Amended Complaint did he drop this claim against Kirchgessner. The plaintiff's latest declaration admits that since he received partial credit in the divorce for the house in the Turks and Caicos, the Fourth Amended Complaint was not seeking damages for the house.  However, the Fourth Amended Complaint seeks $900,000 damages for the house from the Rahls, less an allowance for the amount credited by the Texas court.

The Court finds that the plaintiff intentionally misrepresented facts which formed the basis of allegations in the first four versions of the complaint.  He proffered checks as investments in the Project which clearly identified different purposes on their faces, although he eventually admitted they had nothing to do with the Project.  He asserted that he was unable to support his claims with banking records.  But after the Rule 11 motions were served, he produced banking Quick Reports from the bank from which he previously testified he made the Project investments. The Quick Reports do not support hthe plaintiff's assertion of a

34

$250,000 investment in November 1992. To explain this to his newly-retained counsel, he contradicted his testimony and said the investments had been made from other accounts.

Clearly the plaintiff's misrepresentations, repeated in the face of concrete evidence to the contrary, caused this case to be filed, and to be amended several times with little or no consideration for the mounting evidence of the falsity of those misrepresentations. Indeed, his declaration states that he "intend[s] to continue pursuing that money." Rule 11 sanctions against the plaintiff are warranted.

B.   EAPD

The motions for sanctions against EAPD raise three issues: that EAPD failed to make a sufficient investigation, prior to filing the complaint, regarding (1) whether the claims were barred by the statute of limitations, (2) whether the allegations were supported by facts and (3) whether the claims against Kirchgessner were barred by the doctrines of res judicata and collateral estoppel. Moreover, when the plaintiff admitted during discovery that some of his original allegations were not true, EAPD did not amend its complaints to comply with known facts.

EAPD argues that since it had withdrawn from the case prior to the filing of the Rule 11 motion, it could not take corrective action during the safe harbor period. In Bakker v. Grutman, 942 F.2d 236, 238-39 (4th Cir. 1991), the court denied the Rule 11 motion for sanctions filed after the attorney had withdrawn

from the case.  The defendants note that <u>Bakker</u> is not instructive since the ruling was based on the fact that plaintiff's counsel filed the complaint in state court, withdrew immediately after the case was removed to federal court, and did not participate in the litigation in federal court.  The Rule 11 motion was denied since Rule 11 sanctions cannot be imposed for actions taken in state court.  The Court does not find <u>Bakker</u> applicable to the instant case.

The defendants cite <u>Turner v. Sungard Bus. Sys., Inc.</u>, 91 F.3d 1418, 1420 (11th Cir 1996) in which the court declined to impose sanctions on the original attorney, who withdrew when he learned that the plaintiff's claims were meritless, and the plaintiff stated that he would pursue the case with other counsel. The defendants point out that in the instant case EAPD continued to pursue the case even when discovery showed some of the allegations to be incorrect.

The defendants also cite <u>Bynum v. Michigan State Univ.</u>, 117 F.R.D. 94 (W.D.Mich. 1987), in which the Court imposed sanctions on the plaintiff's first attorney, whose complaint showed "a complete failure to made adequate inquiry into the law before filing the suit." <u>Id.</u> at 98-99.  The court declined to sanction the plaintiff's third attorney, who pursued the claim until evidence was gathered which showed that certain allegations in the complaint were false, and then counseled the plaintiff not to oppose the motions to dismiss or for summary judgment. <u>Id.</u> at 97.  Clearly the Court

must consider what is reasonable at the time and under the circumstances that existed.

1. Statute of Limitations

In evaluating the Rule 11 motion against EAPD the Court must employ the two-step procedure: (1) whether the claims were objectively frivolous and (2) whether the pleader should have been aware of the fact. Byrne, 261 F.3d at 1105.   EAPD asserts that the plaintiff consistently stated that he did not discover his actionable claim until 2007.  EAPD stated that it made a reasonable investigation into the plaintiff's contentions and the existing law and concluded that the claims were not time-barred. Indeed, the Court found that EAPD's Third Amended Complaint alleged sufficient facts invoking equitable tolling which, if taken as true, defeated dismissal on the basis of the defense of the statute of limitations. Rule 11 does not require the attorney's view of the law to be correct; instead a reasonable inquiry is "that amount of examination into the facts and legal research which is reasonable under the circumstances of the case." Robinson v. Nat'l Cash Register, 808 F.2d 1119, 1127 (5th Cir. 1987).

After the Third Amended Complaint was filed, EAPD withdrew from the litigation.  The Court considered the issue of the statute of limitations only with regard to the counts alleging unjust enrichment, breach of fiduciary duty and negligence.  The plaintiff argued that various legal doctrines would toll the statute of limitations.   The Third Amended Complaint alleged that the

plaintiff discovered his causes of action in 2007, and that the defendants engaged in actions from 1994 through 2005 which misrepresented the progress of the Project. Because the Third Amended Complaint's allegations were sufficient to invoke potential equitable considerations with regard to the state law claims, the Court declined to dismiss those claims based on the statute of limitations. EAPD contends that the Court's refusal to dismiss the Third Amended Complaint based on the statute of limitations affirms that EAPD had a reasonable basis to believe the claims were not time-barred. [6]

EAPD argues that the Court, in granting partial summary judgment, resorted to relying on facts which were not represented by the defendants as undisputed, such as finding that the plaintiff knew since 2001 that he hadn't received any documentation of the distribution of the proceeds of the sale of the Bahamas house, in spite of asking for such documentation. Since even the defendants did not say this was an undisputed fact, there was a reasonable basis for EAPD to assert that the claims were not time-barred. McCabe's response to the motions for summary judgment presented facts, rejected by the Court, that the defendants had provided

---

[6] EAPD argues, without reference to legal citation, that the continued misinformation by the defendants as late as January 2010 reasonably supports an equitable tolling of the statute of limitations, and refers the Court to McCabe's response for the legal analysis of various means of avoiding the defenses of the statute of limitations and the statute of repose. These will be discussed in relation to McCabe's response to the motions for sanctions.

continuous misrepresentations about the house being built for him on South Caicos Island.  Not until he demanded documentation in 2007 did he suspect the fraud.  And he did not learn until January 2010 that the Caicos Beach Club Charter, Ltd., became defunct several years earlier.  All of these facts, attested to by the plaintiff even after McCabe entered the case provided a reasonable basis for EAPD to find that the claims were not time-barred.  Lawyers are entitled to rely upon the statements of the client, even if the statements are disputed or ambiguous. Edmonds v. Gilmore, 988 F.Supp. 948, 957 (E.D. Va. 1997).  The Edmonds court found that it should consider whether "an objectively reasonable evidentiary basis for the claim was demonstrated pretrial or at the trial."  If there is no such basis, then the court must consider whether counsel made a reasonable pre-filing inquiry into the basis for the claim. Id. "[C]ourts should avoid hindsight and resolve all doubts in favor of the signor." Calloway v. Marvel Entm't Group, 854 F.2d 1452, 1469-70 (2nd Cir. 1988), rev'd on other grounds, 493 U.S. 120 (1989).

The defendants contend that evidence existed in the divorce case, in which EAPD served as a Florida counsel, showing that as early as 2006 the plaintiff possessed a letter from an attorney in the Turks & Caicos stating that the company was no longer in existence, and that the plaintiff had no interest in the membership units in the Turks & Caicos.  If EAPD had investigated the divorce case, as any reasonable attorney would have done, they

would have discovered that all of the plaintiff's claims had been dealt with in the divorce case.  The order on the motion to dismiss the Third Amended Complaint was based on the strength of the allegations, not on consideration of any evidence supporting those allegations. The order on summary judgment was not based on facts which were not presented to the Court as undisputed; it was based on one undisputed fact and two statements from the plaintiff's sworn testimony, which were identified as such.

The defendants point out that the <u>Edmonds</u> case involved a pro se plaintiff and the court did not make any finding that an attorney is entitled to rely on the statements of the client even if they are disputed or ambiguous.[7]  In the Eleventh Circuit, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit [and] . . . cannot simply rely on the conclusory representations of the client. . . .." <u>Worldwide Primates</u>, 87 F.3d at 1255.

When EAPD filed the Third Amended Complaint alleging that Patricia Rahl did not inform the plaintiff of the demise of the Caicos Beach Club Charter, Ltd., until January 2010 (DE 359 ¶ 70), Patricia Rahl had previously filed her March 11, 2009, declaration that Caicos Beach Club Charter, Ltd., had been struck from the corporate records of the Turks & Caicos and was a dissolved corporation. (DE 109-1).  Thus it was not reasonable for EAPD to

---

[7] Indeed while EAPD cites pages 957-58 for this argument, the case ends on page 957.

ignore the declaration attached to a motion to which they had filed a response and instead to continue to rely on the plaintiff's statement that he first learned of this fact in January 2010.

The Court finds that EAPD was aware of the Texas divorce case, and failed to investigate whether filings and other information from that case would confirm or conflict with the plaintiff's assertions of fact. Such an investigation would have revealed that in 2006 the plaintiff offered as an exhibit a letter showing that the corporation in which he had invested was defunct and he had no interest in the Project. Long after the Court accepted Patricia Rahl's March 11, 2009, declaration that the Caicos Beach Club Charter, Ltd., had been struck from the corporate records of the Turks and Caicos, EAPD continued to allege that this information was first brought to the plaintiff's attention in January 2010.

EAPD also continued to allege, as a basis for avoiding the statute of limitations, that the defendants repeatedly misrepresented the progress of the construction of the Project, while also alleging that the plaintiff repeatedly visited the Project, was given tours of the site and noted the slow progress of the construction.

Rule 11 sanctions are warranted against EAPD for basing its ability to use equitable arguments to avoid the statute of limitations by relying on allegations which EAPD knew to be baseless when the complaint was filed, such as the status of the construction, or learned to be baseless during discovery in this

case, such as the status of Caicos Beach Charter Club, Ltd.

2. Lack of Evidence Supporting the Allegations

EAPD does not discuss any of the eight misrepresentations presented in the Rule 11 motion regarding the identity of the individual check or wire transfers alleged to have been invested in the project and the misrepresentations about the status of the construction. EAPD adopts the analysis of the McCabe response to the Rule 11 motions. However, the McCabe response limits itself to the fifth version of the complaint: The Fourth Amended Complaint. McCabe concludes that when all of the allegations which had no factual basis were removed, and further discovery was conducted into the Texas divorce case, the Fourth Amended Complaint had a reasonable chance of success. Accordingly, McCabe's response does not shed light on whether Rule 11 sanctions against EAPD are warranted for making allegations not supported by the evidence available to EAPD.

The defendants point out EAPD clearly was responsible for attaching checks to the Third Amended Complaint as evidence of the plaintiff's investment in the Project, but one of the checks states on its face that it was for a different purpose. Indeed, the plaintiff testified on November 24, 2009, that the check marked "Loan to Maale Group for Vineyard Property" had nothing to do with the Project. Nor is there any explanation about why two of the checks attached to the Third Amended Complaint, alleged to be installment payments on the ten units, were tendered months and even

years after the deadline for those payments, and in amounts not coinciding with the $100,000 installments.

The Court finds that in general, EAPD accepted the plaintiff's assertion that many of the older bank records were missing. The Court finds that the irregularities of the checks offered by the plaintiff reasonably should have put EAPD on notice that they could not rely on the plaintiff's statements regarding payments to the Project. The plaintiff testified in November 2009, that the "vineyard" check reference was not relevant to the case. Yet this check was appended to the April 21, 2010, Third Amended Complaint. The plaintiff, without explanation, eventually produced his Quick Reports long after EAPD had withdrawn from the case. It appears that EAPD was not aware of their existence. However, the Quick Reports do not show a wire transfer of $250,000 to the Project in November 1992, contrary to the plaintiff's previous assertions. Clearly EAPD disregarded known facts while continuing to file amended complaints based on incorrect allegations. Rule 11 sanctions are warranted, since these unfounded allegations extended the litigation needlessly.

## 3. Res Judicata and Collateral Estoppel

EAPD, which was served with the Kirchgessner's motion for sanctions nearly three weeks after it was served on the plaintiff and McCabe, does not address the issues of res judicata and collateral estoppel except to note that the issue caused McCabe to engage in discovery about the Texas divorce case, which EAPD did not

43

do. Instead EAPD adopts McCabe's previously-filed response regarding res judicata, discussed below.

The Court finds that EAPD attorney Gary Woodfield knew on June 5, 2006, that the Texas divorce court was adjudicating the division of community property, which included the house in the Turks and Caicos.  On that date he filed a complaint in Circuit Court for the 15th Judicial Circuit, in and for Palm Beach County, for Enforcement of Subpoena Duces Tecum to compel the Rahls to produce documents related to the ownership of the house, which had been requested as discovery for the Texas divorce case. (DE 171-1, pp. 8-11).  The McCabe response demonstrates that investigation into the Texas proceedings was warranted in evaluating which of the plaintiff's allegations were supported by evidence. Tellingly, EAPD did not pursue such discovery in the years of litigation prior to withdrawing from representation.

The Court finds that EAPD failed to make a reasonable investigation of the Texas divorce proceedings sufficient to evaluate the potential res judicata effect on the complaints filed in this case.  Rule 11 sanctions are warranted.

C.   McCabe and Firm

The motions for sanctions are directed at the Third Amended Complaint, drafted and filed by EAPD.  McCabe filed the response to the motion to dismiss the Third Amended Complaint, the response to the defendants' motions for summary judgment and the response to the motions for sanctions.  The response to the motions

44

for sanctions asserts that after the Order dismissing in part the Third Amended Complaint, McCabe reviewed the evidence supporting each allegation and removed those allegations lacking evidentiary support before filing the Fourth Amended Complaint.  Counsel argues that the defenses raised by the Rahl defendants and Kirchgessner against the prior complaints were avoidable against the Fourth Amended Complaint using reasonable, non-frivolous arguments such as the fiduciary relationship between the parties, active concealment by the defendants of the relevant facts, equitable tolling, the continuing tort doctrine, the statute of repose, res judicata and collateral estoppel.  McCabe also argues that the motions were untimely since they were filed after years of litigation, that there is no evidence that the complaints were filed for an improper purpose, and that the motions were intended to gain a litigation advantage over plaintiff's new counsel.

       McCabe asserts that before agreeing to represent the plaintiff, he repeatedly discussed the case with EAPD, with several McCabe attorneys and with the plaintiff.  Given the fact that discovery was over, motions to dismiss the Third Amended Complaint were being filed and mediation was a month away, this level of inquiry was reasonable in the time frame available.  Once the Rule 11 motions were served, McCabe consulted with D. Culver "Skip" Smith, a former Chairman of he Florida Bar's Professional Ethics Committee based on his advice the McCabe lawyers reviewed the bases for each of the factual allegations in the complaint.

The defendants contend that the motions were timely; that McCabe failed to make a reasonable investigation of the facts related to the plaintiff's alleged payments into the Project; that McCabe failed to make a sufficient investigation into the Texas divorce case and its res judicata effect; that McCabe did not correct all of the incorrect allegations in the previous complaint and other allegations not supported by reasonable evidence, and that there was no reasonable basis to avoid the defenses of the statute of limitations and the statute of repose.

1.      Timeliness

McCabe asserts that since the Rule 11 motions are directed at the litigation performed by EAPD, they could have been filed long before McCabe appeared in the case.  McCabe contends that the true purpose of the motions was to attempt to intimidate McCabe at a time when the litigation was intense.  Nothing in the motion was directed at any document signed by McCabe.

The defendants point out that if they had filed the Rule 11 motion early in the case, the plaintiff would have argued that discovery would support the factual allegations.  As the 1993 Advisory Committee Note for Rule 11 states, under certain circumstances the Rule 11 motion "Should not be served until the other party has had a reasonable time for discovery."

The Court finds that given the protracted discovery disputes in this case, it was prudent to wait until discovery was

complete before serving a Rule 11 motion.  The Court cannot infer that the timing of the motion was an attempt to intimidate McCabe, or for any other improper purpose.

2.       Investigation of the Money Allegedly Invested in the Project

McCabe contends that in the limited time available after EAPD asked him to take over the case, he made a reasonable investigation into the factual and legal bases for the claims. Benavides v. Miami Atlanta Airfreight, Inc., 612 F.supp.2d 1236, 1239 (S.D.Fla. 2008)("The reasonableness of the pre-filing inquiry depends on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts, and whether the paper was based on a plausible view of the law."  After the motion was served, he consulted with an expert in legal ethics who advised McCabe and the plaintiff to review all of the factual allegations and deleted those without underlying support.[8]

_____

[8]  McCabe offers the declaration of his consultant D. Culver "Skip" Smith III (DE 548-6) and two other attorneys, Brian F. Spector (DE 548-7) and Alan G. Greer (DE 548-8) who reviewed the Third Amended Complaint, the Order on the motion to Dismiss the third Amended Complaint, the Rule 11 letters, the Fourth Amended Complaint, the motions for summary judgment and the replies, the Order on Summary judgment, the Rule 11 motions and McCabe's declaration.  Mr. Greer also reviewed selected documents from the Texas divorce case. The two attorneys opined that given the length of the litigation before McCabe's appearance and the time remaining in the scheduled deadlines for the case, McCabe's investigation was clearly reasonable under the circumstances. Mr. Smith advised McCabe that in light of the Rule 11 letter,

McCabe asserts that although the plaintiff lacked documentation regarding his investments, he testified under oath, months before McCabe entered the case, that he had invested $1.9 million in club memberships and the house in the Turks and Caicos. McCabe asserts that there is no duty to investigate the client. U.S. v. Del Campo-Cotrina, 733 F.Supp. 95, 99, n.9 (S.D.Fla. 1990)(discussing perjury). There is no duty to cross examine him about his previous sworn testimony; an attorney has a right to rely on the client's testimony. Endicott v. Int'l Hospitality, Inc., 920 So.2d 915, 922 (Fla 3rd DCA 2005).

The defendants point out that counsel has a heightened duty to investigate allegations in a RICO case. Chapman & Cole v. Intel Container Int'l B.V., 865 F.2d 676, 685 (5th Cir. 1989). Indeed, counsel should make a reasonable inquiry into both the legal and factual bases of a claim prior to filing suit, rather than rely on the client's conclusory representations. Worldwide Primates, 87 F.3d 1252 (sanctioning counsel whose client presented letters, but not their attachments, and his explanation of the claim, which counsel improperly failed to investigate further). When the plaintiff finally produced his Quick Report banking records which did not support his previous testimony and discovery responses, then

---

McCabe's duty was to represent his client's best interests. Mr. Smith agreed that a review of the bases for the factual allegations was proper to comply with Rule 11, and favorably assessed the strength of McCabe's arguments in opposition to the motions for summary judgment.

in further contradiction of his prior testimony explained to McCabe that the investments were made from other bank accounts, McCabe should have engaged in heightened scrutiny of the factual bases for the plaintiff's allegations of his investments.

The Court finds that while McCabe may have pursued a reasonable amount of investigation into the plaintiff's claims immediately before entering the case, and may have undertaken a review of the factual allegations in response to the motion to dismiss the Third Amended Complaint, the plaintiff's delayed production of the Quick Reports and his contradictory explanation of the discrepancies which were revealed thereby demonstrate that McCabe thereafter failed to make a sufficient investigation into the facts underlying the alleged investments in the Project. However, during this time McCabe was engaged in mediation, discovery disputes, motions challenging personal jurisdiction over the newly-added defendants, preparing responses to the defendants' motions for summary judgment in addition to the Rule 11 motion. Accordingly, the Court is not prepared to find that Rule 11 sanctions are appropriate for the insufficient investigation, given the time available.

3.    Investigation into the Texas divorce case and res judicata

Kirchgessner's Rule 11 motion asserts that the plaintiff's allegations of fraud regarding the house and the ten units in the

Project, were raised in the Texas divorce case and mirror those in the instant complaints.   Those claims were adjudicated in the divorce eight months before the instant complaint was filed.

The elements of res judicata are "(1) a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits, and (4) the same cause of action must be involved in both cases."   Hart v. Yamaha-Parts Distributors, Inc., 787 F.2d 1468, 1470 (11th Cir. 1986).   In the instant case, the parties are identical: Gerhard Maale and Kim Kirchgessner.   The District Court for the 286th District of Dallas County Texas is a court of general jurisdiction.   Texas Constitution, Article V, section 8.   The Texas divorce action was concluded by a final judgment on the merits.   The same claim of fraud was involved in both actions.

The Eleventh Circuit recognizes the preclusive effect of a prior judgment of a state court.   "We give preclusive effect to the judgment of a state court provided that two conditions are met: (1) the courts of the state from which the judgment emerged would do so themselves; and (2) the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process." Shields v. Bellsouth Adver. & Publishing Co., Inc., 228 F.3d 1284, 1288 (11th Cir. 2000).   Moreover, Gary Woodfield represented the plaintiff in the Florida component of the Texas divorce case, and

50

thus was familiar with the Texas litigation, but failed to investigate the relevant facts prior to filing the complaint.

McCabe asserts that, applying Texas law to the Texas judgment, the doctrine of res judicata does not bar the federal fraud claims. Under Texas law, res judicata requires proof of (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them and (3) a second action based on the same claims as were raised or transactionally related claims that could have been raised in the first proceeding. Barr v. Resolution Trust Corp., 837 S.W. 2d 627, 628 (Tex 1992). McCabe asserts that the fraud claim in the instant complaint is not the same claim which was raised in the Texas divorce case, and that the fraud claim alleged here could not have been brought in the Texas case.

McCabe contends the Texas court adjudicated claims for real estate in the Turks and Caicos, not club memberships in Caicos Beach Club Charter, Ltd. The Texas court adjudicated the possession of the Turks and Caicos house, with an offset for the investment in that house which the plaintiff lost by the award of the property to Kirchgessner. As the Fourth Amended Complaint makes clear, the plaintiff is not seeking damages from Kirchgessner for the Turks and Caicos house. He is only alleging fraud related to the club memberships.

McCabe asserts that the claims against the memberships could not have been litigated in the Texas divorce.  The Texas final judgment was issued in February 2007, and the plaintiff did not discover the fraud regarding the club memberships until June 2007.  Even if the plaintiff had discovered the fraud related to the club memberships during the pendency of the Texas case, under Texas law he was not required to bring every possible claim in the first venue.  Only claims which are can be joined "in a convenient trial unit" are barred by res judicata.  <u>Barr</u>, 837 S.E.2d at 627. McCabe asserts that a different set of facts support the claim of fraud related to the ownership of the house that those which support a claim of fraud related to the club memberships.  The house was adjudicated as part of a proceeding to divide community property.  The club memberships involved a soured investment involving fraud by Kirchgessner and other defendants.

Kirchgessner's reply to McCabe regarding res judicata and collateral estoppel notes that after McCabe entered an appearance in this case, he attended the deposition of one of Kirchgessner's divorce attorneys, Teresa Clark, who testified that the plaintiff pleaded fraud in the divorce case related to a house and club memberships.[9] (DE 474-1, deposition pp. 20, 26, 28, 29, 47, 51 and 69).  The plaintiff filed an affidavit dated November 10, 2006, in

---

[9] Counsel testified "It was just whether it was actual units or it was a membership owner[,] was the issue." (DE 474-1, deposition p. 28)

the Texas case which discusses the joint ownership of the Turks and Caicos house and ten condominium units. (DE 433-1, p. 1)   The defendant asserts, without citation to legal authority, that under Texas law this affidavit is deemed to be a pleading.[10] The affidavit details the fraud perpetrated in these investments by Kirchgessner and subsequently by Rahl and Rahl, P.A.  The defendant notes that the Final Judgment dismissed the <u>claims</u> of fraud <u>as pled</u>, with prejudice.  The plaintiff cannot now try to separate the ten units from the divorce case by identifying them as "club memberships" for the first time in the Fourth Amended Complaint.

The defendants point out that while McCabe attended the deposition of Kirchgessner's divorce counsel, McCabe did not attempt to discuss the Texas proceedings with the plaintiff's divorce counsel.  McCabe's declaration states that he did not review the

---

[10]      The Court has reviewed the file, and can find no indication for what purpose the plaintiff's November 10, 2006, affidavit was submitted to the Texas court.  The defendant has provided no Texas statute, rule or case law which provides that any affidavit, by itself, is a pleading.  Some pleadings are required to be accompanied by an affidavit.  See <u>In the Interest of E.R.L.C.</u>, 2008 WL 274068 *2 (Tex. App. - Dallas, February 21, 2008); <u>Landreth v. Las Brisas Council of Co-Owners, Inc.</u>, 285 S.W. 492, 499 (Tex.App. Corpus Christi 2009).  These cases clearly distinguish between the pleading and the required affidavit.  Moreover, affidavits attached to pleadings cannot be considered as evidence for summary judgment unless they are identified as such in the motion for summary judgment.  <u>Speck v. First Evangelical Lutheran Church of Houston</u>, 235 S.W.3d 811, 816 (Tex. App. Houston 2007).  Accordingly, the Court cannot find that the affidavit, by itself, provides a basis for finding that the ten units discussed in the affidavit are a pleading which was adjudicated in the Final Order dismissing the claims of fraud "as pled."

entire Texas case file when responding to the motions for summary judgment.   He reviewed the plaintiff's Fourth Amended Counter-Petition for Divorce and the court's Final Decree of Divorce and concluded that the club memberships were not part of the fraud allegations in the divorce case, regardless of what the plaintiff testified that he believed his pleading asserted.

The Court finds that the Memorandum Ruling of April 16, 2007, lists, under the category "Real Property," the Beach Caicos House and Caicos Beach Club Resort & Marina.  The testimony plaintiff's testimony, the testimony of Kirkgessner's divorce attorney, combined with the plaintiff's November 10, 2006, affidavit and the Real Property listed in the April 16, 2007, Memorandum Ruling show that the ten units were before the Texas court and that res judicata would bar the refiling of those claims against Kirchgessner.

4.      McCabe did not correct all of the incorrect allegations in the previous complaint and other allegations are not supported by reasonable evidence.

The defendants point out that while McCabe conceded that the check for the Hobiecat was not an investment in the Project, he failed to deduct the check from the damages total.  Moreover, there is still one reference to "misrepresentations to the progress of the construction" of the Project. (DE 501, ¶ 45) Finally, while the plaintiff's declaration states that in light of the partial credit

he received on the Turks and Caicos house, he was not seeking damages for the house in the Fourth Amended Complaint. McCabe agreed that the plaintiff should not seek double recovery for the house. However, that complaint still seeks damages for the house from the Rahls.

The Court finds that these are minor items not warranting Rule 11 sanctions.

5.      There was no basis to avoid the defenses of the statute of limitations.

McCabe contends that the statute of limitations was avoidable by reasonable, non-frivolous arguments asserting the delayed discovery rule, the doctrine of equitable tolling, the continuing tort doctrine and the statute of repose.  The defendants assert that these legal positions are not supported by the evidence and in some cases require the plaintiff to assert contradictory positions.

The delayed discovery rule codified in Fla. Stat. § 95.031 provides that the cause of action does not accrue until the plaintiff either knows or reasonably should know of the conduct giving rise to the action. McCabe asserts that this rule applies to the RICO count, the common law fraud count and the breach of fiduciary duty count (malpractice claim). The defendants point out that under Florida law, the rule does not apply to four counts of the Fourth Amended Complaint: Counts II (FDUTPA), IV (breach of

fiduciary duty), V (fraud) and VII (civil conspiracy).  <u>Davis v.</u>
<u>Monahan</u>, 832 So.2d 708 (Fla. 2002)(fraud, professional malpractice);
<u>Yusuf Mohamad Excavation, Inc. v. Ringhaver Equipment Co.</u>, 793 So.2d
1127 (Fla 5th DCA 2001)(FDUTPA).  Accordingly, McCabe could not
reasonably assert this rule to overcome the statute of limitations
defense on those counts. Nor could McCabe reasonably argue that the
plaintiff was not aware until 2007 that his promised house was not
coming to fruition, and that the Project investments were not
proceeding as set forth in the Forward Purchase Contract.

McCabe also asserts the reasonable, non-frivolous
viability of the continuing tort doctrine, which delays the start
of the limitations period until the tortious conduct ceases.  For
example, the plaintiff asserts that the defendants never disclosed
to the plaintiff that the Caicos Beach Club Charter, Ltd., failed
in 1998 and defaulted on its lease. In July 2004, Patricia Rahl
failed to disclose the project's failure to Dr. Hodge.  When the
pattern of action requires an analysis of the entire history of the
business relationship, the continuing tort doctrine may apply. <u>Laney</u>
<u>v. American Equity Inv.Life ins. Co.</u>, 243 F.Supp.2d 1347, 1357
(M.D.Fla. 2003)(long-term churning of an investment account);
<u>compare</u>, <u>Aristide v. Jackson Memorial Hosp.</u>, 917 So.2d 253, 255
(Fla. 3rd DCA 2005)(no continuous relationship in a claim for
medical malpractice).

The defendants assert that the state law claims for FDUTPA, unjust enrichment,[11] breach of fiduciary duty and negligence do not allege actions on an ongoing basis. Rather the cause of action accrued when the plaintiff was deprived of his money. The Court notes that the defendants have cited no legal authority supporting their assertion that the doctrine does not apply since the tort[12] occurred in the single instance when the plaintiff was deprived of his money.

The Court finds that the continuing tort doctrine may require a factual determination regarding whether there was a continuing relationship between the parties and the continued misrepresentations. The FDUTPA count alleges "a series of deceptive acts." (DE 501, ¶ 77) The breach of fiduciary duty claim alleges misrepresentations and material omissions related to the investment in the vacation club memberships. (Id. ¶¶ 85-87)  The negligence claim asserts the defendants caused the plaintiff to invest monies in the project. (Id. ¶¶ 99-100) However, as the Court found in its order on summary judgment,  the plaintiff provided only conclusory evidence of concealment by the defendants, insufficient to overcome his own personal ongoing observation that the Project was not

---

[11] The Fourth Amended Complaint does not include a claim for unjust enrichment.

[12] The defendants also assert that there was no tort at all, since the plaintiff had breached his contract with the defendants, thus they had no continuing duty to him regarding any partial investment.

proceeding as set forth in the Forward Purchase Contract. Accordingly, McCabe's assertion of the effectiveness of the continuing tort doctrine was not reasonable in light of the facts available to McCabe.

In the doctrine of equitable tolling, the plaintiff is assumed to know he is injured, "but he cannot obtain the evidence necessary to decide whether the injury is due to wrongdoing and if so, wrongdoing by the defendant." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990), cert. denied, 501 U.S. 1261 (1991). The defendants argue that the plaintiff cannot assert that he was not aware of the fraud until June 2007, and yet assert equitable tolling owing to misrepresentations starting in 1996. The Court found that equitable tolling does not apply when the plaintiff has notice of the injury but fails to make even a low level reasonable inquiry into the facts of his investment. Hupp, 500 F.2d at 996. Accordingly, the effectiveness of the doctrine of equitable tolling could not be reasonably supported by the facts available to McCabe.

The statute of repose applies only to the common law fraud claim, and provides a twelve-year window in which the allegedly fraudulent acts occurred. McCabe contends that the majority of the alleged fraudulent conduct occurred within 12 years of EAPD's filing of the complaint. The defendants' reply argues that all of the alleged misrepresentations inducing the plaintiff to invest in the

Forward Purchase Agreement took place before the 12-year period, which ended February 8, 1996. Other than the October 21, 2001, check for the Hobiecat, the defendant's last investment payment was alleged to have been made on August 13, 1995. (DE 501, ¶ 35). The Court finds that McCabe's assertion of the statute of repose could not be reasonably supported by the facts avaialbe to him.

Accordingly, the Court finds that with the facts available to McCabe by the time the motion for summary judgment was filed, there was no reasonable argument which would avoid the statute of limitations defense, particularly for the RICO claim which provided federal jurisdiction for the case.

D.   Summary

1.   The Plaintiff

Rule 11 sanctions may be levied against a party who misrepresents facts in a pleading. Byrne, 261 F.3d at 1118. The plaintiff made many factual misrepresentations to his counsel EAPD and McCabe. First he repeatedly stated, filed declarations and testified that he first became aware in 2007 that his investments in the Project were in trouble, and realized that he had been the victim of fraud. However, he offered an exhibit to the Texas divorce court showing that he had received a March 10, 2006, letter from a lawyer in the Turks and Caicos stating that the Caicos Beach Club Charter, Ltd., was defunct and that he had no ownership interest in the Project being developed by the Caicos Beach Club Resort & Marina.

Second, the plaintiff maintains that he did not know until January 2010 that the Caicos Beach Club Charter, Ltd., was defunct. This is belied by the March 10, 2006, letter and by Patricia Rahl's declaration filed in this case on March 11, 2009.

The plaintiff asserted a claim against Kirchgessner for the $900,000 he claims he invested on the promise of receiving in return a Turks and Caicos house.  It was not until the Fourth Amended Complaint that he admitted that he had been given partial credit for the house in the Texas divorce.

The plaintiff stated that he had wired $250,000.00 as an investment in the Project in November 1992, and testified that the banking records for that account were missing.  After service of the Rule 11 motion, he produced a Quick Report of the transactions in that account, which did not show any such wire transfer.  The plaintiff then explained to his newly-retained counsel that the transfer was actually from a different account.

The Court finds that these intentional misrepresentations caused this case to be filed in spite of problems with the statute of limitations which would have been apparent absent the plaintiff's assertions. Moreover, the plaintiff continued to make the same misrepresentations even when evidence to the contrary was presented. He claimed that he had no records to confirm the amounts of his investments, but proffered checks which had nothing to do with the investments.  The Quick Reports he belatedly produced do not support

his allegations, requiring him to contradict his own testimony.  The Court finds that the plaintiff was the driving force behind this lawsuit, and he knowingly used numerous misrepresentations to keep the case in litigation for years.  Strong Rule 11 sanctions are warranted.

2    EAPD

Even though EAPD did not have a safe harbor period to correct issues brought forth in the Rule 11 motion, EAPD can be subject to Rule 11 sanctions if they failed to make a sufficient investigatino prior to filing the lawsuit, or continued to pursue claims which were found to be meritless during the litigation. Bynum, 117 F.R.D. 94; Turner, 91 F.3d 1420.

The Court finds that EAPD failed to investigate the Texas divorce proceedings, prior to tiling the complaint, even though they participated in a discovery dispute regarding documents related to the house which was involved in those proceedings.  Thus EAPD had no reasonable basis to counter Kirchgessner's res judicata defense. EAPD continued to make allegations and file amended complaints based on the plaintiff's misrepresentations about the checks and wire transfers invested in the project; about the dates on which he discovered that the Caicos Beach Club Charter, Ltd., became defunct; about when he discovered that he had lost his investment in the Project and about being misled about the status of the construction of the Project.  By relying on the latter assertions, EAPD

61

determined that there were equitable arguments to overcome the
defense of the statute of limitations.   Since EAPD failed to
investigate representations made by the plaintiff, even after they
were shown to be false, and instead continued to litigate the case
based on those misrepresentations, Rule 11 sanctions are warranted
against EAPD.

3.   McCabe

McCabe entered the case late in the litigation, after the
plaintiff's lead counsel left EAPD, which could not continue the
representation without the lead counsel.   At that point, the Third
Amended Complaint had been filed, adding many new defendants, who
filed motions challenging service of process and personal
jurisdiction.   McCabe repeatedly discussed the litigation with EAPD,
the plaintiff and other McCabe attorneys to evaluate the case, which
had been in litigation for more than two years and had a voluminous
file.   The Court finds that given the time available, Mccabe
performed a reasonable investigation before entering an appearance.
<u>Benavides</u>, 612 F.Supp.2d at 1239.

After the Third Amended Complaint was dismissed and the
Rule 11 motion was served, McCabe hired a consultant who specialized
in legal ethics who advised him to review the allegations in the
Third Amended Complaint and delete any material which could not be
substantiated.   McCabe followed this advice.

McCabe investigated the Texas divorce proceedings to frame
the issues of res judicata and collateral estoppel, and concluded

that only matters related to the house were adjudicated in the divorce proceedings, not matters related to the club memberships. However, both the plaintiff and Kirchgessner's attorney testified that the plaintiff asked the Texas court to adjudicate the house and the ten units, and pleaded fraud associated with both the house and the ten units. Although formal discovery was over, McCabe did not discuss the matter with the plaintiff's divorce attorney to clarify for himself the terms of the plaintiff's Fourth Amended Counter-Petition for Divorce.

The Court finds that the evidence of the plaintiff's November 10, 2006, affidavit listing the joint ownership of the house and ten condominium units, the real property listed as Caicos house and Caicos Beach Club Resort & Marina in the April 16, 2007, Memorandum Ruling, the testimony of Kirchgessner's divorce attorney that the plaintiff had pleaded fraud for both the house and the ten units, and the plaintiff's own testimony that the units were before the Texas court result in the operation of res judicata regarding the claims against Kirchgessner. There was no substantial basis in law or fact supporting McCabe' argument that the ten units, which McCabe classified as "memberships," were not part of the final Divorce Decree dismissing with prejudice the claims of fraud as pled by the plaintiff against Kirchgessner.

Regarding the statute of limitations, McCabe continued to rely on the plaintiff's misrepresentations regarding the date he discovered that he had lost his investment made pursuant to the

Forward Purchase Contract and the date he discovered that Caicos Beach Club Charter, Ltd., was a defunct enterprise and that the plaintiff had no investment any units in the Project.  McCabe based his arguments for avoiding the statute of limitations defense on these misrepresentations, and ignored the problems presented by the plaintiff's own continued observations that the Project was not going forward in a timely manner and by the plaintiff's testimony that he was told by its developer that the Project was in dire need of funds in 2000.

The Court is aware of the short period of time available to McCabe to master a huge amount discovery material and litigation background, during a period when the motions to dismiss the Third Amended Complaint, the motions for summary judgment, the mediation the Rule 11 motions and filing of counterclaims to the Fourth Amended Complaint were pending.  Moreover, McCabe undertook to delete unsupported allegations by filing the Fourth Amended Complaint.  Rule 11 requires the court to determine whether counsel's actions were reasonable at the time, which includes consideration of the time constraints in an ongoing case which was nearing its conclusion. <u>Benavides</u>.

While the Court has found that McCabe's arguments related to the statute of limitations and res judicata were not reasonably legally justified under the facts available to him at the time, his reliance on the plaintiff's testimony in arguing those issues may

be partially justified in light of the fact that discovery was over and there was a huge volume of factual material to absorb in a short time. Moreover, McCabe's assertion of arguments related to the statute of limitations and res judicata did nothing to delay the resolution of the case or increase the litigation. The Court should not impose the strong penalty of Rule 11 sanctions on McCabe for his conduct in this case.

### IV. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED as follows:

1.   That Defendant Kim Kirchgessner's Motion for Sanctions Pursuant to Rule 11(c) Fed.R.Civ.P. (Docket Entry 514) be

(A) GRANTED with respect to sanctions sought against plaintiff Gerhard Emil Maale, III;

(B) GRANTED with respect to sanctions sought against Gary Woodfield and the firm Edwards Angell Palmer & Dodge, LLP; and

(C)  DENIED with respect to sanctions sought against Ryon McCabe and Mccabe Rabin, P.A.


2.   That Defendants', Patricia Rahl, Brian Rahl, Rahl & Rahl, P.A. Motion for Sanctions Pursuant to Rule 11(c) Fed.R.Civ.P. (Docket Entry 515) be

(A) GRANTED with respect to sanctions sought against plaintiff Gerhard Emil Maale, III;

(B) GRANTED with respect to sanctions sought against Gary Woodfield and the firm Edwards Angell Palmer & Dodge, LLP; and

(C) DENIED with respect to sanctions sought against Ryon McCabe and Mccabe Rabin, P.A.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1998), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 17th day of December, 2010.

Lurana S. Snow
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All Counsel of Record
Gary A. Woodfield