UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80131-Civ-DIMITROULEAS/SNOW

GERHARD EMIL MAALE, III,

       Plaintiff,

       v

KIM FRANCIS KIRCHGESSNER et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendants', Patricia Rahl, Brian Rahl, Rahl & Rahl, P.A. and Kim Francis Kirchgesser, Verified Motion for Attorney's Fees and Costs (Docket Entry 571), which was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation.

The plaintiff, through his current counsel McCabe Rabin, P.A., filed a response (DE 575), to which the defendants filed a reply (DE 580-1). The plaintiff's former counsel, Edwards Angell Palmer and Dodge ("EAPD"), its former associate Jaime Guttman and and its former partner Gary A. Woodfield, filed a response (DE 579) to which the defendants filed a reply (DE 582). Accordingly the motion is fully briefed and is ripe for consideration.

## I. PROCEDURAL HISTORY

The Complaint was filed on February 8, 2008, alleging civil RICO based on wire fraud and mail fraud; federal securities fraud; state securities fraud; violation of Florida's Deceptive and

Unfair Trade Practices Act (FDUTPA), breach of contract, unjust enrichment and other state law claims, arising out of the plaintiff's investment in a real estate project (Project) being developed by the defendants in Turks and Caicos, British West Indies.[1] (DE 1)  The Rahl defendants and Kirchgessner filed motions to dismiss the complaint, asserting that the statute of limitations barred the claims, that the state law claims were not pled with particularity, Count I failed to state a claim for civil RICO, and that the claims against Kirchgessner were barred by a lack of personal jurisdiction and by res judicata. (DE 15 and 16)   The court granted the motions in part, but noted that the complaint did not contain sufficient information to determine the issues of the statute of limitations and res judicata. (DE 35)

The plaintiff filed an Amended Complaint. (DE 36)  The Rahl defendants and Kirchgessner filed motions to dismiss the Amended Complaint. (DE 37 and 38) These motions to dismiss asserted that the claims were barred by the statute of limitations, Count I failed to state a claim for civil RICO,  and Counts I, II, IV and VI were not pled with sufficient particularity.  Kirchgessner also asserted lack of personal jurisdiction and the bar of res judicata.

---

[1] The plaintiff alleged that he was defrauded of $1 million invested in ten Forward Purchase Agreements which were executed prior to the construction of the Project, which guaranteed return of the investment if the units did not have a Certificate of Occupancy prior to December, 1995.  (¶¶ 23 and 60) The complaint also alleged that he sold his house in the Bahamas in 2001, and wired $900,000 to the Rahls' escrow account to purchase a house to be built in the Project. (¶ 24) The plaintiff alleged that during his 2007 divorce from defendant Kirchgessner, the Rahl defendants withheld documents which were unfavorable to Kirchgessner. (¶ 26)

The Court found that the RICO claim and the other counts were pled with sufficient particularity, but that the complaint did not contain sufficient information to determine the issues of the statute of limitations or res judicata. (DE 66) The defendants filed answers to the complaint and asserted counterclaims. (DE 68 and 69) Discovery ensued.

On February 9, 2010, the plaintiff filed a motion for leave to filed a Second Amended Complaint to add defendants and claims based on facts learned during discovery. (DE 246) The motion was granted. (DE 259) Immediately thereafter the plaintiff voluntarily dismissed two of the new defendants. (DE 261) The Rahl defendants and Kirchgessner filed a motion to dismiss the Second Amended Complaint, asserting that the allegations of fraud and civil RICO were not pled with sufficient particularity because they did not make specific allegations regarding the acts of the new defendants and how they related to the acts of the original defendants. (DE 281) The Court granted the motion to dismiss Counts I, II, V and VII without prejudice and gave leave to file a Third Amended Complaint. (DE 339)

The plaintiff filed a Third Amended Complaint. (DE 359) On the same day, the plaintiff sought leave for substitution of counsel. (DE 358) Ryan M. McCabe of McCabe Rabin entered an appearance on behalf of the plaintiff. (DE 376) Thereafter the Rahl defendants and Kirchgessner filed a motion to dismiss the Third Amended Complaint. (DE 401) The defendants then filed motions for summary judgment. (DE 436 and 437) The Court dismissed the claim for

unjust enrichment and gave leave to file another amended complaint, but found that, taking the allegations of the Third Amended Complaint as true, there was not enough information to determine whether the other claims were barred by the statute of limitations. (DE 497)

The plaintiff filed the Fourth Amended Complaint. (DE 501) Shortly thereafter the defendants filed motions for Rule 11 sanctions.  The next day the Court heard oral argument on the motions for summary judgment. (DE 519)  The defendants filed answers to the Fourth Amended Complaint. (DE 522 and 523)

The Court granted summary judgment to the defendants on the civil RICO claim, finding that it was barred by the four-year statute of limitations. (DE 528) The Court considered the plaintiff's alleged investments in the Project between 1993 and 1996, based on a Forward Purchase Contract which included a clause that his money would be returned with interest if the Project did not obtain a Certificate of Occupancy for the Unit on or before December 31, 1995. The Court found that when the Project had not received a Certificate of Occupancy by December 31, 1995, the plaintiff should have been curious about his investment.  As time passed without the issuance of the Certificate of Occupancy, the plaintiff had actual notice that he had been injured and should have moved to protect his interests.  The plaintiff made many visits to the Project which confirmed the status of the construction.  In 2000 the plaintiff knew that the Project was in serious financial trouble, but he did not investigate his investment even then.  The

4

court found that the plaintiff should have known by 1996, and no later than 2000, that the Project was not proceeding as allegedly promised, and should have filed his suit no later than 2004.

The Court also considered the allegation that in 2001 the plaintiff sold his house in the Bahamas with the proceeds divided between $900,000 for a home to be built at the Turks & Caicos and the balance deposited in the Rahl firm's escrow account. But the Rahls refused to give him an accounting for the use of the money. The Court found that there was no issue of material fact that the plaintiff knew by 2001, at the latest, that he had lost his money for the house. Accordingly, this claim should have been filed no later than December 2005.

The Court held that, in light of the plaintiff's actual knowledge, in 2000 and 2001, that both investments had failed, "there was no issue of material fact and no reasonable jury could differ that plaintiff was on sufficient notice to trigger the statute of limitations for his RICO claim by 2001 . . .." (DE 528, p. 15)

Next the court considered whether there were grounds for an extension of the limitations period owing to the fiduciary relationship between the plaintiff and the defendants; the defendants' alleged concealment of the true status of the Project; and doctrines such as equitable tolling, and delayed discovery. (DE 528, pp. 8-18) The Court found that even when dealing with fiduciaries, a plaintiff who by 2001 knew something was wrong with his investments, was required to exercise "reasonable care and

diligence in seeking to learn the facts that would disclose the fraud." Hupp v. Gray, 500 F.3d 993, 997 (7th Cir 1974).

The Court found that in spite of the plaintiff's knowledge that neither the Project nor the house were proceeding as promised, he made no effort to inquire about his investments until long after the statute of limitations had expired. Thus, the doctrine of equitable tolling was inapplicable.

The Court granted summary judgment to the defendants on the RICO claim. The Court declined to exercise supplemental jurisdiction over the state law claims  and dismissed those claims without prejudice. (DE 528) The Court entered final judgment for the defendants. (DE 529)

The instant motion seeks attorneys' fees based on four bases for recovery: (1) as the prevailing parties in a case which included a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. § 501.2105; (2) as the prevailing parties in a case arising from a Forward Purchase Agreement which is governed by English law including the English rule that the losing patty always pays the legal fees of the prevailing party; (3) entitlement to fees pursuant to 28 U.S.C. § 1927, and (4) entitlement to fees pursuant to the inherent power of the Court.[2] The defendants also seek costs, not available in their

---

[2]     The defendants initially sought to bifurcate the issue of fees into two parts: entitlement to fees and the amount of the award. (DE 555)  The plaintiff strongly objected (DE 565) and with the deadline for filing the motion for fees approaching, the defendants withdrew the motion to bifurcate five days before the motion for fees was due (DE 569).

bill of taxable costs filed pursuant to 28 U.S.C. § 1920, such as postage and delivery fees, Westlaw research, mediation and travel.

The plaintiff's response argues that the defendants are not entitled to an award of attorneys' fees pursuant to any of the four bases claimed by the defendants, and challenges the hourly rates sought, the time spent on various aspects of the case, and many of the additional costs sought. It also asserts that the defendants failed to comply with the pre-filing requirements of S.D.Fla.R. 7.3(b). EAPD's response contends that the defendants are not entitled to attorneys' fees from EAPD pursuant to any of the four bases claimed; that the defendants failed to comply with both S.D.Fla.R. 7.1(a)(3) and 7.3(b), and incorporates by reference the response filed by the plaintiff. EAPD does not discuss the hourly rates, the hours billed or the additional costs sought. The defendants' replies challenge the arguments raised by the plaintiff and by EAPD.

## II.  RECOMMENDATIONS OF LAW

### A. Entitlement Pursuant to FDUTPA

Fla.Stat. § 501.2105(1) provides "In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." The defendants assert that every version of the complaint filed in this case included a claim under the FDUTPA statute based on the same factual allegations as all of

the other counts of the complaint. The defendants are the prevailing parties based on the grant of summary judgment on the civil RICO claim. The defendants cite a number of cases in which the FDUTPA fee statute resulted in an award of fees even though the prevailing party did not necessarily prevail on the FDUTPA claim.

> The language of section 501.2105 takes a broad view of compensable attorney time on a case involving a claim of a deceptive or unfair trade practice. Section 501.2105(2) requires that the prevailing party's attorney submit an affidavit of "time spent on the case." Similarly, section 501.2105(3) allows a trial judge to award a "legal fee" for hours "actually spent on the case." This statutory language contemplates recovery of attorney's fees for hours devoted to the entire litigation . . . and does not require allocation of attorney time between the chapter 501 count and other alternative counts based on the same consumer transaction unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501. Heindel v. Southside Chrysler-Plymouth, Inc., 576 So.2d 266, 271 (Fla. 1st DCA 1985) This means that where Chapter 501 claims are based on the same transaction as alternative theories of recovery, "no allocation of the attorney's services need be made except to the extent that counsel admits that a portion of the services was totally unrelated to the 501 claim or it is shown that the services related to issues, such a punitive damages, which were clearly beyond the scope of a 501 proceeding." Id. at 272; see Smith v. Biglin, 534 So.2d 852, 854 (Fla. 1st DCA 1988).

Mandel v. Decorator's Mart of Deerfield Beach, 965 So.2d 311, 314 (Fla 4th DCA 2007)(finding that the claims of FDUTPA and breach of contract arose from the same common core of facts).[3]

---

[3] The Court notes that the plaintiff does not challenge the defendants' assertion that all of the claims arose from the same facts alleged in the FDUTPA claim.

8

> The law in Florida is clear on this
> issue. "The plaintiff, having invoked the
> [Florida Deceptive and Unfair Trace] Act, is
> liable for an attorney's fee because he did
> not prevail." <u>Rustic Village, Inc. v.
> Friedman</u>, 417 So.2d 305, 306. The prevailing
> party in a consumer protection suit is
> "entitled to attorney['s] fees without regard
> to the basis upon which the party prevails."
> <u>Leitman v.Boone</u>, 439 So.2d 318, 321-22 (Fla.
> 3d DCA 1983).

<u>Target Trailer, Inc. v. Feingold</u>, 632 So.2d 198, 199 (Fla. 3d DCA 1994).

Both parties cite <u>Victory Int'l (USA) LLC v. Perry Ellis Int'l Inc.</u>, 2009 WL 1956236 (S.D.Fla. 2009) in which Mr. Woodfield successfully sought attorney's fees under the FDUTPA statute in a case in which the court dismissed one count of the second amended complaint against two of the defendants with prejudice and the rest of the claims against the two defendants without prejudice. The third amended complaint filed thereafter renewed claims against other co-defendants, but did not plead any claims against the two defendants. At the close of the case against the rest of the defendants, the two defendants moved for entry of a judgment in their favor in order to seek an award of attorney's fees pursuant to FDUTPA. The court, finding that the dismissal constituted a final order in favor of the defendants, granted the motion and entered a final judgment. The defendants filed the motion for attorney's fees. The plaintiff objected to an award of fees because the two defendants had not prevailed on the merits of any claim. The Court found that the dismissal, followed by the plaintiff's decision not to re-plead the claim against the two, operated as a

9

decision on the merits sufficient to invoke FDUTPA's attorney's fee provision.

The instant defendants argue that the grant of summary judgment on the RICO claim, the dismissal of the  state law claims for lack of federal jurisdiction, and the final judgment for the defendants similarly warrant attorney's fees pursuant to the FDUTPA statute.

The plaintiff's response[4] asserts that the <u>Victory</u> court found that the dismissal without prejudice of the claims against the two defendants operated as a judgment on the merits because Fed.R.Civ.P. 41(b) provides that "[u]nless the dismissal order says otherwise, a dismissal under this subdivision (b) and **any dismissal not under this rule** - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - **operates as an adjudication on the merits.**" (<u>Id.</u> at *5) The plaintiff notes that <u>Victory</u> did not involve a dismissal on jurisdictional grounds.  The plaintiff argues that the language of Rule 41(b) dictates an opposite result in the instant case in which the FDUTPA claim was dismissed on jurisdictional grounds.

---

[4] EAPD's response to the motion for fees states that EAPD assumes that the FDUTPA claim for fees is not directed to asserting liability for attorney's fees against EAPD pursuant to the FDUTPA statute.  To the extent that the motion does attempt to establish such liability, EAPD adopts the plaintiff's response. (DE 579, p. 4 and n. 1)  Similarly, EAPD adopts the plaintiff's response regarding the defendants' entitlement to fees under a contract which specifies English law, discussed in section II.B of this report and recommendation.

The defendants' reply contends that regardless of the nature of the resolution of the state law claims, this case included a FDUTPA claim, and the Court entered a final judgment in favor of the defendants, making them the prevailing party. Moritz v. Hoyt Enterprises, 604 So.2d 807, 810 (Fla. 1992) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983)).

The Court finds that the decision in Victory supports application of the FDUTPA fee-shifting statute. The Victory court based its ruling on Rule 41(b), which provided that any dismissal, except one for lack of jurisdiction, improper venue or failure to join a party, operated as a adjudication on the merits. In the instant case, Rule 41(b) is not a factor. The RICO claim was not dismissed. The Court entered a judgment on favor of the defendants on the RICO claim. The case also included a FDUTPA claim based on the same allegations which supported the RICO claim. Although the FDUTPA claim was dismissed for lack of jurisdiction after the RICO claim was denied, the rationale behind the Victory decision does not preclude a finding that the defendants are entitled to statutory fees as the prevailing parties.

The plaintiff argues that the Eleventh Circuit has held that a dismissal without prejudice does not make the movant a "prevailing party" for the statute's fee-shifting provision. Laborers Local 938, Joint Health & Welfare Trust Fund v. B.R.Starnes Co. of Florida, 827 F.2d 1454 (11th Cir. 1987). In that case, the court sua sponte dismissed all of the pendent state claims without prejudice, and later dismissed with prejudice the

11

ERISA claims against another defendant, Trapanese Construction, Inc., finding that the defendant was not an "employer" under the ERISA statute. The court declined to award attorney's fees to Trapanese, since the "jurisdictional issues and questions of statutory construction presented by the Complaint and Motions to Dismiss were fairly debatable and not easily resolved by this Court. Moreover, in bringing this lawsuit Plaintiffs were not bound by an clear authority in this jurisdiction prohibiting such a suit. Under these circumstances, an award of attorney fees would be inappropriate." Id. at 1458.

Trapanese also sought attorneys' fees for the state law claims which were dismissed without prejudice, citing Fla.Stat. § 713.29 (mandating an award of fees to a prevailing party in an action to enforce a mechanic's lien) and Fla.Stat. § 57.105 (providing for attorney's fees to a prevailing party in a civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party. The Eleventh Circuit denied those claims. "Given that the federal court dismissed the case for lack of subject matter jurisdiction and the merits of the state claims have yet to be tried, it would be inappropriate to award fees under either of these Florida provisions at this time." Id. at 1458.

The Court finds that this case is not instructive to the issues at bar, since the case did not involve the FDUTPA fee-shifting statute, and the plaintiff does not argue that the statutes discussed are interpreted in the same manner as the FDUTPA

fee-shifting statute.  The plaintiff also cites a number of other cases which the Court will not consider since they do not interpret the application of the FDUTPA fee-shifting statute.

The defendants' reply notes that they received a judgment on a significant issue of the case and thus are the prevailing party. Moritz v. Hoyt Enters., 604 So.2d 807 (Fla. 1992)(breach of contract case with no FDUTPA claim)  The defendants concede that the statute requires that all appeals  must be exhausted before fees can be awarded under this statute.  However, in the interest of judicial economy, and to preserve their right to seek such fees, they have raised the issue of entitlement under the statute at this time.

The Court finds that under Florida law, when a party prevails, and receives a final judgment, on a claim arising from allegations of facts which also support a claim that has been raised under FDUTPA, the prevailing party is entitled to pursue attorney's fees under the fee-shifting FDUTPA statute. Mandel, 965 So.2d at 314; Target Trailer, 632 So.2d at 199.  Accordingly, the defendants are entitled to fees under Fla.Stat. § 501.2105(1).

However, the statute provides that a prevailing party entitled to  attorneys' fees "may" receive attorneys' fees and costs. Prior to an amendment of the statute in 1994, an award of fees was mandatory. The award of fees and costs now is discretionary. JES Properties, Inc. v. USA Equestrian, Inc., 432 f.Supp.2d 1283, 1291 n. 13 (M.D.Fla. 2006).  Indeed, the Victory court considered the factors set forth in Humane Society of Broward

13

County, Inc. v. Fla. Humane Society, 951 So.2d 966, 971 (Fla. 4th DCA 2007) for determining whether to award a discretionary fee. The Victory court found that the factors favored an award of fees to the dismissed defendants.  These factors include:

> (1) the scope and history of the litigation;
>
> (2) the ability of the opposing party to satisfy an award of fees;
>
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
>
> (4) the merits of the respective positions - including the degree of the opposing party's culpability or bad faith;
>
> (5) whether the claim brought was not in subjective bad faith, but frivolous, unreasonable, groundless;
>
> (6) whether the defense raised a defense mainly to frustrate or stall;
>
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA.

The parties did not specifically address these factors.[5] However, the instant motion discusses the facts underlying most of the factors and the undersigned previously evaluated these factors in the Report and Recommendation for the Rule 11 motion. With respect to the first factor, the Court finds that the plaintiff continued to litigate issues which had no factual support.  The plaintiff has the ability to satisfy an award of fees.  An award

_____

[5] But cf, North American Clearing Systems, Inc. v. Brokerage Computer Systems, Inc., 395 Fed.Appx. 563, 565 (11th Cir. 2010)(denying an award of FDUTPA fees because the prevailing party "made no reference to the factors Florida courts consider when determining the appropriateness of discretionary fees awards.").

of fees would have no deterrent effect on others.  The merits of
the respective positions favor an award of fees.  The fifth factor
requires a showing of  frivolous or groundless claims, rather than
a showing of subjective bad faith, which will be resolved in the
Rule 11 proceedings.  The sixth factor is not applicable.  The
seventh factor is neutral and does not favor either party.
Accordingly, the Court finds that the factors favor an award of
fees and costs under FDUTPA .  The Court should find that, if the
final judgment in favor of the defendants is not reversed,  the
defendants should be awarded fees and costs pursuant to Fla. Stat.
§ 501.2195(1), but that such fees and costs cannot be awarded until
after the exhaustion of all appeals.

B. English Law and the English Rule

        The defendants note that the Court found the Forward
Purchase Agreement to be central to the claims raised in the case.
Both the plaintiff and the defendants have filed unsigned copies of
this agreement and both contain the following provision. "11.  That
this FORWARD PURCHASE CONTRACT shall be interpreted under the laws
of the Turks and Caicos Islands.  That in the event of Litigation
under this FORWARD PURCHASE CONTRACT, jurisdiction shall lie solely
within the Turks and Caicos Islands." (DE 235-3, p. 6) The
defendants contend that under English law, attorney's fees are paid
to the prevailing party by the losing party.  European Bank Ltd. v.
Online Credit Clearing Corp., 969 So.2d 450, 451 (Fla. 4th DCA

2007); <u>Pierce v, J.W.Charles-Bush Securities, Inc.</u>, 603 So,2d 625, 629 n. 2 (Fla. 4th DCA 1992).[6]

The plaintiff's response asserts that since the defendants are not parties to the Forward Purchase Agreement, they cannot enforce its terms. However, the defendants' reply notes that Dr. Gerhard Maale and Dr. Kim Maale are listed as "the Buyer" in the Forward Purchase Contract. (DE 235-3, p. 5) Defendant Kim Francis Kirchgessner's name was Dr. Kim Maaale prior to her divorce from the plaintiff. Accordingly, the Court finds that Kirchgessner has the standing to enforce the terms of the agreement.

The plaintiff also asserts that the clause is limited to the interpretation of the terms of the contract and does not require the application of the substantive law of the Turks and Caicos. <u>Green Leaf Nursery v. E.I.Dupont de Nemours & Co.</u>, 341 F.3d 1291, 1300 (11th Cir. 2003)(the terms "this release shall be

_____

[6] The defendants provide the affidavit of Thomas Chalmers Misick, a practicing attorney-at-law in the Turks and Caicos Islands, stating that the Turks and Caicos Islands law, like other Commonwealth jurisdictions, gives the judge the power to order who will pay the attorney's fees. Under Turks and Caicos Islands Supreme Court Civil Rule 2000 s. 62, a successful party to litigation is entitled to seek an order that the unsuccessful party pay his or her costs. (DE 571-4, p. 1, ¶¶ 3 and 4) Recoverable costs are limited to hourly fees and charges of the attorney, disbursements, witness allowances, some professional fees for non-witnesses and lawyer's success fees under a valid conditional fee agreement. <u>Id.</u> ¶ 5.  Mr. Misick states that for litigation arising from the Forward Purchase Contract, the prevailing party would be entitled to an award of costs and attorney's fees pursuant to Turks and Caicos law. <u>Id.</u> ¶ 7.  The plaintiff's response does not dispute this statement describing the English rule used to determine the payment of attorney's fees and costs in the Turks and Caicos.

governed and construed in accordance with the laws of the State of Delaware" applied only to interpretation of the contract itself and did not "refer or relate to the tort claims or to any and all disputes arising out of the . . . relationship between the parties.") Only where there is broader language will foreign law also cover the non-contractual claims. <u>Cooper v. Meridian Yachts, Ltd.</u>, 575 F.3d 1151, 1162 (11th Cir. 2009)(finding that the agreement that Dutch law would cover "all disputes arising out of or in connection with" the agreement, required the application of Dutch law to the litigation).

The defendant's reply notes that the second sentence of paragraph 11 of the Forward Purchase Contract provides "That in the event of Litigation under this FORWARD PURCHASE CONTRACT, jurisdiction shall lie solely within the Turks and Caicos Islands." This is a forum selection clause which, when read in conjunction with the first sentence of paragraph 11 of the Forward Purchase Contract, results in designating the use of the substantive law of the Turks and Caicos. "While the contract here did not specifically provide that the substantive law of England should be applied, it is the general rule in English courts that the parties are assumed, absent contrary indication, to have designated the forum with the view that it should apply its own law." <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 13, n. 15, 92 S.Ct. 1907, 1915 n. 15 (1972)).

In <u>Lipcon v. Underwriters at Lloyds's, London</u>, 148 F.3d 1285, 1293 (11th cir. 1998), the Eleventh Circuit discusses <u>Scherk</u>

v. Alberto-Culver Co., 417 U.S. 506, 516, 94 S.Ct. 2499, 2455 (1974), which held that the choice of forum clause is "an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction"). The Lipcon court noted that the Scherk Court also observed "that a forum selection clause 'might also be viewed as implicitly selecting the law of that place to apply to the transaction.'" Lipcon, 148 F.3d at 1293. The Lipcon court found that the parties were bound to English law by the choice clauses in their contract, even though that choice effectively waived the domestic parties' right to pursue statutory claims pursuant to the Securities Act of 1933 and the Securities and Exchange Act if 1934. In the instant case, the Court finds that the two sentences of paragraph 11 of the Forward Purchase Contract effectively designate the use of the substantive law of the Turks and Caicos.

However, the plaintiff contends that the defendants have waived their right to apply English law in the instant case. Axa Equitable Life ins. Co. v. Infinity Financial Group, LLC, 608 F.Supp2d 1330, 1335 (S.D.Fla. 2009)(discussing a number of cases in which a party waived the choice-of-law provisions by failing to discuss or cite the law which was required by the by the choice-of-law provisions in the contract). The plaintiff also cites Mayakan v. Carnival Corp.,721 F.Supp.2d 1201, 1203 (M.D.Fla. 2010) in which, during the briefing of the choice of law issues, the parties agreed to use U.S. law in spite of contract provisions requiring the use of Panamanian law. The plaintiff asserts that in

18

two years of litigation, the defendants have never argued that the substantive rights should be controlled by English law, including their motion for summary judgment which is based entirely on American law.   American Home Assurance Co. v. Glenn Estess & Assoc., Inc., 763 F.2d 1237, 1238-39 (11th Cir. 1985)(rejecting a choice-of-law argument raised for the first time after entry of summary judgment).

The defendants note that in their answer to the initial complaint, they raised an affirmative defenses based on the law of the Turks and Caicos. (DE 69, ¶120, which states:

> As a further and separate Affirmative Defense, venue is improper in the Southern District of Florida as the alleged contract that is the basis of Plaintiff's claims contains a forum selection clause which provides that any action arising from the alleged contracts shall be subject to the laws of the Turks and Caicos Islands and that venue shall be proper there.[7]

The answers to the Fourth Amended Complaint are even more explicit:

> As a further and separate Affirmative Defense, this Defendant would state that plaintiff's claims are based on an express contract which contains a forum selection clause which provides that any disputes are to be litigated pursuant to the laws of the Turks and Caicos Islands and that venue for such litigation is proper only in the Turks and Caicos Islands.

(DE 522, ¶ 124 and 523, ¶ 121)

The Rahl defendants' motion for summary judgment specifically argued that the Turks and Caicos have exclusive

---

[7] The Court notes that this affirmative defense was asserted by the Rahl defendants. Kirchgessner's Answer contained slightly different choice-of-law language. (DE 68, ¶ 119)

19

jurisdiction of all the plaintiff's claims against the Rahl defendants, and therefor all of the claims should be dismissed as improperly brought in the Southern District of Florida. (DE 436, pp. 19-20)[8] The motion for summary judgment also refers to the case of <u>Walker v. Hallmark Bank & Trust, Ltd.</u>, Case No. 09-61978-Civ-Cohn, in which the court dismissed the case based on the exclusive forum selection clause which specified the laws of the Turks and Caicos Islands. (DE 41, p. 7). The plaintiff's response to the Rahl defendants' motion for summary judgment asserts that the Rahl defendants are not parties to the contract and thus cannot invoke the forum selection clause. (DE 484, pp. 18-20) The defendants' reply in support of summary judgment includes a three-page rebuttal of the plaintiff's response on forum selection. (DE 505, pp. 11-13).

The Court finds that the Forward Purchase Contract, which contains a forum selection clause giving sole jurisdiction of litigation arising from the contract to the Turks and Caicos Islands and the provision to interpret the contract under the laws of the Turks and Caicos Islands, establishes the choice of substantive law for claims arising from the contract. Clearly Kirchgessner can invoke this choice of law.

However, the Rahl defendants are not parties to the Forward Purchase Contract, nor have they argued that they are third

---

[8] Kirchgessner's motion for summary judgment incorporates these arguments by reference to the Rahl defendants' motion for summary judgment. (DE 437, pp. 19-20) The plaintiff's response to her motion for summary judgment does not separately address the choice-of-law issue as it pertains to Kirchgessner.

party beneficiaries of the contract.  <u>Bochese v. Town of Ponce</u>
<u>Inlet</u>, 405 f.3d 964, 981 (11th Cir. 2005). When courts consider
whether a person or entity which is not a party to a contact can
invoke the choice of law provision in the contract, the courts are
not limited to determining whether the non-party is an intended
third party beneficiary of the contract.

> "'[A] non-party [to a contract] may
> nonetheless invoke such a forum selection
> clause if the non-party is 'closely related'
> to one of the signatories. In particular, the
> 'relationship between the non-party and the
> signatory must be sufficiently close so that
> the non-party's enforcement of the forum
> selection is 'foreseeable' by virtue of the
> relationship between the signatory and the
> party sought to be bound.'"

<u>Sealord Marine Co. Ltd. v. American Bureau of Shipping</u>, 220
F.Supp.2d 260, 270 (S.D.N.Y. 2002)(internal citations omitted).

> Courts have, for example, found that a non-
> party has a sufficiently close relationship
> with a signatory to allow the non-party to
> invoke a choice of law provision in
> circumstances where the non-party is an alter-
> ego of the signatory, a successor entity to
> the signatory or is owned or primarily owned
> by the signatory.

<u>Id.</u>  The Rahl defendants have not demonstrated that they stand in
such a relationship to a signatory of the contract.  Accordingly,
they cannot invoke the choice of law contained therein and cannot
claim attorney's fees based on the English rule.

Next the Court must consider whether Kirchgessner waived
the right to invoke the clause. Fed.R.Civ.P. 12(b) provides "Every
defense to a claim for relief in any pleading must be asserted in
a responsive pleading if one is required.  But a party may assert

the following defenses by motion: . . . (3) improper venue . . .." Fed.R.Civ.P. 12(h) provides "A party waives any defense listed in Rule 12(b)(2)-(5) by: . . .(B) failing to either (i) make it by motion under this rule, or (ii) include it in a responsive pleading . . .."

In the instant case, Kirchgessner asserted the defense of venue in the affirmative defenses of her answers to the third and fourth amended complaints. Rule 12(b) does not require a party to raise the defense in a motion to dismiss the complaint. Kirchgessner adopted the venue argument set forth in the Rahl defendants' motion for summary judgment, which sought dismissal for improper venue.

The plaintiff cites a number of cases discussed in Axa 608 F.Supp.2d at 1335. The Axa court considered the issue of waiver when the parties cite law of a forum which is not the forum in the contract's choice of law provision. The Axa court found that the waiver extended no further than motion which the parties briefed under federal common law, rather the New York law, pursuant to the choice of law provision of the contract.

The Axa court cited Hanson Engineers Inc. v. UNECO, 64 F.Supp. 797, 799 (C.D.Ill. 1999), which held that the parties, whose contract specified that Utah law governed the contract, had briefed the issue of choice of law using federal common law rather than Utah law. Accordingly, the Hanson court found that they had waived Utah law for the choice of law issue. The Hanson court cited Polar Mfg. Corp. v. Michael Weinig, Inc., 994 F.Supp. 1012

22

(E.D. Wis. 1998), where the issue of the validity of the forum selection clause was briefed using federal common law rather than the North Carolina law specified in the choice of law provision. The <u>Polar</u> court stated "Because the parties may determine what law shall control the issue, and the parties have apparently waived their right to rely upon North Carolina law, the court will apply federal common law to determine the forum-selection clauses' validity." <u>Id.</u> at 1015. In each case, the waiver applied only to the particular issue which was presented to the court. No court held that once the parties explicitly or implicitly relied on legal argument based on law which was not the law specified in the contract, the choice of law specified in the contract had been waived for the entire litigation.

      Based on the line of cases from <u>Axa</u>, the Court finds that although the motions to dismiss, discovery motions and sanctions motions did not rely on the law of the Turks and Caicos Islands, the waiver was limited to the matters being briefed. Kirchgessner repeatedly asserted the affirmative defense of the forum selection and choice of law provisions of the contract, and adopted the Rahl defendants assertion of it in the motions for summary judgment. The Court finds that Kirchgessner did not waive the application the law of the Turks and Caicos Islands for the entire litigation. Accordingly, the Court should award attorney's fees to Kirchgessner under the English rule. Conversely, the Court should deny recovery of attorneys' fees under the English rule to the Rahl defendants,

since they are not parties to the contract and cannot invoke the choice of law provisions in that contract.

C. Title 28 U.S.C. § 1927

Title 28 U.S.C. § 1927 provides: "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct."  The defendants list a number of examples of conduct which they contend is sanctionable under section 1927: the plaintiff filed baseless and deceptive pleadings;[9] filed baseless motions;[10] pursued a litigation position after it became apparent that the asserted position was devoid of merit;[11] maintained baseless claims that dominated discovery and

---

[9] The plaintiff's claimed lack of access to his banking records which subsequently were produced in Quick Report form; the plaintiff's claim regarding the sales price of the house in the Bahamas which did not change when the defendants provided evidence of a lesser sales price, and the belated admission that the plaintiff received credit in the divorce for the Turks and Caicos house.

[10] The plaintiff attempted to use a motion to compel documents in order to circumvent an order of the state court protecting production of documents in the possession of the Rahl defendants under a charging lien; and amended the complaint to add eight defendants, then immediately dismissed two of them and failed to demonstrate personal jurisdiction over the others, resulting in their dismissal.

[11] The plaintiff continued to amend the complaint after being placed on notice by the defendants' motion to dismiss which pointed out that the claims were barred by the statute of limitations; and ignored the fact that the plaintiff had breached the Forward Purchase Agreements by failing to make the required payments.

motion practice for an extended period;[12] filed a complaint that was multiplicative of pre-existing litigation,[13] and continued assertion of a factual or legal position once it became apparent there was no basis for the position.[14]

The defendants' list, with one exception,[15] does not distinguish which conduct was attributable to plaintiff's initial counsel, EAPD, and which was associated with replacement counsel, McCabe Rabin.  Accordingly, each filed a separate response to the claim for sanctions under section 1927.  However, both responses often discuss the conduct of both attorneys. The Court will first consider the response filed by McCabe Rabin.

1. McCabe Rabin

This response first asserts that the list of actions by th e plaintiff is merely a restatement of the conduct allegedly

---

[12] The case centered on two baseless claims, that the plaintiff invested $1 million in the project between 1993 and 1995, and that he was induced to invest $900,000 in a phantom house in the Turks and Caicos, in spite of having no evidence to support those claims. These claims dominated discovery and motion practice.

[13] The plaintiff filed a complaint which was barred in part by the doctrines of  res judicata and collateral estoppel from the Texas divorce judgment, and continued to prosecute the case after those arguments were raised.

[14] The plaintiff continued to seek $900,000 from the Rahl defendants for the loss on the Turks and Caicos house, minus the set-off in the divorce case.  Since Texas is a community property state, half of that amount was attributed to the plaintiff in the divorce.  However, he actually received credit for $750,000 in the divorce.  But McCabe Rabin still sought further compensation from the Rahl defendants for the house to bring his total recovery for the house to $900,000.

[15] As set forth in footnote 14.

25

supporting the defendants' Rule 11 motions.  Section 1927 sanctions
cannot be based solely on having to defend against a frivolous
complaint.  Ellis v. All My Sons Moving and Storage of Orlando,
Inc., 2009 WL 2496626 *3 (M.D.Fla .2009). Instead, section 1927 is
limited to conduct which multiplies the proceedings.  The movant
must show that (1) counsel engaged in "unreasonable and vexatious"
conduct; (2) counsel's conduct multiplied the proceedings, and (3)
the amount of sanction equals the amount of excess fees and costs
caused by the objectionable conduct. Peer v. Lewis, 606 F. 3d 1306,
1314 (11th cir. 2010).  The conduct must be "so egregious that it
is 'tantamount to bad faith.'" Amlong & Amlong P.A. v. Denny's,
Inc., 500 F.3d 1230, 1239 (11th Cir. 2007).  McCabe Rabin asserts
that the defendants cannot demonstrate bad faith in any of the
items in their list of sanctionable conduct.  The defendants did
not prevail on any of those issues even at summary judgment, which
was decided solely on the basis of the RICO statute of limitations.

McCabe Rabin disputes the allegation that the plaintiff
falsely claimed to have invested $1 million in the Project without
having any evidence supporting those claims, and in spite of the
fact that he had breached the contract by failing to make the
specified payments.  Counsel points out the plaintiff testified
under oath that he invested $1.9 million in the Project and the
house.  The defendants provided no evidence to counter this
testimony, such as default notices or pay due payment notices, and
continued to give the plaintiff updates on the project when he
traveled there.  An attorney does not act in bad faith by

26

advocating positions based on the sworn testimony of the client. Andre v. CCB Credit Services, Inc., 2010 WL 3222500 (S.D.Fla. 2010) This is particularly true when the plaintiff's sworn testimony is corroborated by the defendants' own failure to produce a default notice.

With regard to the bank records, counsel argues that the lack of records does not prove that the investment was not made. Nor do the Quick Reports alter this conclusion, since they do not cover the bank accounts from which the payments were made.

As to the sale of the Bahamas house, the plaintiff affirmed under oath several times that the sale price was over $2 million. Counsel asserts that the Rahls wrote the sales contract, which included a fictitious sales price of $1.3 million, in order to assist the buyer, Dr. Richard Lazarus, in evading Bahamian taxes, then diverted the $900,000 difference for use in the Project. When the plaintiff attempted to subpoena Dr. Lazarus regarding the sale, his attorneys resisted the subpoena and refused to provide any documentation.

McCabe Rabin asserts that the eight defendants who added to the Third Amended Complaint were associated with the Project and were added in good faith, since all were central to the dispute.[16]

---

[16] Both the defendants and McCabe repeatedly refer to the complaint which added the new defendants as the Third Amended Complaint. However, the defendants were added in the Second Amended Complaint. (DE 246) Since the motion was briefed referring to this as the Third Amended Complaint, the Court will refer to it as such for the purposes of this section of the report and recommendation.

The assertion of personal jurisdiction over them was not made in bad faith.

With regard to the statute of limitations, the plaintiff had several good faith arguments for overcoming these defenses.[17] With regard to the res judicata and collateral estoppel defenses, no court has ever ruled on those defenses and counsel had and continued to have numerous good faith arguments against those defenses.[18]

As to the damages claim against the Rahls for the house, the plaintiff contends that the defendants simply misread the damage clause, which provides for a set-off for the divorce credit.

Finally, McCabe Rabin contends that the defendants have failed to show any nexus between each act complained of and the particular time expended in the case related to that issue. Peer, 606 F.3d at 1314. The defendants have the burden of showing this nexus, which they completely failed to do. Grey v. Novell, Inc. 2010 WL 2593608 *13 (M.D.Fla. 2010)(denying 1927 sanctions where the movant sought sanctions for all of the attorney's fees without showing "that some, much less than all, of its attorneys' fees are related to sanctionable conduct by plaintiff's counsel." The plaintiff points out that the defendants have failed to even identify which law firm engaged in the specific conduct challenged.

---

[17] It appears that McCabe Rabin is asserting this argument on behalf of itself and EAPD.

[18] Again McCabe asserts the argument on behalf of itself and EAPD.

The defendants' reply asserts that they are entitled to sanctions in the amount of their entire attorney's fees because the "Defendants have claimed at each stage of this litigation that there was no basis for bringing this case and that Plaintiff's counsel was aware of this." (DE 580-1, p. 6) "Plaintiff's counsels' 'unreasonable and vexatious' conduct by continuing to pursue these groundless claims years after the statutes of limitations had expired, despite having been put on notice, clearly is sanctionable because their actions resulted in proceedings that never should have been instituted." (Id.)

Without addressing whether the defendants' motion and reply sufficiently demonstrate that McCabe Rabin acted in an unreasonable and vexatious manner, and by doing so multiplied the proceedings, the Court finds that the defendants have failed to demonstrate that the amount of sanction sought equals the amount of excess fees and costs caused by the objectionable conduct by McCabe Rabin. Peer, 606 F. 3d at 1314.  With the exception of the assertion that McCabe Rabin baselessly sought damages from the Rahl defendants related to the $900,000 house, the defendants do not identify any conduct by current counsel, who clearly did not institute the proceedings.[19]  Nor do they identify any specific

_____

[19] The defendants' reply to EAPD's response asserts that the defendants have not attempted to allocate sanctions between the plaintiff's current and former counsel because the extent of EAPD's involvement with the plaintiff and his current counsel afer the date of withdrawal is not clear.  For example, current counsel conferred with EAPD in June 2010 regarding the Rule 11 motions.

legal work which was caused by the alleged conduct.[20]  Instead, they refer broadly to all motion practice.  The Court is not required to comb through the record to try to determine which motions are related to which challenged conduct by which attorney. Accordingly, the Court should deny the motion for sanctions pursuant to 28 U.S.C. § 1927 against McCabe Rabin

2. EAPD

EAPD's response to the motion also discusses each of the challenged acts asserted by the defendants' motion, arguing that the defendants do not demonstrate bad faith sufficient to show that EAPD "'knowingly or recklessly pursue[d] a frivolous claim or engage[d] in litigation tactics that needlessly obstruct the litigation of a non-frivolous claim.'"  Amlong, 500 F.3d at 1242, *quoting* Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003).

While the defendants contend that the plaintiff was unable to provide documentary evidence about the amounts he invested in the project and the house, he repeatedly testified regarding the amounts.  Indeed, the defendants engaged in a scheme to delete office computer e-mails  which would have contained relevant evidence.[21]  Since there was no judicial resolution of the factual dispute, the defendants have no basis to assert that the

---

[20] For example, while alleging one instance of specific conduct by McCabe Rabin, the defendants do not identify or quantify any additional litigation caused by with this conduct.

[21] The defendants' reply notes that the  e-mails at issue were generated at a time period from 2007 to 2010, approximately sixteen years after the alleged investments.

facts the plaintiff testified to were offered in bad faith. <u>Andre v. CCB Credit Services, Inc.</u>, 2010 WL3222500 *3 (S.D.Fla. 2010)(grant of summary judgment for the defendant is not evidence that the complaint was filed in bad faith).

The defendants have not shown that adding eight defendants in the Third Amended Complaint was done in bad faith. They have cited no legal authority that the granting of a motion to dismiss for lack of personal jurisdiction is evidence that the defendants were added to the litigation in bad faith. Nor was the litigation which accompanied the motions to dismiss the claims against the new defendants a legal burden on the defendants seeking sanctions, since they did not file or litigate those motions to dismiss.

The issue of the statute of limitations survived every motion to dismiss the claims because the Court found that there was "a genuine issue as to whether equitable tolling principles would apply to such claims . . . [and] the Court concludes that there are factual issues as to whether equitable circumstances prevented the Plaintiff from filing this action any sooner." (DE 497, pp. 12-13) This demonstrates that counsel for the plaintiff made a reasonable inquiry into the factual and legal bases for the claims. <u>Robinson v. Nat'l Cash Register</u>, 808 F.2d 1119, 1127 (5th Cir. 1987)(when considering a motion for Rule 11 sanctions, counsel's inquiry must be reasonable under the circumstances).[22] The plaintiff's

---

[22] The defendants' reply notes that the Court actually found that the plaintiff had not provided sufficient factual allegations for the Court to be able to determine whether the

declaration of June 14, 2010, included copies of the defendants'
project updates and photographs of the home which he believed was
being built for him.  It also stated that during the divorce
proceedings he requested documentation about the home, but his
request was refused. Finally, the declaration states that until
Patricia Rahl's January 2010 deposition, the plaintiff did not know
that the Caicos Beach Club Charter, Ltd., had become defunct years
before.[23]  These facts provide a reasonable basis for asserting that
equitable tolling applied to the claims against the defendants.
Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1987)(discussing
the standard for rule 11 sanctions).   The fact that the Court
ultimately did not accept the plaintiff's evidence regarding the
statute of limitations is not evidence demonstrating that EAPD
acted in bad faith.  O'Neal v. DeKalb County, 850 F.2d 653, 658
(11th Cir. 1988)(discussing Rule 11 sanctions).

EAPD notes that the defendants seek sanctions for filing
a complaint which was multiplicative of pre-existing litigation.
But 1927 does not apply to the initial complaint. Macort v. Prem,
Inc., 208 Fed.Appx. 781, 786 (11th Cir. 2006)("'The filing of a
complaint may be sanctioned pursuant to Rule 11 or a court's
inherent power, but it may not be sanctioned pursuant to § 1927. *In*

_____

statute of limitations had run.

[23]   The defendants' reply notes that EAPD is claiming
reasonable reliance on a declaration which was prepared after
EAPD withdrew from the case.  The last item is demonstrably
false, since Patricia Rahl had filed the same information with
the Court on March 10, 2009, which formed one of the bases for
the report and recommendation on the motion to quash service of
process on the defendants not residing in the country. (DE 122)

re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 435 (9th Cir. 1996).'"). See, <u>Ellis v. All of My Sons Moving & Storage of Orlando, Inc.</u>, 2009 WL 2496626 *3 (M.D.Fla. 2009). Moreover, there were numerous reasonable arguments to counter the claims of res judicata and collateral estoppel. The Rahl defendants could not have been added to the divorce proceedings and the fraud claims were not ripe at that time.[24]

The final action alleged, continuing to seek $1.9 million in damages from the Rahl defendants in the Fourth Amended Complaint, refers to the plaintiff's current counsel and not to EAPD. The defendants' reply contends that EAPD pursued those claims for more than two years, with no mention of the set-off for the credit given to the plaintiff in the divorce.

Finally EAPD asserts that the defendants have failed to identify which counsel engaged in the alleged conduct and failed to address the requirement that for each example of sanctionable conduct, the movant must point to the specific attorneys fees which had to be expended as a result of that conduct. <u>Peer</u>, 606 F.3d at 1314.

The defendants' reply contends that at each stage of the litigation they asserted that there was no basis for the case, but the plaintiff's counsel continued to pursue it for years. The defendants did not allocate the amount of sanctions between counsel

---

[24] The defendants' reply notes that not until McCabe appeared in the case did counsel actually investigate at least portions of the Texas divorce file and depose witnesses associated with that proceeding.

because they were unsure the extent to which EAPD continued to be involved with the plaintiff and plaintiff's new counsel after the withdrawal.  They assert that they need EAPD's billing invoices in order to determine this.

The Court notes that the defendants failed to demonstrate the specific fees required to be expended as a result of any of EAPD's alleged misconduct in the years before EAPD withdrew from the case.  Clearly the motion to dismiss the original complaint would not qualify for fees under § 1927.  <u>Macort</u>, 208 Fed.Appx. at 786.  Without determining whether counsel engaged in unreasonable and vexatious conduct which caused the litigation proceedings to multiply, the Court finds that the defendants failed to demonstrate the third requirement of the statute, that they identify "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  It is insufficient to simply point to the whole litigation.  <u>Grey</u>, 2010 WL 2593608 at *13.   The Court should deny the motion to award attorney's fees from EAPD pursuant to 28 U.S.C. § 1927.

<u>D. The Inherent Power of the Court</u>

Federal courts have the authority to assess attorney's fees under the inequitable conduct doctrine by making express findings of bad faith conduct, supported by detailed factual findings describing the specific acts of bad faith conduct which resulted in the unnecessary incurrence of attorneys' fees.  <u>Dogherra v. Safeway Stores, Inc.</u>, 679 F.2d 1293 (9th Cir. 1982).  In <u>Dogherra</u>  after Safeway terminated her, the plaintiff filed a

union grievance about the termination. Safeway's agent lied to
union investigators about the justification for her termination,
which resulted in the grievance being dropped by the union.
However, after Doghera was awarded unemployment compensation, the
union attempted to reopen the grievance.  An arbitrator found that
the grievance, once dropped, could not be reopened five months
later.  Safeway's agent subsequently admitted that his testimony to
the union investigators was a lie.  He stated that he felt Safeway
wanted to terminate the employee, thus his original testimony was
designed to support that result.  However, he stressed that Safeway
was not aware that the termination was the result of the lie.
Dogherra then sued Safeway under the Labor Management Relations
Act. In the ensuing litigation, the trial court taxed attorney's
fees against the Safeway because once it learned of the lie, it
continued to litigate the case from the position that the agent
admitted lying, not from the position that the agent's original
statement was untrue.  The court found that, to this end, the
Safeway filed needless and almost frivolous motions, which
constituted bad faith sufficient to warrant the sanction of an
award of attorneys' fees.  Id. at 1298.  The appellate court
reversed the award and remanded for further proceedings, holding
that fees could only be awarded if the plaintiff could demonstrate
that the Safeway knew, or believed, that the agent was lying.

        Both EAPD and McCabe Rabin's responses to the motion note
that these issues are already before the Court in the motions for
Rule 11 sanctions.  The defendants' replies urge the Court to

consider the matter in light of the conduct alleged in the instant motion.

The undersigned issued a detailed report on the Rule 11 motions which discusses the same issues raised in the instant motion. In the interest of judicial economy, the Court should consider those issues solely in relation to the Rule 11 motion rather than readdressing them here. The Court should deny the motion to sanction the plaintiff and his counsel based on the inherent power of the Court.

E. Compliance with the Local Rules

McCabe Rabin and EAPD both contend that the entire motion should be denied because the defendants failed to comply with the requirements of S.D.Fla.R. 7.3(b). EAPD also asserts that the defendants must comply with S.D.Fla.R. 7.1(a)(3), governing general motion practice. The Court notes that the requirement of Rule 7.1(a) that the parties confer prior to the filing of a motion is set forth in a different form in Rule 7.3(b). Accordingly, the Court finds that the defendants must comply with the requirements of Rule 7.3 prior to filing the motion for attorneys' fees.

The plaintiff's response contends that while the defendants served a draft copy of the motion on August 18, 2010, within the time frame required by the Rule, they failed to provide the actual billing records and other exhibits in a timely manner, with the last of the records supplied the day the motion was

filed.[25]   Because these records were not served with the draft,
there was no time for the plaintiff to "confer and attempt in good
faith to agree on entitlement to and the amount of fees and
nontaxable expenses." S.D.Fla.R. 7.3(b).

          The defendants' reply points out that Local Rule 7.3 was
amended in 2010, and it was not clear that the billing records were
required to be served with the draft of the motion.  However, after
conferring with plaintiff's counsel on September 2, 2010, they
immediately began redacting two and a half years worth of billing
records and provided them to plaintiff's counsel incrementally.
The defendants offered to agree to a ten-day extension of time to
file the motion for attorney's fees in order to provide time to
confer after the records were served. (DE 580-1, Exhibit B)[26]
During the September 2, 2010, conferral, counsel for the plaintiff
objected to entitlement, the costs, any fee rate greater than the
discounted rates billed to the defendant. (DE 580-3) The
defendants' reply points out that McCabe Rabin, while challenging
counsel's hourly rate, has not yet provided an affidavit of its and
EAPD's hourly rates for this litigation, including contract
provisions which might modify that rate, as required by Rul 7.3(a).

_____

          [25] Invoices billed to Patricia Rahl for February 1, 2010,
through August 31, 2010, the period during which McCabe Rabin
represented the plaintiff, were provided on September 7 and 8,
2010.  The firm's invoices to Kirchgessner for the same period
were provided on September 13, 2010. (DE 575-1)

          [26] The e-mail memorializing this conversation stated that
McCabe would also review the defendants' invoices for the period
EAPD represented the plaintiff and compare them to the invoices
from EAPD to the plaintiff.  It is not clear when the defendants'
invoices for this period were provided to McCabe.

This hindered the defendants' ability to demonstrate that their hourly rates are reasonable.

S.D.Fla.R. 7.3(b) requires that the pre-filing draft served on the opposing party must be "compliant with Local Rule 7.3(a)(1)(1)-(8)," which lists the exhibits to be included a fee application. Rule 7.3(1)(7) requires that the draft "describe and document with invoices all incurred and claimed fees and nontaxable expenses." The defendants concede that the draft was served without exhibits.

The Court notes that during the month between the final judgment and service of the draft of the motion for attorneys' fees, while the defendants were drafting the fee application, the parties also were briefing the defendants' motion for Rule 11 sanctions, briefing the fee application the defendants submitted pursuant to the Court's Order compelling the plaintiff to respond to interrogatories and briefing the motion to strike the defendants' reply in support of that fee application. Accordingly, counsel were still busy litigating other matters in this case after the final judgment. While McCabe Rabin asks the court to deny the instant motion for the defendants' failure to serve the exhibits in a timely manner, it entirely failed to provide an affidavit of the firms' hourly rates as required by the rule. Since both sides have violated the same rule, the Court should deny the plaintiff's request to deny the fee application for failure to comply with Rule 7.3(b).

EAPD's response to the motion states that while the defendants served them with a copy of the draft motion, they did not serve any of the exhibits and did not attempt to confer with anyone at EAPD regarding the motion. Accordingly, the motion should be denied in its entirety insofar as it seeks fees from EAPD. Norych v. Admiral Insurance Co., 2010 WL 2557052 *2 (S.D.Fla. 2010)(denying fee application when no draft was served and no conferral held); Provide Commerce, Inc. v. Preferred Commerce, Inc., 2008 WL 360591 *2  S.D.Fla. 2008)(denying fee application which provided only one for the five items required to document the fee sought).

The defendants' reply to EAPD asserts that the Rule requires counsel for the "parties" to confer, and EAPD was no longer counsel for a party.  Moreover, the defendants had reason to believe that EAPD and McCabe Rabin were conferring with each other during the period, since defendants' counsel received an e-mail from McCabe stating that it was conferring with the plaintiff's other counsel regarding the defendants' motion to bifurcate the issues of entitlement to fees and amount of fees. (DE 582, Exh. B)[27] Moreover, after receiving the draft motion, EAPD was granted an extension of time to file a response.  During this time EAPD could have contacted defendants' counsel to confer.  The Rule does not require the movant to initiate the conferral.  The Rule  also

---

[27] The Court notes that this e-mail refers to the plaintiff's other counsel for the Rule 11 motion, which the docket sheet identifies as Thomas Meeks, Esq., of Carlton Fields P.A.

requires the respondent to "describe with reasonable particularity each time entry or nontaxable expense to which it objects, both as to the issues of entitlement and as to amount, and shall provide supporting legal authority." EAPD did not attempt to confer with counsel for the defendants to discuss his objections.

The Court notes that McCabe Rabin's response to the motion for fees discusses the billing invoices for the entire course of the litigation. The September 2, 2010, e-mail demonstrates that McCabe Rabin intended to perform this function, rather than requiring EAPD to review the defendants' invoices for the period when EAPD represented the plaintiff. To that end, McCabe Rabin would also review EAPD's invoices to the plaintiff. This arrangement is in keeping with the Rule's requirement that the draft of the motion, with exhibits, be sent to allow counsel for the parties to confer about its contents.

The draft of the motion was sent to EAPD to allow the firm to respond to the issue of entitlement under the various types of sanctions requested. While EAPD makes much of the fact that they were not served with the exhibits, the Court finds that the draft of the motion provided EAPD with everything they required to respond on the issue of entitlement. EAPD did not attempt to confer with the defendants about its objections to the entitlements sought in the draft, as required by S.D.Fla.R. 7.3(b). The Court should not deny all fees sought against EAPD based on the defendants' failure to provide it with the exhibits which properly were provided to McCabe Rabin alone.

F. Amount of Fee Award

>       The most useful starting point for
> determining the amount of a reasonable fee is
> the number of hours reasonably expended on the
> litigation multiplied by a reasonable hourly
> rate. This calculation provides an objective
> basis on which to make an initial estimate of
> the value of a lawyer's services.  The party
> seeking an award of fees should submit
> evidence supporting the hours worked and the
> hours claimed.  Where the documentation of
> hours is inadequate, the district court may
> reduce the award accordingly.
>       The district court also should exclude
> from this initial fee calculation hours that
> were not "reasonably expended." . . . Counsel
> for the prevailing party should make a good-
> faith effort to exclude from a fee request
> hours that are excessive, redundant, or
> otherwise unnecessary, just as a lawyer in
> private practice ethically is obligated to
> exclude such hours from his fee submission.

Hensley v. Eckerhart, 461 U.S. 424, 433-434, 103 S.Ct.1933, 1939-40

(1983).

>       The product of reasonable hours times a
> reasonable rate does not end the inquiry.
> There remain other considerations that may
> lead the district court to adjust the fee
> upward or downward, including the important
> factor of the "results obtained."

Id., 461 U.S. at 434-435, 103 S.Ct. at 1940 (footnotes and

citations omitted).

1. Hourly Rate

      The Eleventh Circuit has adopted the lodestar approach as

the method to be used in calculating federal statutory fee awards.

Norman v. Housing Auth. Of Montgomery, 836 F.2d 1292 (11th Cir.

1988).  The court must begin by determining a reasonable hourly

rate, which is defined as "the prevailing market rate in the

relevant legal community for similar services by lawyers of

reasonably comparable skills, experience and reputation." Id. at
1299, citing Blum v. Stenson, 465 U.S. 886, 895 (1984).  The
applicant bears the burden of proving, by direct or opinion
evidence, that the requested rate is in line with prevailing market
rates. Norman, supra, at 1299.

 In assessing the relevance of the fee comparables
provided by the applicant, the court may consider the factors
enumerated in the novelty and difficulty of the issues; skill
required to perform the legal service properly; preclusion of other
employment by the attorney due to acceptance of the case; the
customary fee; whether the fee is fixed or contingent; time
limitations imposed by the client or the circumstances; the amount
involved and the results obtained; the experience, reputation, and
ability of the attorneys; the "undesirability" of the case; the
nature and length of the professional relationship with the client,
and awards in similar cases. Norman, supra, at 1299-1300.

 The applicant also bears the burden of documenting his or
her time expenditures, and may submit opinions as to their
reasonableness.  Id. at 1303.  However, the court "is itself an
expert on the question and may consider its own knowledge and
experience concerning reasonable and proper fees and may form an
independent judgment either with or without the aid of witnesses as
to value." Id.

 In the instant case, defendants' counsel billed the
defendants at a discounted rate of $350.00 per hour owing to her
long-term relationship with the defendants.  However, counsel seeks

an award of attorneys' fees based on her customary rate for such litigation, $450.00 per hour. The retainer agreement for this case provided that all other attorneys who worked on the case would be billed at $350.00 per hour. However the firm actually billed 5,586.90 hours at $300.00 per hour and 1,390.20 hours at $250.00 per hour, resulting in a discount of $418,365.00.

The plaintiff's response does not object to the discounted rates, but asserts that the plaintiff should not be asked to pay the artificially inflated rates which the defendants did not have to pay. Lane v. Head, 566 So.2d 508, 512 (Fla. 1990)("in no event may a court tax attorney's fees that exceed the actual fee agreement between the plaintiff and plaintiff's counsel"); Florida Patient's Compensation Fund, 472 So.2d 1145, 1151 (Fla. 1985)("Further, in no case should the court-awarded fee exceed the fee arrangement reached by the attorney and his client.").

The defendants' reply asserts that S.D.Fla.R. 7.3(a) requires an attorney objecting to the hourly rate to provide "an affidavit giving its firm's hourly rates for the matter and include any contingency, partial contingency, or other arrangements that could change the effective hourly rate." This Rule is intended to eliminate unnecessary disputes about the hourly rates. This information has not been provided for plaintiff's current or previous counsel. Moreover, the standard in the Eleventh Circuit for determining fees is to determine the reasonable hourly rate and multiply that by the number of hours reasonably expended. The Court should consider the customary fee charged in this community

43

for similar legal services. <u>Norman</u>, 836 F.2d at 1299. The Supreme Court has held that a reasonable hourly rate is to be measured by the "prevailing market rates in the relevant community." <u>Blum v. Stenson</u>, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The motion included an affidavit by Daniel. L. Losey, esauire, attesting to the reasonableness of the requests attorneys' fees. (DE 571-4, pp. 9-11)[28] Defendants' counsel also submitted an affidavit stating the discounted rates charged to the defendants, and counsels' customary rates which she believes are consistent with rates charged by similar firms performing similar work in the area, and consistent with the rate submitted by Mr. Woodfield in <u>Victory</u>. (DE 571-4, pp. 12-18).

The defendants challenge the plaintiff's statement of Florida law on fees. The two cases cited involved contingency fee arrangements. More recently the Florida Supreme Court held that cap on contingency fee tort and contract cases did not necessarily cap court-awarded fees in all types of litigation. <u>Bell v. U.S.B. Acquisition Co.</u>, 734 So.2d 403 (Fla. 1999). Indeed, one Florida court, noting that counsel may charge a lower rate for a long-time client, held the adversary should not be allowed to exploit counsel's decision to work for less in order to keep the client's business. <u>Ronlee, Inc. v. Arvida Corp.</u>, 515 So.2d 372, 373 (Fla. 4th DCA 1987)(later rejected in <u>Perez-Borroto v. Brea</u>, 544 So.2d

---

[28] Mr. Losey's affidavit does not discuss the hourly rates charged by counsel, but opines that "the sum of $1,254,386.50 is a reasonable attorneys' fee to be awarded in this matter." <u>Id.</u> at p. 11)

1022 (Fla. 4th DCA 1989) which found that in an hourly rate fee agreement, it would be unfair to limit one side to the fee arrangement while the other would not be).

Neither party discusses whether the amount of fees for a FDUTPA claim filed in federal court is governed by Florida or federal law. The Court finds that federal courts use federal law to determine whether an hourly rate for a FDUTPA claim is reasonable. Eugene v. 3Don & Partner Estate Group, LLC, 2009 WL 996016 *3-4 (S.D.Fl. 2009); Emmedue S.P.A. v. Nextech Building Systems, Inc., 2010 WL 1372417 * 4 (S.D.Fla. 2010). Accordingly, the Court will look to federal law, rather than to Florida law, to resolve the issue of determining a reasonable fee when the attorney has different rates for different clients.

The Eleventh Circuit has issued opinions upholding awards of both customary and discounted rates. In Mayson v. Pierce, 806 F.2d 1556, 1557-58 (11th Cir. 1987) the appellate court upheld the district court's affirmation of an EEO director's of reduction of a requested rate of $150.00 per hour to a rate of $75.00 per hour in an employment discrimination administrative proceeding. The attorney had two hourly rates for clients, $120 for retainer clients and $150 for individual non-retainer clients. The contract with the plaintiff stated that if counsel prevailed he would recover his the usual fee, but if he did not prevail he would only charge the plaintiff half the usual non-retainer rate. The plaintiff prevailed. Several attorneys submitted affidavits stating that the $150 rate was a reasonable rate for that type of

45

litigation in the area.  However, the defendant provided affidavits from several attorneys who stated that many attorneys charged individual clients less than corporate clients since the corporate client was better able to pay the higher rate. These affidavits stated that a rate of $75 was within the limits of customary fees in the area for a Title VII administrative proceeding.  Finally, one attorney's affidavit stated that he charged individual clients less since they may not be able to pay a higher rate, and if the court used the $75 rate, the attorney would be no worse of than if he had lost the case. Id. at 1557.  The  EEO director considered these affidavits and lowered the rate to $75.  Based on the evidence, the district court affirmed the reduction.  The Eleventh Circuit found that the reduction was not an abuse of discretion.

However,  in  RDP Royal Palm Hotel, L.P. v. Clark Construction Group, Inc., 168 Fed.Appx. 348, 355 (11th Cir. 2006). the Eleventh Circuit held, without discussion, that it was not an abuse of discretion for the district court to assess attorney's fees at counsel's regular rate rather than the discounted rate charged to the client. A review of the district court decision reveals that the district court also did not discuss why it raised rate from the discounted rate. RDP Royal Palm Hotel, L.P. v. Clark Construction Group, Inc., Case No. 01-3130-Civ-Bandstra, DE 330, pp. 14-16.

Because the RDP case does not include an explanation of the rate decision, the Court is guided by Mayson.  The evidence provided by the defendants consists of Losey's affidavit, which

does not discuss the hourly rate, and counsel's affidavit which provides the customary rate for such work ($450), and the discounted rate ($350) in the contracts with these defendants, and states that the customary fee is within the range of rates charged by similar firms performing similar work in the area.  The affidavit also states that Gary Woodfield charged a discounted rate of $405 (a 10% discount from $450) in <u>Victory</u>, which his affidavit stated was consistent with the rates charged by similar firms of similar stature in the Miami legal community. (Case No. 08-20395-Civ-PCH, DE 389-1, pp. 8-9)  The plaintiff's response did not provide an affidavit or any other evidence demonstrating that the discounted rate is within the range of rates which are charged by similar firms performing similar work in the area.

Based on the evidence presented and the Court's own billing knowledge and experience, the undersigned recommends that the Court exercise its discretion to award the customary hourly rates.

## 2. Reasonable Hours

The defendants provide the invoices for the case, which describe the services performed by attorneys and paralegals.  The defendants state that the invoices demonstrate billing discretion, such as not charging for the hours counsel spent in telephone conferences with opposing counsel. Although multiple attorneys worked on the case, they each made a distinct contribution based on their skills and expertise.

The plaintiff's response argues that the invoices contain eight categories of billings which the plaintiff deems to be objectionable: (1) "V" for vague, meaning there is insufficient information to evaluate the hours spent, e.g. Kirchgessner invoice of March 20, 2008, 4.5 hours described as "research;" (2) "E" for excessive, such as Rahls invoice of April 2008 for 26.7 hours to draft a 10-page reply memorandum for the motion to dismiss, 80.6 hours for drafting the Rahls' motion for summary judgment and 67.2 hours for drafting Kirchgessner's motion for summary judgment; (3) "T" for travel time billed to Kirchgessner and the Rahls for travel on July 24 and 25, 2008;[29] (4) "C" for purely clerical work, e.g. Kirchgessner's invoice of December 2009 for $14,340 for indexing documents; (5) "O" for work performed for other clients, e.g. Rahl's April 2010 invoice for work to quash service for Caicos Beach Club Charter, Ltd., and May 2010 invoice for work to dismiss Caicos Beach Club; (6) "U" for unrelated, e.g. March 2010 invoice related to the Rahl's charging lien in state court in Palm Beach County, and (7) "D" for double when the Rahls and Kirchgessner are both billed identical amounts for the same work without explaining if the total time was split between the two invoices, e.g. March 6, 2008, April 14 and 16, 2008.[30]

---

[29]   Eight hours charged to the Rahls and eight hours charged to Kirchgessner at the beginning of the case for flying to Dallas and back to meet with Kirchgessner for strategy plans and to obtain documents. (DE 575-2 p. 9)

[30] This list contains seven objections to the hours billed. However, as discussed below, the plaintiff also objected to all of the cost entries by marking them with an "X."

The defendants' reply notes that for those items deemed excessive, the plaintiff has not suggested what a reasonable number of hours would be.  For example he objects to all of the hours for researching and drafting the motions for summary judgment as excessive, but suggests no alternative time.  However plaintiff's counsel stated under oath that his firm spent in excess of 50 hours responding to the motions for summary judgment. (DE 546-1, ¶ 19).

The Court has reviewed the items challenged as excessive. Considering the complexities of the case and the fact that the defendants' motions and briefings routinely addressed the numerous issues involved in each, the undersigned recommends that the Court decline to reduce those billings.

The reply also includes the affidavit of defendants' counsel which withdraws 19.9 hours from the April 2, 2009, invoice; 22.7 hours from the May 7, 2008, invoice;  19.6 hours from the April 6, 2010, invoice and 0.5 hours and May 5, 2010, without identifying which items are being withdraw from each invoice. After considering these billings[31] the Court will reduce Ms. Lewis' hours by 13.0 and Mr. Oldehoff's hours by 52.4

---

[31] The April and May 2008 items appear to be work for Kirchgessner which was billed to Rahl. the April invoice billed 2.4 hours for Ms. Lewis and 17.5 hours for Mr. Oldehoff. However,  on the May 7 invoice Rahl only withdraws 22.7 hours of the Kirchgessner billings from a total of 25.4  Kirchgessner billings.  The Court will reduce the invoice by the additional 2.7 hours .  Accordingly, the withdrawn billing comprises 10.6 hours for Ms. Lewis and 14.8 hours for Mr. Oldehoff.  The 19.6 hours for the April 6, 2010, invoice appear to be for the state court charging lien and were billed by Mr.Oldehoff.  The .5 billing from the May 5, 2010, invoice is for selecting the expert witness for the state court charging lien hearing and was billed by Mr. Oldehoff.

The defendants also assert that the plaintiff has provided no legal authority for objecting to 19.2 hours of travel time. The court will not remove those items, or the travel time billed on the Rahls' invoice for June 8, 2010.

The plaintiff's objections to clerical work in the in the December 2009 invoice apply to items billed at the paralegal rate.[32] The plaintiff has provided no legal authority for objecting to these items. The Court will not remove those items.

The defendants state that all of the items which the plaintiff identified as "other" are for matters related to (1) the plaintiff's attempted service of process on Kirchgessner or the Rahl defendants for other defendants which the plaintiff had been unable to serve by other means, such Paul and Ronald Kirchgessner, the Caicos Beach Club Charter, Ltd., the Caicos Beach Club,  and the new corporate defendants added in the Second Amended Complaint and (2) research into the conspiracy alleged between Kirchgessner, the Rahl defendants and the newly-added corporate defendants. The Court finds that this work was done for Kirchgessner and the Rahl defendants, not for the other defendants and will not remove them.

The defendants' reply notes that the items the plaintiff challenges as "vague" are easily related to the other entries which surround them.  For example the items  marked "Research" on the

---

[32] The hours and rates are not identified on the invoice. However, the hours for similar work are identified on the Rahl invoice of August 3, 2010, for a calculated rate of $85 per hour, and the February 2010 invoice for Bates stamping done January 8, 2010,  at a calculated rate of $75.00 per hour. [The first page of the February 2010 invoice is missing so the Court cannot provide the date of that invoice.]

Rahl's April 2, 2008, invoice and Kirchgessner's July 11, 2008, invoice relate to reviewing the newly-served complaint and analyzing the issues presented.  The Court has reviewed these items, as well as those in the Rahl invoices of January 30, 2009, July 10, 2009, November 2, 2009, and May 5, 2010, and the Kirchgessner invoices of December 11, 2009, and June 2, 2010, and finds that in the context of the surrounding invoices they are not vague.  The Court will not remove them.

Accordingly the undersigned recommends that the Court reduce Ms. Lewis's hours by 13.0 hours which, at a rate of $450.00 per hour , reduces her fee by $5,850.00.  Mr. Oldehoff's hours should be reduced by 52.4 hours which, at a rate of $350.00 per hour, reduces his fee by $18,340.00.  All of these hours were billed to the Rahl defendants.  Accordingly, the total fee claimed by the  the Rahl defendants should be reduced by $24,190.00.

G. Total Award of Attorneys' Fees

The court should award the Rahl defendants a total fee of $654,701.50 ($678,891.50 minus $24,190).  The court should award Kirchgessner a fee of $333,142.50.

H. Additional Costs

The defendants claim total of costs of $86,905.00, including the $44,055.86 presented in the Bill of Costs, and ask that the Court award the total of their billed costs minus those costs awarded in the Bill of Costs.  The defendants state that the costs sought here are for Westlaw research fees, postage and

51

delivery fees, mediation and travel.  These costs are listed at the end of each monthly invoice for the case.

Since the undersigned recommends that the request for sanctions based on 28 U.S.C. § 1927 and on the inherent power of the Court be denied, the defendants' entitlement to costs is based on the FDUTPA statute and Kirchgessner's entitlement to costs under the law of the Turks and Caicos Islands.

The plaintiff's response states that the plaintiff objects to all costs except those agreed to in the plaintiff's objections to the Bill of Costs.  The plaintiff has placed an "X" next to nearly every cost[33] in the invoices and challenges each, such as a travel cost of $7,050 for the costs of flying, washing and waxing defense counsel's private jet for trips in July and September 2008.  However, he cites no legal authority which would bar these costs under any of the four theories of recovery sought by the defendants.

The defendants' reply notes that a Bill of Costs is authorized by 28 U.S.C. § 1920.  The instant motion is a verified motion for costs arising from circumstances other than those listed in § 1920.  Muldowney v. MAC Acquisition, LLC, 2010 WL 3385388 (S.D.fla. 2010)(ruling on a bill of costs, while noting that a motion for costs arises from other circumstances than § 1920).  The defendants cite Fisher v. Fashion Institute of Technology, 491 F.Supp. 879, 890, for the proposition that 28 U.S.C. § 1927

---

[33] There us no "X" for the costs charged to the Rahls in July 2009, which apparently were overlooked. (DE 575-2, p. 39)

authorizes the award of "excess costs" as a sanction and is not limited to routine costs.

The Court finds that since the defendants have not demonstrated they are entitled to costs pursuant to § 1927, <u>Fisher</u> provides no basis to tax these excess costs. Nor have the defendants cited any legal authority that these constitute "reasonable" costs pursuant to Fla. Stat. § 501.2105. Mr. Misick's affidavit does not address the issue of excess costs levied as sanctions under Turks and Caicos law. The copy of Order 62 of the Rules of the Supreme Court of the Turks and Caicos Islands, governing awards of costs, which is attached to Mr. Misick's affidavit is incomplete, since page 184 is missing. However, Order 62 does not discuss costs as sanctions, except to disallow costs for certain events, such as any application to extend time fixed by the rules or by any direction or order. (O. 62, r. 6(6), DE 571-4 p. 7) Accordingly, the defendants have provided no legal authority authorizing excess costs for those sanctions which the Court finds they are entitled to. The Court should deny the motion insofar as it seeks excess costs above those awarded under the Bill of Costs filed pursuant to 28 U.S.C. § 1920.

### III. CONCLUSION

This Court having considered carefully arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED as follows:

1. That the court rule that, if the final judgment in favor of the defendants is not reversed, the defendants are

entitled to an award of fees and costs pursuant to Fla.Stat. § 501.2105(1), but that such fees and costs cannot be awarded until after the exhaustion of all appeals.

2.   That if a future award of fees is made to the Rahl defendants pursuant to Fla.Stat. § 501.2105(1), the award should be in the amount of $654,701.50 for attorneys' fees.

3.   That the Court GRANT Kim Francis Kirchgessner's motion for an award of attorney's fees and costs pursuant to the law of the Turks and Caicos Islands, and award her attorneys' fees in the amount of $333,142.50.[34]

4.   That the Court DENY the Rahl defendants' motion for an award of reasonable attorney's fees and costs pursuant to the law of the Turks and Caicos Islands.

5.   That the Court DENY the defendants' motion for sanctions pursuant to 28 U.S.C. § 1927.

6.   That the Court DENY the defendants' motion for sanctions based on the inherent power of the Court.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v.

_____

[34] If the Court does not adopt this recommendation, Kim Francis Kirchgessner also is entitled to an award of attorneys' fees in the same amount pursuant to Fla.Stat. § 501.2105(1), which can be awarded only if the judgment in her favor is not reversed, and only after the exhaustion of all appeals.

Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 18th day of February, 2011.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All Counsel of Record