UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80131-Civ-DIMITROULEAS/SNOW

GERHARD EMIL MAALE, III,

    Plaintiff,

    v

KIM FRANCIS KIRCHGESSNER et al.,

    Defendants.

_____/

## SUPPLEMENTAL REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendants', Patricia Rahl, Brian Rahl, Rahl & Rahl, P.A. and Kim Francis Kirchgesser, Verified Motion for Attorney's Fees and Costs (Docket Entry 571), which was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation regarding sanctions, based on the inherent power of the Court, against Gary Woodfield and his former law firm Edwards Angell Palmer and Dodge (collectively "EAPD"). EAPD filed a response to the motion (DE 579) and the defendants filed a reply (DE 582).[1]

---

[1] Woodfield filed a declaration as part of EAPD's objections to the Report and Recommendation regarding Rule 11 sanctions, seeking to refute various findings in that Report and Recommendation, particularly about the investigation Woodfield made of the Texas divorce documents prior to filing the complaint. The defendants' response to those objections rebuts portions of the declaration. Thereafter EAPD was granted leave to file a supplemental declaration. The Court notes the motion for leave to file the supplemental declaration limits its application to the Court's consideration of the Rule 11 motion, even though the motion was filed after the undersigned issued its Report and

I. RECOMMENDATIONS OF LAW

The motion asserts that EAPD (1) filed a complaint that was multiplicative of pre-existing litigation, (2) filed baseless and deceptive pleadings, (3) pursued the litigation after it became apparent that the asserted position was devoid of factual or legal merit and (4) maintained baseless claims that dominated discovery and motion practice for an extended period.

The authority to sanction conduct pursuant to the inherent power of the Court is similar to the authority to sanction conduct pursuant to 28 U.S.C. § 1927. Both require a finding of bad faith measured against objective standards of conduct. <u>Amlong & Amlong, P.A. v. Denny's, Inc.</u>, 500 F.3d 1230, 1241 (11th Cir. 2007). Negligent conduct standing alone will not support a finding of bad faith. <u>Id.</u> at 1241-42. The "attorney must *knowingly* or

---

Recommendation on the instant motion.
  While the McCabe firm filed a declaration with its response to the Rule 11 motion, EAPD chose not to do so, even after reviewing McCabe's response. Thus the undersigned will not consider EAPD's two Rule 11 declarations as part of the briefing for this Supplemental Report and Recommendation. EAPD's response to the instant motion does not mention any investigation by Woodfield or EAPD into the Texas divorce. Instead EAPD noted that after EAPD withdrew, the McCabe firm engaged in "considerable discovery" about the Texas divorce. (DE 579, p. 2) The response to the instant motion also adopts EAPD's response to the Rule 11 motion. That response does not mention any investigation of the Texas divorce case, simply stating "After making a reasonable inquiry into the basis for Dr. Maale's contentions and researching the then-existing law, EAPD believed that Dr. Maale's claims were not time-barred." (DE 551, p. 5) EAPD's Rule 11 response also asserted that "lawyers are entitled to rely upon the statements of their client, even if the statements are disputed or ambiguous. *See Edmonds v. Gilmore*, 988 F.Supp. 948, 957-58 (E.D.Va. 1997)"(<u>Id.</u>, p. 8)

2

*recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." Id. at 1242. Recklessness is "a gross deviation from conduct that might be reasonable in the circumstances." Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1227 (11th Cir. 2003). However, the power is not limited to procedures which already exist in other forms. "Therefore, although certain conduct may or may not be violative of Rule 11 . . . it does not necessarily mean that a party will escape sanctions under the court's inherent power." In re Mroz, 65 F.3d 1567, 2575 (11th Cir. 1995).

Federal courts have the authority to assess attorney's fees under the inequitable conduct doctrine by making express findings of bad faith conduct, supported by detailed factual findings describing the specific acts of bad faith conduct which resulted in the unnecessary incurrence of attorneys' fees. Dogherra v. Safeway Stores, Inc., 679 F.2d 1293 (9th Cir. 1982).

In Dogherra, after Safeway terminated her, the plaintiff filed a union grievance about the termination. Safeway's agent lied to union investigators about the justification for her termination, which resulted in the grievance being dropped by the union. However, after Doghera was awarded unemployment compensation, the union attempted to reopen the grievance. An arbitrator found that the grievance, once dropped, could not be reopened five months later.

Safeway's agent subsequently admitted that his testimony to the union investigators was a lie. He stated that he felt

3

Safeway wanted to terminate the employee, thus his original testimony was designed to support that result. However, he stressed that Safeway was not aware that the termination was the result of the lie. Dogherra then sued Safeway under the Labor Management Relations Act. In the ensuing litigation, the trial court taxed attorney's fees against the Safeway because once it learned of the lie, it continued to litigate the case from the position that the agent admitted lying, not from the position that the agent's original statement was untrue. The court found that, to this end, that Safeway filed needless and almost frivolous motions, which constituted bad faith sufficient to warrant the sanction of an award of attorneys' fees. Id. at 1298. The appellate court reversed the award and remanded for further proceedings, holding that fees could only be awarded if the plaintiff could demonstrate that the Safeway knew, or believed, that the agent was lying.

Accordingly, the undersigned will limit the analysis to those instances where EAPD continued to allege or argue a position which was based on demonstrably false or baseless assertions, in spite of full knowledge that the assertion was false or baseless. Thus EAPD's argument or allegation was made in bad faith.

A.  The Complaint Was Multiplicative of Pre-existing Litigation

Mr. Woodfield represented Dr. Maale in the Florida component of the Texas divorce case. On June 5, 2006, Mr. Woodfield filed a complaint in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County to enforce a subpoena

seeking documents from the Rahls related to the ownership of the Turks and Caicos house. (DE 171-1)   Accordingly, Mr. Woodfield knew that the ownership of that house was a matter before the Texas divorce court.

Based on counsels' response to the instant motion which does not refer to any investigation of the Texas divorce case, the undersigned finds that EAPD failed to demonstrate that Woodfield, made a reasonable investigation of the Texas divorce litigation or the terms of the Decree of Divorce in that case.  The complaint sought recovery from Maale's former wife, Kirchgessner, and the Rahl defendants for the sum of $1.9 million, which the plaintiff claimed to have invested in the house and the Project, as a result of the defendants' fraudulent misrepresentations.

Subsequent documents and discovery from the divorce case revealed (1) that the divorce court dismissed with prejudice Maale's allegations of fraud against Kirchgessner (DE 27-3, p. 51); (2) that Maale's inventory of property to be divided included the Turks and Caicos house and ownership of ten units (DE 27-2, p. 4), although Kirchgesser's divorce attorney testified that it was unclear whether these were units or memberships (DE 474-1, p. 28), and that Kirchgessner did not list them on her inventory of property to be divided, since it was her position that they did not own any memberships or units in the Turks and Caicos; (3) that Maale filed an exhibit list in the divorce action which included a March 10, 2006, "[l]etter from Kevin Coupland re Mr. and Mrs. Maale and Caicos Beach Club Resort," which confirmed that the entity was

5

defunct, and (4) that Maale testified in the divorce case that his claims in the divorce case were for the $900,000 invested in the house and the $1 million invested in the Project (DE 435-5, pp. 84-86 and 435-6, p. 134).

In spite of all this evidence, EAPD continued to argue that the divorce case did not address (1) Maale's investment in the Project, or (2) Maale's charge of fraud against Kirchgessner. EAPD continued to argue that prior to the January 2010, deposition of Patricia Rahl, Maale had not been informed that Caicos Beach Club Charter, Ltd., was a defunct entity and that he had no investment in the current entity developing the project.

B. Filed Baseless and Deceptive Pleadings

The four complaints filed by EAPD alleged that Maale had invested $1 million in the Project in the Turks and Caicos, although he had copies of checks which totaled approximately $200,000.  Counsel appended a check for $49,121.31 to the Amended Complaint (DE 36-1, p. 2) and the Third Amended Complaint, filed April 21, 2010, which clearly was unrelated to claimed investment in the Project: the memo line stated "loan to Maale Group for vineyard property." (DE 360-1, p. 2)[2]  Maale testified in November 2009 that the check was not related to this lawsuit. (DE 435,

---

[2] The Amended Complaint and the Third Amended Complaint also proffered an "investment" check for $8,923.80, which had a memo line stating "Hobiecat & trailer."  (DE 36-1, p. 32; DE 360-6, p. 2)

6

Appendix A, p 154)[3] Three months after Maale's testimony, EAPD attached the check as an exhibit to the Third Amended Complaint to demonstrate Maale's investment in the Project. The Court finds that this allegation constitutes clear evidence of EAPD's bad faith, made with full knowledge of the falsity of the evidence submitted to the Court.

Each complaint EAPD filed with the Court contained the allegation that Maale relied on the defendants' misrepresentations about the progress of the construction of the Project. (e.g., DE 1, ¶ 29; DE 36, ¶ 54; DE 246-1, ¶ 47; DE 359, ¶ 53) However, the First, Second and Third Amended Complaints also state that Maale visited the island many times and saw the actual status of the construction. (DE 36, pp. 13-15; DE 246-1, pp. 17-18; DE 359, pp. 16-18). McCabe subsequently removed most of the allegations of misrepresentation of the progress of the construction of the Project from the Fourth Amended Complaint. The Court finds that EAPD's repeated allegations of reliance on the defendants' misrepresentations about the progress of the construction of the Project, the falsity of which are demonstrated by other allegations in the same complaint, demonstrates bad faith by EAPD in filing baseless allegations.

After EAPD withdrew, McCabe reviewed the Decree of Divorce and determined that the Texas court had given Maale the

---

[3] Maale previously provided the same testimony about the check on February 28, 2007, in the trial of the divorce case. (DE 435-6, p. 135)

7

benefit of the value of the house, awarding the house to Kirchgessner and crediting her with $750,000 for the value of the house, resulting in awarding Maale $750,000 in other assets. (DE 546-1, p. 23). The defendants contend that if EAPD had reviewed the Decree of Divorce, which Kirchgessner filed with her motion to dismiss the complaint, EAPD would have realized that the $900,000 claim against Kirchgessner for the value of the house, repeated in four versions of the complaint, was baseless. The Court finds that EAPD's failure to consider the effect of the Decree of Divorce on Maale's claim of damages for his alleged $900,000 investment is evidence of bad faith by ignoring documents central to the issue.

The defendants assert that EAPD filed a Second Amended Complaint (DE 246-1) adding eight additional defendants, but dismissed two of them a few days later. The remaining six defendants were dismissed for lack of personal jurisdiction several weeks later. Additionally, Patricia Rahl was required to file a motion to quash service of process and a motion to dismiss when she was served as the agent for one of the new defendants, Caicos Beach Club, Ltd., a dissolved company. (DE 332) EAPD's response to the instant motion asserts that the defendants do not have standing to challenge the claims pursued against the newly-added defendants.

The Court rejects the plaintiff's argument. The Rahl defendants and Kirchgessner had to file a motion to dismiss the Second Amended Complaint, asserting that the claims of fraud, FDUPTA, civil conspiracy and civil RICO were not pled with sufficient particularity because they did not make specific

8

allegations regarding the acts of the new defendants and how they related to the acts of the original defendants. (DE 281) The Court agreed, finding that each of those counts "improperly refers to and lumps the Defendants together collectively such that it is impossible to know what conduct is alleged to have been committed by each individual Defendant or how the Defendants worked together to commit the fraud." (DE 339, p. 7)  The Rahl defendants also had to file two motions on behalf of the defunct Caicos Beach Club, Ltd.

The Court finds that EAPD filed a motion to extend the deadline for amending pleadings so that Maale could "properly move for leave to amend," based on evidence recently revealed during the Rahl depositions. (DE 239) The Court modified the deadline for amending the pleadings to allow the plaintiff one week to amend the complaint. (DE 240) The Court's Order on the motion to dismiss demonstrates that EAPD's expanded conspiracy claims did not allege any factual basis supporting the new claims. Litigation of the Second Amended Complaint consumed two months' time, which was filled with other deadlines, and resulted in the filing of the Third Amended Complaint, which substantially resembled the Amended Complaint.  EAPD's bad faith is demonstrated in the baselessness of the new claims and the unnecessary multiplication of the litigation. Accordingly, sanctions are warranted.

C. Pursued the Litigation after it Became Apparent That the Asserted Position Was Devoid of Factual or Legal Merit

EAPD asserted, in a motion to compel further depositions

9

of the Rahl defendants, that until the January 2010 deposition of Patricia Rahl, Maale was not informed that Caicos Beach Club Charter, Ltd., was a defunct entity no longer associated with the project. (DE 217, pp. 5-6)[4]  This position ignores the declaration of Patricia Rahl which was filed with the March 11, 2009, motion to quash service of process. The declaration clearly stated that the entity was a struck company "which is the equivalent of being dissolved." (DE 109-1, second ¶ 3) The plaintiff's response to the motion to quash service did not dispute that the Caicos Beach Club Charter, Ltd., was a defunct entity under the laws of the Turks and Caicos.  Indeed, the plaintiff did not thereafter name the entity as a defendant.

In spite of the information contained in the March 2009 declaration, EAPD's motion to compel further depositions was based in part, on an assertion of a January 2010 date for Maale's being informed of the defunct status of the entity.  Indeed, EAPD made similar assertions in the Plaintiff's Response to Motion for Protective Order (DE 225, pp. 4-5) and the Plaintiff's Motion for Reconsideration (DE 235, pp. 5-6)  The Court finds that this repeated assertion of a demonstrably false argument constitutes evidence of bad faith by EAPD.

---

[4] Even after EAPD's withdrawal, Maale continued to insist that he was never informed that the entity was defunct until the January 2010 deposition. (DE 549-1, Declaration of Gehard Maale, ¶ 3)

10

D. <u>Maintained Baseless Claims That Dominated Discovery and Motion Practice for an Extended Period</u>

The motion asserts that although Maale had no basis for claiming that he had lost $900,000 from the sale of the Bahamas house, and had no evidence that he had invested $1 million in the Project, his discovery practice deceptively focused on finding evidence to support those claims.

Maale attempted to use discovery in this case to require the Rahl defendants to produce documents which were protected by a state court protective order requiring Maale to pay the charging lien placed on the documents, and prohibiting their release until the charging lien was paid or a bond deposited with the court. EAPD was fully aware of the state court protective order since it was entered in case Woodfield filed on behalf of Maale in Palm Beach County Circuit Court as part of the discovery practice in the divorce case.  But EAPD served the discovery requests in the instant case in spite of the knowledge of the state court protective order.  The Rahl defendants had to file a motion for a protective order (DE 171) to prevent Maale from circumventing the state court protective order. After a full briefing of the motion, the court issued a 14-page order granting the motion.  The Court finds that this constitutes bad faith in conducting discovery, since it caused the defendants and the Court to expend time and resources to uphold a state court order which lawfully bound the defendant and EAPD.

E. Summary

The undersigned has analyzed those instances in which the record clearly supports a finding of bad faith. The Court finds that EAPD's briefing of the instant motion fails to demonstrate that EAPD made a reasonable investigation into the effect of the Texas divorce litigation or the terms of the Decree of Divorce before filing the complaint. After Kirchgessner filed the Decree of Divorce with her motion to dismiss the complaint, EAPD did not review it sufficiently to determine that the Decree of Divorce credited Maale with $750,000 of other assets to balance the award of the house to Kirchgessner.

EAPD twice attached a check completely unrelated to the litigation to complaints, claiming the check represented an investment in the Project. The second filing of the check occurred three months after Maale testified that the check had nothing to do with the case. This conduct goes beyond negligence and is evidence of bad faith.

EAPD's Complaint, Amended Complaint, Second Amended Complaint and Third Amended Complaint all allege that Maale relied on the defendants' misrepresentations about the progress of the construction of the Project. However, all but the original complaint also alleged that Maale made many trips to the island where he personally viewed the construction. These repeated and baseless assertions of reliance on the defendants' misrepresentations constitute evidence of EAPD's bad faith.

EAPD, claiming discovery of new evidence, was granted an extension of time to file the Second Amended Complaint adding new defendants. The Court found the second Amended Complaint to be completely lacking in specific allegations regarding the interaction of the old and new co-conspirators and their conduct directed at Maale. The second Amended complaint recklessly disrupted the litigation at a time when many deadline were approaching.

On March 11, 2009, Patricia Rahl filed a declaration stating that the Caicos Beach Club Charter, Ltd., was a struck corporation, the equivalent of being dissolved. In subsequent complaints EAPD did not name the entity as a defendant. However, after the January 2010 deposition of Patricia Rahl, EAPF briefed three motions, each time asserting that prior to the January 2010 deposition, no one had told Maale that the entity he invested in was defunct. This constitutes a reckless and knowing pursuit of a claim known to be baseless.

EAPD, fully aware of a protective order entered against Maale in state court proceedings initiated by EAPD, attempted to circumvent that order by serving document requests for the documents covered by the protective order. The parties and the Court spent valuable hours affirming the state court order. This constitutes vexatious conduct of the litigation.

Accordingly, the Court should impose sanctions on Woodfield and EAPD based on the inherent power of the Court.

II. AMOUNT OF SANCTIONS

The defendants assert that the Court should award attorney's fees as a sanction based on the inherent power of the Court. The defendants seek the attorney's fees resulting from the bad faith conduct.

Unlike the motion for bad faith sanctions pursuant to 28 U.S.C. § 1927, wherein the defendants declined to apportion fees among the plaintiff and counsel, the fees and costs for most of the instances of bad faith attributed solely to EAPD pursuant to the inherent power of the Court can be calculated from the defendants' billing records. However, the Court cannot ascertain how much of the sanctioned conduct is attributable to Woodfield and how much to other counsel at EAPD. Accordingly, the sanctions should be assessed jointly and severally to allow them to resolve this issue. Taiyo Corp. v. Sheraton Savannah Corp., 49 F.3d 1514, 1515 (11th Cir. 1995); Ortho Pharmaceutical Corp. v. Sona Distributors, 847 F.2d 1512, 1515 (11th Cir. 1988).

A. Baseless Pleadings

The Amended Complaint and the Third Amended Complaint each included multiple allegations unsupported by facts such as the vineyard check offered as evidence of an investment in the Project, even after Maale testified that it was not related to this case; allegations about the plaintiff's reliance on the defendants' misrepresentations regarding the progress of the construction, and EAPD's failure to review the Decree of Divorce filed by Kirchgessner, which demonstrated that Maale had received a setoff

14

for the house in the Decree of Divorce.[5]  Accordingly the Court should award the defendants attorneys' fees for briefing the motions to dismiss these two complaints. [6]

The second Amended Complaint was found to contain no allegations describing the  specific conduct between the original and new new alleged co-conspirators and their conduct toward Maale. The Court should impose a sanction of attorney's fees incurred by the Rahl defendants and Kirchgessner for briefing the motion to dismiss the Second Amended Complaint.[7]

---

[5] While these allegations constitute a small fraction of the complaints, they show a reckless disregard for the veracity expected in pleadings.

[6] Amended Complaint: Motion to dismiss
Rahl defendants
Motion HL 43.5 x 450 = $19,575                                   $19,575
Reply  HL 19.1 x 450 = $8,595; CT 15.6 x 350 = $5,460    $14,055

Kirchgessner
Motion HL 8.3 x $450 = $3,735; GO 18.5 x $350 = $6,475  $10,210
Reply  HL 1.2 x $450 = $540; GO 27.5 x $350 = $9,625     $10,165
                                                                                        $54,005

Third Amended Complaint: Motion to dismiss
Rahl defendants
Motion HL 5.3 x 450 = $2,385; CT 20.3 x 350 = $7,105     $ 9,490
Reply  HL 8.6 x 450 = $3,870; CT 14.0 x 350 = $4,900     $ 8,770

Kirchgessner
Motion CT 14.8 x 350 = $4,095  $5,180                          $ 5,180
Reply  HL 1.2 x 450 = $540; CT 3.9 x 350 =$1,365           $ 1,905
                                                                                        $25,345

[7] Second Amended Complaint: Motions to dismiss
Rahl defendants
Motion HL 1.8 x 450 = $810; CT 4.8 x 350 = $1,680         $ 2,490
Reply  HL 1.9 X 450 = $ 855; CT 9.9 x 350 = $3,465        $ 4,320
                                                                                        $ 6,810

The three January 2010 motions which include Maale's assertion that until January 2010, he had not been told about the status of the defunct entity constitute clearly sanctionable conduct, since Patricia Rahl had filed a declaration with that information nearly a year previously. The Rahl defendants' attorneys' fees associated with the briefing of those motions should be awarded.[8]

EAPD's attempt to avoid the protective order entered against Maale in state court should be sanctioned by awarding

---

```
Kirchgessner
Motion HL 11.2 x 450 = $5,040; CT 12.5 x 350 = $4,375
       GO 1.3 x 350 = $455                               $ 9,870
Reply  CT 8.6 x 350 = $3,010                             $ 3,010
                                                         $12,880

Quash/dismiss (Caicos Beach Club, Ltd., DE 331, 332)
Motions CT 8.3 x 350 = $2,905                            $ 4,905
Replies HL .5 x 450 = $225; CT 4.5 x 350 = $1,575        $ 1,800
                                                         $ 6,705
                                                         ========
                                                         $26,395
```

[8]
```
DE 217, Plaintiff's Motion to Compel testimony; Rahl's response
DE 229, 230:
HL 1.5 x 450 = $675; CT 24.1 x 350 = $ 8,435             $ 9,110

DE 220, Defendant's Motion for Protective Order
Motion HL 3.2 x 450 = $1,440; CT 8.6 x 350 = $3,010      $ 4,450
Reply  HL 1.7 x 450 = $765 ;  CT 9.5 x 350 = $3,325      $ 4,090

De 235, Plaintiff's Motion for Reconsideration, Rahl's response
DE 253
CT 10.4 x 350 = $3,640                                   $ 3,640
                                                         $21,290
```

attorneys' fees for briefing the Rahl defendants' Motion for Protective Order.[9]

More problematic is the apparent failure to investigate the Texas divorce case prior to filing the complaint. Because the defendants do not suggest what fees are directly related to this failure, the Court cannot assess an appropriate sanction. Accordingly, the undersigned cannot recommend a sanction for this reckless conduct.

This Court having considered carefully the motion, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the court GRANT the motion for sanctions, based on the inherent power of the Court, in the total amount of $137,120.00 against Gary Woodfield and his former law firm Edwards Angell Palmer and Dodge jointly and severally. The amount of sanctions comprises Kirchgessner's attorney's fees of $40,235.00 and the Rahl defendants attorneys' fees ov $96,885.00.

The parties will have **TEN** days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v.

---

[9] DE 171 Defendants' Motion for Protective Order
Motion  CT 2.9 x 350 = $1,015; GO 10.3 x 350 = $3,605     $ 4,620
Reply   HL 7.4 x 450 = $3,330; CT 6.1 x 350 = $2,135      $ 5,465
                                                          $10,085

Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 3rd day of march, 2011.

```
                              _____
                              LURANA S. SNOW
                              UNITED STATES MAGISTRATE JUDGE
```

Copies to:

All Counsel of Record